**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **RIC (LAVERNIA) LLC,** | § | **Case No. 24-51195-mmp** |
| | § | |
| **Debtor** | § | **Chapter 11** |
| | § | |
| | § | |
| **RIC (LAVERNIA) LLC,** | § | |
| | § | |
| **Plaintiff** | § | **Adversary No. 24-05043-mmp** |
| | § | |
| **v.** | § | |
| | § | |
| **MILESTONE CAPITAL CRE 1, LLC;** | § | |
| **LORI DAVES AND JOHN DAVES, AS** | § | |
| **SUBSTITUTE TRUSTEE; ANDRES** | § | |
| **CEDILLOS,** | § | |
| | § | |
| **Defendants** | § | |

## PLAINTIFF'S SECOND AMENDED PETITION

RIC (Lavernia), LLC ("Plaintiff") files this Second Amended Petition against Defendants Milestone Capital CRE 1, LLC ("Milestone"); Lori Daves and John Daves, and each of them acting alone, solely in their capacity as substitute trustee (collectively, "Daves") under the Deed of Trust (as defined at para. 17 below) encumbering real property located in Wilson County, Texas, the legal description of which is included in the exhibit attached hereto as Exhibit A (the "Property"); and Andres Cedillos, in his alleged capacity as substitute trustee ("Cedillos") under the Deed of Trust, and hereby states and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1452, 1334 and 157(b).  This is a core proceeding, as this case involves (i) matters concerning the administration of the estate;

1

(ii) allowance or disallowance of claims against the estate; (iii) determinations as to the validity, extent, or priority of liens; and (iv) other proceedings affecting the adjustment of the debtor-creditor relationship.

2.      This dispute is properly raised as an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001(1) (proceeding to recover money or property); (2) (validity, priority or extent of lien); (7) (injunction or other equitable relief); (8) (proceeding to subordinate any allowed claim); (9) (declaratory relief); and (10) (determine a claim or cause of action removed under 28 U.S.C. § 1452).

3.      Plaintiff consents to this Court's entry of final judgment.

4.      This Court and the United States District Court for the Western District of Texas may also have diversity subject matter jurisdiction.  The amount in controversy exceeds $75,000, and it appears the Plaintiff's citizenship is completely diverse from the citizenship of all Defendants.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).  This is a proceeding arising in or related to a case under title 11, and thus may be commenced in the district court in which the underlying bankruptcy case is pending.  Plaintiff is the debtor and debtor-in-possession in a case pending in this district, and this adversary proceeding arises in or is related to Plaintiff's bankruptcy case.

## THE PARTIES

6.      Plaintiff is a Texas limited liability company.  Plaintiff's sole member is Romspen (Reomaster II) Holdings, Inc., a Delaware corporation.

7.      Milestone Capital CRE 1, LLC ("Milestone") is a Texas limited liability company doing business at 2704 Joanel St., Houston, Texas.  The citizenship of Milestone's member(s)

is/are unknown to Plaintiff.

8.      Lori Daves is a resident and citizen of the state of Texas.

9.      John Daves is a resident and citizen of the state of Texas.

10.     Lori Daves and John Daves (collectively "Daves") are named in this suit solely in their capacity as substitute trustee under the Deed of Trust issued in favor of Milestone encumbering the Property.

11.     Cedillos is a resident and citizen of the state of Texas.

12.     Cedillos is named in this suit solely in his capacity as an alleged substitute trustee under the Deed of Trust issued in favor of Milestone encumbering the Property.

## FACTUAL ALLEGATIONS

13.     Plaintiff acquired title to the Property as the successful bidder at a non-judicial foreclosure sale that occurred on February 6, 2024. *See* Exhibit A, which is a copy of the Substitute Trustee's Deed conveying title to Plaintiff.

14.     Plaintiff's title ownership to the Property is purportedly subject to a lien interest asserted by Milestone as set forth in that certain Deed of Trust and Security Agreement dated January 2, 2023, and filed on May 23, 2023, in the Official Records of Wilson County, Texas, at Document Number 2023-132703 (the "Deed of Trust"). A true and correct copy of the Deed of Trust is attached hereto as Exhibit B.

15.     Milestone's lien interest purportedly secures repayment of a promissory note issued by OTISCO RDX, LLC (the "Borrower") as maker, in favor of Milestone, as payee, in the amount of $5,900,000.

16.     The Deed of Trust incorrectly refers to Milestone as "Milestone Capital CRE I, LLC," which replaces the Arabic numeral "1" with the Roman numeral "I."

17.     Upon information and belief, there is no legal entity named "Milestone Capital CRE I, LLC."

18.     The Deed of Trust identifies the Borrower's address as 1001 West Loop South, Suite 700, Houston, Texas 77027.

19.     On or around December 21, 2023, Milestone's registered agent, Alfred Kelly Williams, filed a Resignation of Registered Agent with the Texas Secretary of State, which identified Milestone's last known address as 1001 West Loop South, Suite 700, Houston, Texas 77027.  A true and correct copy of this Notice is attached hereto as <u>Exhibit C</u>.

20.     Plaintiff, through its counsel, issued letters to Milestone dated February 29, 2024; March 15, 2024; and April 17, 2024 (collectively, the "<u>Payoff Demands</u>"), requesting and demanding the amount necessary to pay off the purported indebtedness secured by the Deed of Trust.

21.     Milestone failed and refused to respond to Plaintiff's Payoff Demands.

22.     Milestone appointed Daves as substitute trustees under the Deed of Trust as set forth in that certain Appointment of Substitute Trustee dated February 13, 2024, and filed on March 12, 2024, in the Official Records of Wilson County, Texas, at Document Number 2024-140814 (the "Appointment").  A true and correct copy of the Appointment is attached hereto as <u>Exhibit D</u>.

23.     The Appointment refers to "Milestone Capital CRE I, LLC" as the beneficiary under the Deed of Trust.

24.     On March 12, 2024, Daves filed a Notice of Acceleration and Notice of Substitute Trustee Sale with the County Clerk of Wilson County, Texas, at Document Number 2024-269 (the "Notice of Sale").  A true and correct copy of the Notice of Sale is attached hereto as <u>Exhibit E</u>.

25.     The Notice of Sale refers to "Milestone Capital CRE I, LLC" as the beneficiary under the Deed of Trust.

26.     The Notice of Sale provided that a non-judicial foreclosure sale of the Property would occur on March 12, 2024, at 10:00 a.m. or within three (3) hours thereafter.  *See* Ex. E, p. 2.

27.     No sale occurred on the date or time provided in the Notice of Sale.  In fact, the Notice of Sale was filed with the County Clerk *after* the date and time identified therein.

28.     Instead, Daves purported to conduct a non-judicial foreclosure sale of the Property on April 2, 2024, at 12:30 pm (the "Sale").

29.     No notice of the Sale was filed with the County Clerk.

30.     Daves purported to grant, sell, and convey the Property to "Milestone Capital CRE I, LLC" as set forth in that certain Substitute Trustee's Deed dated April 2, 2024, and filed on April 8, 2024, in the Official Records of Wilson County, Texas, at Document Number 2024-141408 (the "Trustee's Deed").  A true and correct copy of the Deed of Trust is attached hereto as Exhibit F.

31.     Plaintiff notified Daves by letter dated April 17, 2024, that the Sale was defective as a result of the failure to timely serve and file a proper notice of the Sale.

32.     On May 14, 2024, Daves recorded a document titled "Notice of Rescission of Nonjudicial Foreclosure Sale" in the Official Records of Wilson County, Texas, at Document Number 2024-142296 (the "Rescission Notice"), purporting to rescind the Trustee's Deed due to defects in the Notice of Sale.  A true and correct copy of the Rescission Notice is attached hereto as Exhibit G.

33.     The Rescission Notice lacks legal effect.

34.     On May 14, 2024, a Notice of Acceleration and Notice of Substitute Trustee's Sale was filed with the County Clerk of Wilson County, Texas, at Document Number 2024-288 (the "Cedillos Notice of Sale").  A true and correct copy of the Cedillos Notice of Sale is attached hereto as Exhibit H.

35.     The Cedillos Notice of Sale is dated May 10, 2024, and is executed by Cedillos as Substitute Trustee.

36.     The Cedillos Notice of Sale refers to the beneficiary under the Deed of Trust as "Milestone Capital CRE I, LLC."

37.     The Cedillos Notice of Sale states that "Lender has appointed Andres Cedillos, The Law Office of Andres Cedillos, as Substitute Trustees under the Deed of Trust and under the Appointment of Substitute Trustee."

38.     As of the date of the Cedillos Notice of Sale, Cedillos had not been appointed as substitute trustee.

39.     In the event the Trustee's Deed is deemed invalid, Daves continued to serve as substitute trustees as of May 10, 2024.

40.     The Cedillos Notice of Sale purports to provide notice of a non-judicial foreclosure sale under the Deed of Trust to occur on June 4, 2024.

41.     On May 15, 2024, an Appointment of Substitute Trustee was recorded with the County Clerk of Wilson County, Texas, at Document Number 2024-142356 (the "Cedillos Appointment").  A true and correct copy of the Cedillos Appointment is attached hereto as Exhibit I.

42.     The Cedillos Appointment is dated, and was executed by Lori Daves on, May 14, 2024 – four days after the Cedillos Notice of Sale.

43.     The Cedillos Appointment contains a notary stamp stating that Lori Daves "represented herself to be authorized to execute this document as Substitute Trustee for Milestone Capital CRE I, LLC."

44.     The Cedillos Appointment names "Milestone Capital CRE I, LLC" as beneficiary under the Deed of Trust.

## CAUSES OF ACTION

### COUNT ONE:
### DECLARATORY JUDGMENT – INVALIDITY OF TRUSTEE'S DEED

45.     Plaintiff repeats and realleges each of the foregoing paragraphs as if stated in full.

46.     Plaintiff asserts an action for a declaratory judgment, pursuant to Section 37.004 of the Texas Civil Practices & Remedies Code, which provides that "[a] person interested under a deed . . . may have determined any question of construction or validity arising under the instrument, [or] statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE § 37.004(a).

47.     Daves failed to comply with applicable law in conducting the Sale.

48.     Specifically, Daves failed to file in the Official Records of Wilson County a notice of the Sale at least 21 days prior to the Sale.

49.     The failure to timely file a notice of the Sale violates Texas Property Code section 51.002(b), which requires, among other things, that at least 21 days before the date of a sale of real property under the chapter, notice of such sale must be filed in the official records of the county where the sale is to occur.

50.     As a result, the Sale was defective and the Trustee's Deed is invalid.

51.     Daves has attempted to rescind the Trustee's Deed by executing and filing the Rescission Notice. Under applicable state law, a substitute trustee lacks authority to rescind an

attempted or actual trustee's sale of non-residential real property.

52.     Notwithstanding the ineffectiveness of the Rescission Notice, Daves has acknowledged the Trustee's Deed should be declared ineffective.

53.     Accordingly, Plaintiff is entitled to judgment declaring that the Trustee's Deed is invalid, and Plaintiff holds legal title to the Property subject to valid and enforceable senior encumbrances.

## COUNT TWO:
## QUIET TITLE – SETTING ASIDE TRUSTEE'S DEED

54.     Plaintiff repeats and realleges each of the foregoing paragraphs as if stated in full.

55.     The Sale was defective because Daves failed to provide proper notice, as required by Section 51.002 of the Texas Property Code.

56.     Accordingly, the Trustee's Deed is invalid, as a matter of law.

57.     Moreover, the failure to record notice of the Sale prevented potential interested purchasers from participating in the Sale.

58.     After Plaintiff acquired title to the Property, Plaintiff repeatedly attempted to contact Milestone in order to ascertain the amount necessary to pay off the alleged indebtedness.

59.     Milestone failed and refused to respond to Plaintiff's requests and demands prior to the purported April 2, 2024, substitute trustee's sale conducted by Daves.

60.     As such, Plaintiff was unable to determine the amount necessary to pay off the alleged indebtedness and was therefore unjustly prevented from protecting its interests in the Property.

61.     Accordingly, Plaintiff requests that the Court, as a matter of equity, enter a judgment setting aside the Trustee's Deed.

**COUNT THREE:**
**DECLARATORY JUDGMENT – INVALIDITY OF DEED OF TRUST**

62.     Plaintiff repeats and realleges each of the foregoing paragraphs as if stated in full.

63.     The Deed of Trust purports to grant a security interest in the Property to "Milestone Capital CRE I, LLC." No such entity exists.

64.     The Deed of Trust purports to secure repayment of a promissory note payable to "Milestone Capital CRE I, LLC." No such entity exists.

65.     Plaintiff attempted to ascertain the amount necessary to pay off the alleged indebtedness purportedly secured by the Deed of Trust by contacting Milestone requesting such information prior to the purported April 2, 2024, substitute trustee's sale.

66.     Milestone failed and refused to respond to Plaintiff's requests and demands.

67.     Milestone's failure and refusal to respond to Plaintiff effectively and unjustly prevented Plaintiff from protecting its interests in the Property.

68.     Although Milestone subsequently, through Daves, provided some information regarding the outstanding balance owed, the information was incomplete and lacked adequate detail.

69.     To the extent Milestone is unable to prove a legitimate indebtedness owed to it that is secured by the Property, then Milestone should not be entitled to assert any encumbrance against the Property.

70.     Plaintiff has been forced to incur legal fees and expenses seeking judicial relief as a result of Milestone's refusal and failure to respond to Plaintiff.

71.     Plaintiff is therefore entitled to judgment declaring that the Deed of Trust is unenforceable and is no longer an encumbrance against the Property.

72.     Plaintiff attempted to resolve this matter with Milestone. Accordingly, Plaintiff is

9

also entitled to an award of legal fees and costs incurred in connection with obtaining such relief.

## COUNT FOUR:
## QUIET TITLE – DEED OF TRUST

73.     Plaintiff repeats and realleges each of the foregoing paragraphs as if stated in full.

74.     The Deed of Trust purports to grant a security interest in the Property to "Milestone Capital CRE I, LLC."  No such entity exists.

75.     The Deed of Trust purports to secure repayment of a promissory note payable to "Milestone Capital CRE I, LLC."  No such entity exists.

76.     Plaintiff attempted to ascertain from Milestone, prior to the purported April 2, 2024, substitute trustee's sale, the amount necessary to pay off the alleged indebtedness purportedly secured by the Deed of Trust.

77.     Milestone failed and refused to respond to Plaintiff's requests and demands.

78.     Milestone's failure and refusal to timely respond to Plaintiff effectively and unjustly prevented Plaintiff from protecting its interests in the Property.

79.     When Milestone, through Daves, finally provided some information regarding the purported indebtedness, the information lacked adequate detail.

80.     Milestone should not be entitled to retain any lien against the Property.

81.     Plaintiff is therefore entitled to judgment quieting title in favor of Plaintiff by declaring that the Deed of Trust is unenforceable and is no longer an encumbrance against the Property.

## COUNT FIVE:
## EQUITABLE SUBORDINATION OF DEED OF TRUST

82.     Plaintiff repeats and realleges each of the foregoing paragraphs as if stated in full.

83.     In the alternative, the Deed of Trust, if valid, should be equitably subordinated to

Plaintiff's interests in the Property.

84.     "A party holding an earlier lien has a superior claim to a person holding a later lien, unless the earlier lien is displaced by some act of the party holding it; in such case, the law will regard the party holding the earlier lien as the later claimant." *Farm Credit Bank of Tex. v. Ogden*, 886 S.W.2d 305, 313 (Tex. App.—Houston [1st Dist.] 1994, no writ.).

85.     Milestone's conduct as described in Counts 3 and 4 is inequitable and done to confer an unfair advantage for itself at Plaintiff's expense, which in itself requires the purported Deed of Trust to be equitably subordinated.

86.     Additionally, upon information and belief, the Deed of Trust and resulting conduct by Milestone is fraudulent and done intentionally to divest Plaintiff of its valid right, title, and interest to the Property, for the benefit of itself and the Borrower and/or is the result of a merger in title between Milestone and the Borrower.

87.     First, on or around December 21, 2023, Milestone's registered agent, Alfred Kelly Williams, filed a Resignation of Registered Agent with the Texas Secretary of State, which identified Milestone's last known address as the same address identified as the Borrower's address on the Deed of Trust: 1001 West Loop South, Suite 700, Houston, Texas 77027.

88.     Second, the "Beneficiary" of the Deed of Trust is identified as "Milestone Capital CRE I, LLC", which is a non-existent entity, whose address is associated with two unrelated businesses.

89.     Third, upon information and belief the Borrower has purportedly paid nothing toward the alleged underlying loan.  Despite this, Milestone took no action to foreclose on the Deed of Trust until *after* Plaintiff acquired title to the Property following Plaintiff's non-judicial foreclosure sale of its then-existing lien interest.

90.     Fourth, Milestone refused to provide Plaintiff with detailed payoff information, despite Plaintiff's repeated requests.

91.     Fifth, upon information and belief, Milestone never funded the alleged loan purportedly secured by the Deed of Trust.

92.     Other facts may arise during the course of discovery that establish further conduct that warrants equitable subordination.

93.     Accordingly, Plaintiff is entitled to the equitable remedy of equitable subordination; requests the Court declare that Milestone's Deed of Trust was equitably subordinated to the lien interests foreclosed at the time Plaintiff acquired title to the Property, and thus was extinguished; and requests the Court declare Plaintiff's right, title, and interest in the Property is not subject to the purported Deed of Trust.

## COUNT SIX:
## DECLARATORY RELIEF – INVALIDITY OF CEDILLOS' APPOINTMENT

94.     Plaintiff repeats and realleges each of the foregoing paragraphs as if stated in full.

95.     Daves purportedly appointed Cedillos as substitute trustee on May 14, 2024.

96.     Pursuant to the Deed of Trust, only the "Beneficiary" or anyone acting in a representative capacity for "Beneficiary" may appoint a substitute trustee.  *See* Ex. B, Deed of Trust, p. 9 (Beneficiary's Rights).

97.     Lori Daves' purported appointment of Cedillos was made while she was acting as substitute trustee under the Deed of Trust, not as a representative of "Beneficiary."

98.     Daves' purported appointment of Cedillos as substitute trustee was therefore ineffective, and Cedillos is not authorized to conduct any sale of the Property as substitute trustee under the Deed of Trust.

99.     Plaintiff is therefore entitled to a judgment declaring that Cedillos is not the

12

substitute trustee under the Deed of Trust.

## COUNT SEVEN:
## CLAIM OBJECTION

100.    Plaintiff repeats and realleges each of the foregoing paragraphs as if stated in full.

101.    On June 27, 2024, Plaintiff filed a voluntary petition for Chapter 11 bankruptcy protection.

102.    The lien asserted by Milestone encumbers estate property.

103.    Plaintiff is not obligated on any loan owed to Milestone.

104.    As set forth above, Milestone's Deed of Trust is ineffective to encumber the Property.

105.    To the extent Milestone asserts a claim against Plaintiff's bankruptcy estate, this Court should disallow any such claim.

## **PRAYER**

WHEREFORE, Plaintiff prays that this Court award judgment in Plaintiff's favor as follows:

A.    Declaring that the Trustee's Deed is invalid and Plaintiff holds good and valid title to the Property, subject to any valid and enforceable senior encumbrances;

B.    Quieting title that sets aside the Trustee's Deed and restores Plaintiff's good and valid title to the Property, subject to any valid and enforceable senior encumbrances;

C.    Declaring that Milestone's Deed of Trust is not a valid or enforceable encumbrance against the Property, and is therefore extinguished;

D.    Quieting title that sets aside Milestone's Deed of Trust such that it is not a valid or enforceable encumbrance against the Property;

E.    In the alternative, declaring that Milestone's Deed of Trust had been equitably subordinated to the lien interest foreclosed by Plaintiff, thus extinguishing Milestone's Deed of Trust; and that Plaintiff's right, title, and interest in the Property is not subject to the Deed of Trust;

F.    Declaring that Cedillos has not been properly appointed as substitute trustee under

the Deed of Trust, and any action purported to be taken by Cedillos as substitute trustee is and shall be null and void;

G.     Entering an order disallowing any claim by Milestone as against Plaintiff's Chapter 11 bankruptcy estate;

H.     Awarding Plaintiff's attorneys' fees and costs incurred against Milestone and Cedillos, jointly and severally with post-judgment interest; and

I.      For such other and further relief that the Court deems just and proper under the circumstances.

Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/  Kyle S. Hirsch*
Kyle S. Hirsch
Texas Bar No. 24117262
Justin D. Hanna
Texas Bar No. 24095726
2200 Ross Ave., Suite 4200W
Dallas, Texas 75201
(214) 721-8000 (Telephone)
(214) 721-8100 (Facsimile)
kyle.hirsch@bclplaw.com
justin.hanna@bclplaw.com

**ATTORNEYS FOR PLAINTIFF RIC (LAVERNIA) LLC**

# Exhibit A

29

SCANNED

## SUBSTITUTE TRUSTEE'S DEED AND BILL OF SALE

**STATE OF TEXAS** §
§
**COUNTY OF WILSON** §

| | |
|---|---|
| <u>Date</u>: | March 22, 2024 |
| <u>Borrower</u>: | Galleria Loop Note Holder LLC, a Texas limited liability company |
| <u>Borrower's Address</u>: | 2500 West Loop South, Suite 255, Houston, Texas 77027 |
| <u>Holder</u>: | RIC (LAVERNIA), LLC |
| <u>Holder's Address</u>: | 162 Cumberland Street, Suite 300, Toronto, Ontario M5R 3N5 |
| <u>Substitute Trustees</u>: | Troy Martin, Deborah Martin, Cassie Martin, Alexis Martin, Martha · Rossington, Reyn Rossington, Wayne Daughtrey, Shelby Martin, Jennyfer Sakiewicz, and each of them acting alone |
| <u>Substitute Trustees' Address</u>: | c/o Bryan Cave Leighton Paisner LLP, 2200 Ross Avenue, Suite 4200 W, Dallas, Texas 75201 |
| <u>Deed of Trust</u>: | Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing |
| Date: | August 18, 2023 |
| Grantor: | OTISCO RDX, LLC, a Texas limited liability company |
| Lender: | TIG Romspen US Master Mortgage LP, an exempted Cayman Islands limited partnership |
| Trustee: | Randa Barton |
| Secures: | Loan Agreement (as amended, restated, replaced, supplemented, renewed, extended, or otherwise modified from time to time, "Note"), dated May 31, 2019, in the original principal amount of $18,500,000.00, executed by Borrower, payable to the order of Lender and currently held by Holder. |

After recording, return to:
**ServiceLink, ASAP**
4600 Fuller Ave, Suite 400
Irving, TX 75038
4813054

1

| | |
|---|---|
| Recording: | Recorded on August 22, 2023, as Document Number 135641 of the Official Public Records of Wilson County, Texas, Receipt No. 20230822000016. |
| Property: | All real property, improvements and personal property described as collateral in the Deed of Trust (defined above); the legal description of the real property is also, for the sake of convenience only, described in Exhibit A attached hereto and made a part hereof for all purposes; however, the description of the real property, improvements and personal property in the Deed of Trust will control to the extent of any conflict or any deficiency in such description contained in the Notice of Substitute Trustee's Sale filed and posted in connection with the Foreclosure Sale (as defined below) or this Substitute Trustee's Deed and Bill of Sale, it being the intent that the Foreclosure Sale cover all property, real, personal, tangible and intangible, which constitutes collateral under, and described in, the Deed of Trust. |

## Foreclosure Sale

| | |
|---|---|
| Date of Sale: | Tuesday, February 6, 2024 |
| Time of Sale: | 12:00 p.m. local time (that being within three hours of the earliest time of the sale of the Property at the public sale (the "Foreclosure Sale" as stated in the Notice of Substitute Trustee's Sale. |
| Place of Sale: | At the most north-easterly door of the Wilson County Courthouse, being the courthouse door facing the office of the Wilson County Tax Assessor-Collector, in Floresville, Wilson County, Texas, 2 Library Lane, or if the preceding area is no longer the designated area, at the area most recently designated by the County Commissioner's Court. |
| Grantee: | RIC (LAVERNIA), LLC |
| Grantee's Mailing Address: | 162 Cumberland Street, Suite 300 Toronto, Ontario M5R 3N5 CANADA |

2

<u>Purchase Price:</u>          $100,000 (which payment, in accordance with applicable law and the terms of the Deed of Trust, was made by crediting the Purchase Price against amounts due on or with respect to the indebtedness secured by the Deed of Trust, including the Note)

Grantor conveyed to Trustee the Property for the purposes of securing and enforcing payment of, among other things, the Note.

Holder is the owner and holder of the Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing encumbering the Property.

Borrower defaulted under the terms of the Note, and the maturity of the entire principal balance of the Note either had come due by the express terms of the Note or had been accelerated by Lender in accordance with the terms thereof, and the same remains due and payable as of the date hereof.

Lender appointed Substitute Trustees, and each of them acting alone, under the circumstances and in the manner set forth in the Deed of Trust. Lender instructed Substitute Trustees, and each of them acting alone, as authorized by and provided in the Deed of Trust, to enforce the trust due to the occurrence of the foregoing events and sell the Property at the Foreclosure Sale.

As evidenced by executed affidavits held in Lender's file, at the request of Lender, Substitute Trustees (i) filed, or caused to be filed, written notice ("Notice") of the earliest time, place and terms of the Foreclosure Sale with the county clerk of Wilson County, Texas, and (ii) posted, or caused to be posted, the Notice at the location in Wilson County, Texas designated for such notices by the Wilson County Tax Assessor-Collector, in Floresville, Wilson County, Texas, the county in which the Property is situated. In addition, also as evidenced by executed affidavits held in Lender's file, counsel to Lender served, or caused to be served, the Notice by certified mail, return receipt requested, on each debtor obligated to pay the Note according to the records of Lender and as required by law.

All prerequisites required by law, the Deed of Trust and/or other documents creating, evidencing, describing or securing the Note have been duly satisfied by Lender and by Trustee.

The Foreclosure Sale was held by the undersigned pursuant to the terms of the Deed of Trust and in accordance with the laws of the State of Texas on the Date of Sale, Time of Sale and at the Place of Sale. The Foreclosure Sale commenced at the Time of Sale and was concluded by 4:00 p.m. on the Date of Sale.

Grantee, having been assigned all of Lender's right, title and beneficial interest in and to the Deed of Trust by and through that certain Assignment Of Beneficial Interest Under Deed Of Trust with an effective date of February 5, 2024, being the highest bidder at the Foreclosure Sale, did purchase the Property for the Purchase Price.

The undersigned Trustee, in consideration of the foregoing and of the payment of the Purchase Price, by the authority conferred on the undersigned Trustee by the Deed of Trust, GRANTS, SELLS and CONVEYS to Grantee, its legal representatives, successors and assigns,

the Property, together with, all and singular, the rights, privileges, and appurtenances thereto, subject, subordinate and inferior to any senior encumbrances and other exceptions to conveyance and warranty in the Deed of Trust (the "Permitted Exceptions").

TO HAVE AND TO HOLD the Property, together with the rights, privileges and appurtenances thereto, subject, subordinate and inferior to the Permitted Exceptions, to Grantee, its legal representatives, successors and assigns, forever. Substitute Trustee binds Borrower and Borrower's legal representatives, successors and assigns to warrant and defend the Property to Grantee, its legal representatives, successors and assigns forever, against the claims or claims of all persons claiming or to claim the same or any part thereof, except as to the Permitted Exceptions. Substitute Trustee has not made, and does not make, any representation, express or implied, with respect to the personal property and the personal property is sold to Buyer "as is, where is, and with all faults." There is no warranty relating to title, possession, quiet enjoyment, or the like in this disposition of personal property.

_____

_Cassie Martin_____, **Substitute Trustee**

4

STATE OF TEXAS          §
                        §
COUNTY OF Comal         §
                        §

This instrument was acknowledged before me on this 22nd day of March, 2024, by Cassie Martin, as Substitute Trustee.

[SEAL]

```
MEGAN JONES
Notary Public
State of Texas
ID # 12600365-8
My Comm. Expires 03/28/2027
```

My Commission Expires:

3/28/2027

_____
Notary Public, State of Texas

_____
Printed Name of Notary
Megan Jones

After recording return to:

Kyle S. Hirsch
c/o Bryan Cave Leighton Paisner LLP
2200 Ross Avenue, Suite 4200 W
Dallas, Texas 75201

## EXHIBIT A

### LEGAL DESCRIPTION

Tract 1:
A 24.92 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171, and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 24.91 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 3) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 24.92 acre tract being more particularly described by metes and bounds on Exhibit "A" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

Tract 2:
A 120.18 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 120.16 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 5) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 120.18 acre tract being more particularly described by metes and bounds on Exhibit "B" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.

Tract 3A:
A 60.14 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 60.14 acre tract being more particularly described by metes and bounds on Exhibit "C-1" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.

Tract 3B:
A 0.456 acre tract of land, more or less, siutated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 0.456 acre tract being more particularly described by metes and bounds on Exhibit "C-2" attached hereto and made a part hereof for all purposes.

Tract 3C:
A 1.924 acre tract of land, more or less, situated in the H.&T.C.R.R.Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 1.924 acre tract being more particularly described by metes and bounds on Exhibit "C-3" attached hereto and made a part hereof for all purposes.

Tract 3D:
A 152.88 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 152.88 acre tract being more particularly described by metes and bounds on Exhibit "C-4" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

Tract 4:
Lots 244 and 245A, Las Palomas Country Club Estates, Unit 12, as per plat of Las Palomas Country Club Estates, Unit 12 filed of record in Volume 8, Pages 13-16, Plat Records of Wilson County, Texas, as amended by plat filed of record in Volume 9, Pages 42-43, Plat Records of Wilson County, Texas, to any extent modified by partial replatting as per plat of Estates of Quail Run Subdivison, filed of record in Volume 9, Pages 72-74, Plat Records of Wilson County, Texas.

Tract 5:
Lots 18, 19, 21, 22, 23 and 26 through 40, The Meadows at Quail Run, Section 1, as shown on plat of The Meadows at Quail Run, Section 1 of record in Volume 9, Pages 44-47, Plat Records of Wilson County, Texas.

Tract 6:
Lot 13, Lake Valley Estates Subdivision, Unit 35 as per plat of Lake Valley Estates Subdivision, Unit 35 of record in Volume 5, Page 29, Plat Records of Wilson County, Texas.

Tract 7:
Lots 1, 2, 10, 11 and 12, Block 1, Lake Valley Estates Subdivision, Unit 36 as per plat of Lake Valley Estates Subdivision, Unit 36 of record in Volume 5, Page 43, Plat Records of Wilson County, Texas.

Tract 8:
Lots 1 through 10, Lake Valley Estates Subdivision, Unit 42 as per plat of Lake Valley Estates Subdivision, Unit 42 of record in Volume 5, Page 44, Plat Records of Wilson County, Texas.

Tract 9:
Lots 2, 3, 5, 9 and 12, Lake Valley Estates Subdivision, Unit 43 as per plat of Lake Valley Estates Subdivision, Unit 43 of record in Volume 5, Page 45, Plat Records of Wilson County, Texas.

Tract 10:
Lot 2, Lake Valley Estates Subdivision, Unit 44 as per plat of Lake Valley Estates Subdivision, Unit 44 of record in Volume 5, Page 28, Plat Records of Wilson County, Texas.

# EXHIBIT "A"

METES AND BOUNDS DESCRIPTION
TRACT 1
24.92 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON
SURVEY NO. 40, ABSTRACT 481
WILSON COUNTY, TEXAS

A 24.92-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING ALL OF THAT CALLED 24.91-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 3) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 24.92-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

COMMENCING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the east right-of-way line of Pine Valley Drive (60-foot width, Volume 7, Page 46, Wilson County Plat Records) marking the most northerly northwest corner of a called 44.82-acre tract of land described in a deed to The Meadows at Quail Run, Ltd (Tract 2), recorded in Volume 1211, Page 431 of the Wilson County Official Public Records and the southwest corner of Lot 69 of Las Palomas Country Club Estates, Section 2 recorded in Volume 7, Page 46 of the Wilson County Plat Records;

THENCE North 85°02'52" East, 159.35 feet, along the common line of said Tract 2 and said Lot 69 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northwest line of a called 69.95-acre tract of land described in a deed to National Loan Investors, L. P., (Tract 5) marking the northeast corner of said Tract 2 and the southeast corner of said Lot 69;

THENCE North 79°16'55" East, 20.20 feet, over and across said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking an ell corner of said Tract 5 and the northwest corner of said Tract 3 and the POINT OF BEGINNING of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 3 as follows;

(1)     North 79°07'31" East, 452.99 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Tract 3 and of the herein described tract of land;

(2)     South 25°02'54" East, 97.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(3)     South 24°55'32" East, 833.85 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the north corner of Lot 113 of said Las Palomas Country Club Estates, Section 2 and a reentrant corner of said Tract 3 and of the herein described tract of land;

Page 1 of 4

A-3

24.92 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(4)  THENCE South 65°08'59" West, 147.55 feet along the common line of said Lot 113 and said Tract 3 to a found 1/2-inch iron rod with cap stamped "INTREPID" marking the northeast terminus of Colonial Lane (60-foot width, Volume 7, Page 46 Wilson County Plat Records) and the west corner of said Lot 113;

THENCE along the common line of said Colonial Lane and said Tract 3 as follows:

(5)  South 54°55'50" West, 59.52 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485";

(6)  South 07°20'02" West, 33.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)  South 43°00'36" East, 59.42 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485";

(8)  North 89°50'08" East, 32.44 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" (leaning) marking the point of curvature of a curve to the left;

(9)  in a southeasterly direction, 48.40 feet, along the arc of said curve to the left, having a radius of 894.25 feet, a central angle of 03°06'03" and a chord which bears South 55°49'15" East, 48.39 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency and the west corner of Lot 114 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Las Palomas Country Club Estates, Section 2 and said Tract 3 as follows:

(10)  South 18°26'02" East, 203.77 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of said Lot 114 and the southwest corner of Lot 115 of said Las Palomas Country Club Estates, Section 2;

(11)  South 68°37'55" East, 89.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of said Lot 115 and the southwest corner of Lot 116 of said Las Palomas Country Club Estates, Section 2;

(12)  South 59°35'52" East, 450.14 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(13)  South 66°51'07" East, 244.65 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the northwest right-of-way line of Las Palomas Drive (60-foot width, Volume 7, Page 46, Wilson County Plat

Page 2 of 4

A-4

24.92 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 401
Wilson County, Texas

Records) marking the south corner of Lot 123 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Las Palomas Drive and said Tract 3 as follows:

(14)    South 23°11'33" West, 154.97 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southwest terminus of said Las Palomas Drive;

(15)    South 66°48'12" East, 60.12 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast terminus of said Las Palomas Drive and the northwest corner of Lot 124 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Lot 124 and said Tract 3 as follows:

(16)    South 21°57'45" East, 35.34 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of said Lot 124;

(17)    North 64°59'31" East, 259.93 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of said Lot 124, and the point of curvature of a non-tangent curve to the left;

THENCE along the common line of said Tract 5 and said Tract 3 as follows:

(18)    In a southeasterly direction, 127.23 feet, along the arc of said non-tangent curve to the left, having a radius of 140.86 feet, a central angle of 51°44'53" and a chord which bears South 52°04'00" East, 122.94 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(19)    South 02°43'19" West, 187.84 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(20)    South 14°33'56" West, 198.57 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" and being the south corner of the herein described tract of land;

(21)    North 66°51'06" West, 813.96 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22)    North 82°01'44" West, 305.83 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of curvature of a curve to the left;

(23)    In a southwesterly direction, 107.82 feet, along the arc of said curve to the left, having a radius of 135.82 feet, a central angle of 45°29'11" and a chord which bears South 82°28'47" West, 105.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

Page 3 of 4

A-5

24.92 Acres
H, & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(24)     North 18°26'05" West, 863.57 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(25)     North 11°09'17" West, 431.99 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of curvature of a curve to the left;

(26)     In a northwesterly direction, 227.34 feet, along the arc of said curve to the left, having a radius of 139.55 feet, a central angle of 93°20'38" and a chord which bears North 55°26'03" West, 203.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(27)     North 19°58'55" West, 368.24 feet to the POINT OF BEGINNING and containing 24.92 acres (1,086,697 square feet) of land.  This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "B"

### METES AND BOUNDS DESCRIPTION
### TRACT 2
### 120.18 ACRES IN THE
### H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON
### SURVEY NO. 40, ABSTRACT 481
### WILSON COUNTY, TEXAS

A 120.18-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING ALL OF THAT CALLED 120.18-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 5) RECORDED IN VOLUME 1211, PAGE 481 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 120.18-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

COMMENCING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the west right-of-way line of Lake Valley Drive (width varies) marking the southerly point of tangency of a curve to the right of Lot 24 of The Meadows of Quail Run Section 1 as recorded in Volume 9, Page 44 of the Wilson County Plat Records;

THENCE South 30°45'42" East, 316.64 feet, along the common line of Lots 24 and 25 of said Meadows of Quail Run Section 1 and Lake Valley Drive to a point in the northeast line of said Lot 25;

THENCE South 59°14'18" East, 427.11 feet, over and across said Lot 25 and a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L.P. to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a reentrant corner of said Tract 4 and the northeast corner of said Tract 5, a point in the arc of a non-tangent curve to the left and being the POINT OF BEGINNING of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 4 as follows:

(1)  In a southeasterly direction, 21.77 feet, along the arc of said non-tangent curve to the left, having a radius of 172.98 feet, a central angle of 07°12'37" and a chord which bears South 24°41'19" East, 21.75 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(2)  South 27°12'04" East, 879.11 feet to a found 1/2-inch iron rod with cap stamped "NORTHSTAR 4350";

(3)  South 17°34'48" East, 834.37 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

Page 1 of 5

A-7

(4)   North 81°00'17" East, 100.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(5)   South 63°47'04" East, 356.54 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(6)   South 39°39'46" West, 261.83 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)   South 41°13'31" West, 834.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(8)   South 66°05'42" West, 352.09 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(9)   In a southwesterly direction, 352.46 feet, along the arc of said curve to the left, having a radius of 140.01 feet, a central angle of 144°14'04" and a chord which bears South 82°56'39" West, 266.49 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(10)  South 17°17'46" West, 379.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(11)  South 12°32'07" East, 834.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12)  South 06°30'54" West, 367.67 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(13)  In a southwesterly direction, 332.66 feet, along the arc of said curve to the left, having a radius of 139.55 feet, a central angle of 136°34'53" and a chord which bears South 26°30'30" West, 259.30 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(14)  South 48°12'41" East, 582.61 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(15)  South 20°50'51" West, 335.20 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(16)  In a southwesterly direction, 231.62 feet, along the arc of said curve to the left, having a radius of 139.76 feet, a central angle of 94°57'22" and a chord which bears South 55°14'30" West, 206.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(17)  South 15°39'27" West, 244.09 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

120.18 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 461
Wilson County, Texas

(18)     South 42°58'23" West, 813.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(19)     North 68°36'37" West, 372.31 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(20)     In a northeasterly direction, 44.08 feet, along the arc of said curve to the left, having a radius of 137.66 feet, a central angle of 18°20'48" and a chord which bears North 04°07'13" East, 43.89 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(21)     North 02°08'57" West, 572.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22)     North 29°53'19" West, 536.31 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of a called 4.81-acre tract of land (Tract 1) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records and the west corner of said Tract 5 and of the herein described tract of land;

(23)     THENCE North 60°12'12" East, 100.85 feet, along the common line of said Tract 1 and said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a southeast corner of said Tract 1, the west corner of a called 7.84-acre tract of land (Tract 2) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records, and a reentrant corner of said Tract 5 and of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 2 as follows:

(24)     South 68°08'43" East, 903.67 feet to a found 5/8-inch iron rod (leaning) and being the south corner of said Tract 2;

(25)     North 16°45'01" East, 450.11 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" being the east corner of said Tract 2;

(26)     North 76°17'50" West, 903.44 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485" in the southeast line of said Tract 1 marking the north corner of said Tract 2 and a reentrant corner of said Tract 5 and of the herein described tract of land;

(27)     THENCE North 13°11'49" East, 76.37 feet, along the common line of said Tract 1 and said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the east corner of said Tract 1, in an interior line of said Tract 4, and a reentrant corner of said Tract 5 and of the herein described tract of land;

THENCE along the common line of said Tract 4 and said Tract 5 as follows:

Page 3 of 6

A-9

120.18 Acres
H. & T. C. R.R. Co. Survey No. 38, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(28)      North 73°43'18" East, 409.80 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(29)      North 18°55'44" East, 763.32 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(30)      North 14°21'21" West, 834.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(31)      North 02°46'17" East, 371.26 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(32)      In a northeasterly direction, 211.68 feet, along the arc of said curve to the left, having a radius of 139.76 feet, a central angle of 86°46'44" and a chord which bears North 49°23'02" East, 192.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(33)      North 09°05'09" East, 526.75 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(34)      North 13°59'53" West, 834.67 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(35)      South 84°36'42" West, 79.96 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(36)      North 01°49'36" West, 449.81 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" (bent) in the arc of a curve to the left;

(37)      In a northeasterly direction, 69.69 feet, along the arc of said curve to the left, having a radius of 137.53 feet, a central angle of 28°59'26" and a chord which bears North 65°42'44" East, 68.85 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency;

(38)      North 43°29'57" East, 655.19 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

A-10

120.18 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(39)     North 68°22'33" East, 360.71 feet to the POINT OF BEGINNING and
containing 120.18 acres (5,235,106 square feet) of land. This description
accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying,
LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-1"

### METES AND BOUNDS DESCRIPTION
### TRACT 3A
### 60.14 ACRES IN THE
### H. & T. C, R.R. CO. SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY
### NO. 40, ABSTRACT 481, AND A. JACKSON SURVEY NO. 34, ABSTRACT 482
### WILSON COUNTY, TEXAS

A 60.14-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 60.14-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the south right-of-way line of Lake Valley Drive (width varies) marking the northeast corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northerly northwest corner of the herein described tract of land;

(1)    THENCE North 68°12'03" East, 120.00 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northwest corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the northerly northeast corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2)    South 22°00'06" East, 4.03 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(3)    South 23°07'26" West, 35.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4)    South 21°46'28" East, 94.27 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(5)    In a southeasterly direction, 145.78 feet, along the arc of said curve to the left, having a radius of 265.04 feet, a central angle of 31°30'51" and a chord which bears South 37°33'54" East, 143.95 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the point of tangency;

Page 1 of 4

80.14 Acres<br>
I. & T. C. R.R. Co. Survey No. 38, Abstract 171<br>
W. H. L. Jackson Survey No. 40, Abstract 401<br>
A. Jackson Survey No. 34, Abstract 482<br>
Wilson County, Texas

(6)    South 53°14'05" East, 109.12 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)    North 61°25'04" East, 516.81 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(8)    North 62°18'13" East, 879.33 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left in a northerly southwest line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L. P. recorded in Volume 1694, Page 737 of the Wilson County Official Public Records marking the southeast corner of lot 19 of said Meadows of Quail Run Section 1 and a reentrant corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

THENCE along the common line of said Tract 4 and said residue of a called 279.69-acre tract of land as follows:

(9)    In a southeasterly direction, 89.78 feet, along the arc of said curve to the left, having a radius of 143.65 feet, a central angle of 35°48'34" and a chord which bears South 73°39'12" East, 88.33 feet to a found 5/8-inch iron rod at the end of said curve;

(10)    South 01°50'06" East, 449.55 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(11)    South 03°14'35" West, 834.53 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12)    South 01°37'02" West, 458.08 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(13)    In a southeasterly direction, 207.93 feet, along the arc of said curve to the left, having a radius of 140.32 feet, a central angle of 84°54'14" and a chord which bears South 36°31'19" East, 189.42 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(14)    South 02°45'41" West, 375.51 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(15)    South 84°17'20" West, 79.88 feet to a found 5/8-inch iron rod;

(16)    South 02°52'11" West, 834.46 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(17)    South 18°28'11" West, 462.20 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" and being the southeast corner of the herein described tract of land;

Page 2 of 4

60.14 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 461
A. Jackson Survey No. 34, Abstract 482
Wilson County, Texas

(18)     South 67°26'01" West, 256.00 feet to a found 5/8-inch iron rod with
         aluminum cap stamped "PRO-TECH" marking the northeast corner of a
         called 4.81-acre tract of land (Tract 1) described in a deed to National Loan
         Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County
         Official Public Records;

(19)     THENCE South 83°28'02" West, 77.35 feet, along the common line of said Tract
         1 and of the herein described tract of land to a found 5/8-inch iron rod with
         aluminum cap stamped "PRO-TECH" in an easterly line of a called 69.95-acre tract
         of land (Tract 5) described in a deed to National Loan Investors, L.P. recorded in
         Volume 1594, Page 737 of the Wilson County Official Public Records, and the
         southwest corner of the herein described tract of land;

         THENCE along the common line of said called 69.95-acre tract of land (Tract 5)
         and the said residue of a called 279.69-acre tract of land and of the herein
         described tract of land as follows:

(20)     North 08°56'44" East, 950.32 feet to a found 5/8-inch iron rod with
         aluminum cap stamped "PRO-TECH";

(21)     North 08°36'17" West, 834.42 feet to a found 5/8-inch iron rod with
         aluminum cap stamped "PRO-TECH";

(22)     North 09°59'21" West, 100.00 feet to a found 5/8-inch iron rod with
         aluminum cap stamped "PRO-TECH";

(23)     North 50°14'17" West, 361.52 feet to a found 5/8-inch iron rod with
         aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(24)     in a northwesterly direction, 206.56 feet, along the arc of said curve to the
         left, having a radius of 138.99 feet, a central angle of 85°08'51" and a chord
         which bears North 02°17'01" West, 188.07 feet to a found 5/8-inch iron rod
         with aluminum cap stamped "PRO-TECH" at the end of said curve;

(25)     North 33°40'28" West, 183.06 feet to a found 5/8-inch iron rod with
         aluminum cap stamped "PRO-TECH";

(26)     North 53°18'51" West, 834.92 feet to a found 5/8-inch iron rod with
         aluminum cap stamped "PRO-TECH" marking the southeast corner of Lot
         10 of said Meadows of Quail Run Section 1;

         THENCE along the common line of said Meadows of Quail Run Section 1 and said
         residue of a called 279.69-acre tract of land as follows:

(27)     North 28°00'40" West, 108.19 feet to a found 5/8-inch iron rod with
         aluminum cap stamped "PRO-TECH";

Page 3 of 4

A-14

60.14 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
Wilson County, Texas

(28)     North 21°48'15" West, 77.80 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the southwest corner of Lot 11 of said Meadows of Quail Run Section One;

(29)     North 55°42'57" East, 247.34 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a non-tangent curve to the right at the southeast corner of said Lot 11;

(30)     in a northwesterly direction, 39.47 feet, along the arc of said non-tangent curve to the right, having a radius of 335.00 feet, a central angle of 06°45'02" and a chord which bears North 25°10'46" West, 39.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency;

(31)     North 21°48'15" West, 94.38 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(32)     North 66°48'15" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Lot 11 and the southeast corner of said 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1;

(33)     **THENCE** North 21°48'15" West, 5.00 feet to the **POINT OF BEGINNING** and containing 60.14 acres (2,619,822 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-2"

### METES AND BOUNDS DESCRIPTION
### TRACT 3B
### 0.456 ACRE IN THE
### W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481
### WILSON COUNTY, TEXAS

A 0.456-ACRE TRACT OF LAND SITUATED IN THE W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 0.456-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the south right-of-way line of Lake Valley Drive (width varies) marking the northeast corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northerly northwest corner of the herein described tract of land;

(1) THENCE North 58°41'18" East, 120.00 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northwest corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the northerly northeast corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2) South 31°26'05" East, 5.03 feet to a found 5/8-inch iron rod with aluminum cap stamped " PRO-TECH" at the northwest corner of Lot 22 of said Meadows of Quail Run Section One;

(3) South 13°41'18" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4) South 31°20'38" East, 246.73 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northwest line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records marking the southwest corner of said Lot 22 and the southeast corner of the herein described tract of land;

Page 1 of 2

A-16

0.456 Acre
W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(5)     THENCE South 68°13'58" West, 71.19 feet, along the common line of said Tract 1 and of the herein described tract of land to a 5/8-inch iron rod set with cap stamped "RPLS 5485" marking a southeast corner of Lot 21 of said Meadows of Quail Run Section 1 and the southwest corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(6)       North 31°17'51" West, 234.95 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)       North 76°17'51" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Lot 21;

(8)     North 31°17'51" West, 5.00 feet to the POINT OF BEGINNING and containing 0.456 acres (19,863 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-3"

METES AND BOUNDS DESCRIPTION
TRACT 3C
1.924 ACRES IN THE
W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481 AND
A. JACKSON SURVEY NO. 34, ABSTRACT 482
WILSON COUNTY, TEXAS

A 1.924-ACRE TRACT OF LAND SITUATED IN THE W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481 AND A. JACKSON SURVEY NO. 34, ABSTRACT 482, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 1.924-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the west right-of-way line of Lake Valley Drive (width varies) marking the southeast corner of a 6-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northeast corner of the herein described tract of land;

(1) THENCE South 30°29'56" East, 119.80 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northeast corner of a 6-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the east corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2) South 69°28'12" West, 5.00 feet to a found 5/8-inch iron rod with aluminum cap stamped " PRO-TECH" at the easterly northeast corner of Lot 34 of said Meadows of Quail Run Section One;

(3) North 75°31'46" West, 35.38 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4) South 59°28'12" West, 60.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point on curvature of an curve to the left;

(5) In a southwesterly direction, 168.78 feet, along the arc of said curve to the left, having a radius of 2,470.64 feet, a central angle of 03°54'51" and a chord which bears South 57°30'22" West, 168.75 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northwest corner of said Lot 34 and a reentrant corner of the herein described tract of land;

Page 1 of 2

A-18

1.924 Acres
W. H. L. Jackson Survey No. 40, Abstract 481
and A. Jackson Survey No. 34, Abstract 482
Wilson County, Texas

(6)      South 30°31'48" East, at 170.27 feet pass a 5/8-inch iron rod with aluminum cap
         stamped "PRO-TECH" marking the southwest corner of said Lot 34 and the
         northwest corner of Lot 35 of said Meadows of Quail Run Section 1, continuing in
         all for a total distance of 263.80 feet to a 5/8-inch iron rod with aluminum cap
         stamped "PRO-TECH" in a northeast line of a called 70.47-acre tract of land (Tract
         4) described in a deed to National Loan Investors, L. P. recorded in Volume 1594,
         Page 737 Wilson County Official Public Records being the arc of a curve to the
         left, same being the northerly southwest corner of said Lot 35 and the southeast
         corner of the herein described tract of land;

THENCE along the common line of said Tract 4 and said residue of a called 279.69-acre
tract of land as follows:

(7)      in a southwesterly direction, 112.66 feet, along the arc of said curve to the left,
         having a radius of 140.47 feet, a central angle of 45°57'05" and a chord which
         bears South 57°41'35" West, 109.68 feet to a found 5/8-inch iron rod with
         aluminum cap stamped "PRO-TECH" at the end of said curve;

(8)      North 63°48'44" West, 346.14 feet to a 5/8-inch iron rod set with cap stamped
         "RPLS 5485" marking the point of curvature of a non-tangent curve to the right, the
         southwest corner of Lot 33 of said Meadows of Quail Run Section One and the
         west corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue
of a called 279.69-acre tract of land as follows:

(9)      in a northeasterly direction, 470.91 feet, along the arc of said non-tangent curve to
         the right, having a radius of 2,635.00 feet, a central angle of 10°38'36" and a chord
         which bears North 54°08'54" East, 470.23 feet to a found 5/8-inch iron rod with
         aluminum cap stamped "PRO-TECH" at the end of said curve;

(10)     North 59°28'12" East, 80.45 feet to a found 5/8-inch iron rod with aluminum cap
         stamped "PRO-TECH";

(11)     North 14°53'31" East, 35.40 feet to a found 5/8-inch iron rod with aluminum cap
         stamped "PRO-TECH" at the easterly southeast corner of said Lot 33;

(12)     North 58°48'46" East, 4.86 feet to the POINT OF BEGINNING and containing
         1.924 acres (83,807 square feet) of land. This description accompanies an
         Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the
         3rd day of May, 2022.

A-19

# EXHIBIT "C-4"

METES AND BOUNDS DESCRIPTION
TRACT 3D
152.88 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY
NO. 40, ABSTRACT 481, A. JACKSON SURVEY NO. 34, ABSTRACT 482, AND B. H.
STEPHENS SURVEY, ABSTRACT 505
WILSON COUNTY, TEXAS

A 152.88-ACRE TRACT, OF LAND SITUATED IN THE H. & T. C. R.R. CO.
SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY NO. 40,
ABSTRACT 481, AND B. H. STEPHENS SURVEY, ABSTRACT 505, WILSON
COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE
TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD
(TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON
COUNTY OFFICIAL PUBLIC RECORDS, SAID 152.88-ACRE TRACT BEING
MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS,
(BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH
CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-
TECH" in the north line of a called 131.73-acre tract of land described in a deed to
Scott D. & Sharon E. Garrett recorded in Volume 925, Page 506 of the Wilson
County Official Public Records marking the southwest corner of Lot 42 of the
Meadows of Quail Run Section One recorded in Volume 9, Page 44 of the Wilson
County Plat Records and the east corner of said residue of a called 279.69-acre
tract of land;

THENCE along the common line of said 131.73-acre tract of land and said residue
of a called 279.69-acre tract of land as follows:

(1)     South 59°15'57" West, 1,655.99 feet to a 5/8-inch iron rod set with cap
        stamped "RPLS 6465";

(2)     South 59°22'36" West, 378.76 feet to a found 1/2-inch iron rod;

(3)     South 48°28'19" West, 95.16 feet to a fence post for corner marking the
        northwest corner of said called 131.73-acre tract of land and a reentrant
        corner of the herein described tract of land;

(4)     South 31°03'66" East, 706.81 to a found 3-inch metal fence post for corner;

(5)     South 05°33'39" East, 199.78 feet to a found 1-inch iron pipe marking the
        northwest corner of a called 960.00-acre tract of land described in a deed
        to Margaret Chance Evans Rael, et al, recorded in Volume 1541, Page 386
        of the Wilson County Official Public Records and the southwest corner of
        said 131.73-acre tract of land;

THENCE along the common line of said called 960.00-acre tract of land and the
said residue of a called 279.69-acre tract of land and of the herein described tract
of land as follows:

Page 1 of 6

A-20

152.88 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. I. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
and B. H. Stephens Survey, Abstract 505
Wilson County, Texas

(6) South 04°46'07" East, 88.20 feet to a found 5/8-inch iron rod with cap stamped "W, DOVE 4143";

(7) South 31°07'27" East, 1,073.20 feet to a found 1/2-inch iron rod marking the northeast corner of a called 317.60-acre tract of land described in a deed to Charles and Mary Meeks recorded in Volume 1788, Page 774 of the Wilson County Official Public Records and the southeast corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

(8) THENCE South 59°50'04" West, 3,847.77 feet along the common line of said 317.60-acre tract of land and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of a called 27.22-acre tract of land described in a deed to Campo Golf Management Company, LLC recorded in Volume 1080, Page 26 of the Wilson County Official Public Records and the southwest corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

THENCE along the common line of said called 27.22-acre tract of land and said residue of a called 279.69-acre tract of land as follows:

(9) North 10°35'21" West, 1,042.65 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(10) North 84°04'23" West, 830.86 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of a called 89.95-acre tract of land (Tract 5) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 and being the most westerly corner of the herein described tract of land;

THENCE along the common line of said Tract 5 and said residue of a called 279.69-acre tract of land as follows:

(11) North 06°57'31" East, 459.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12) South 84°07'07" East, 622.03 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(13) North 14°35'16" East, 303.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(14) North 02°46'13" East, 188.29 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

162.88 Acres
H. & T. C. R.R. Co, Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
and B. H. Stephens Survey, Abstract 505
Wilson County, Texas

(15)    in a northeasterly direction, 49.47 feet, along the arc of said curve to the left, having a radius of 141.84 feet, a central angle of 19°58'56" and a chord which bears North 83°06'21" East, 49.22 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485" marking the point of tangency;

(16)    North 67°03'57" East, 662.39 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(17)    North 14°11'45" East, 214.37 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southwest corner of a called 0.93-acre tract of land (Tract 3) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737;

(18)    THENCE South 89°19'04" East, 196.37 feet along the common line of said Tract 3 and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a southwest line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 marking the southeast corner of said Tract 3;

THENCE along the common line of said Tract 4 and said residue of a called 279.69-acre tract of land as follows:

(19)    South 12°37'41" East, 369.03 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(20)    South .08°14'34" East, 473.39 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point of curvature of a curve to the left;

(21)    In a southeasterly direction, 376.31 feet, along the arc of said curve to the left, having a radius of 140.25 feet, a central angle of 153°43'51" and a chord which bears South 81°49'43" East, 273.16 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(22)    South 68°37'11" East, 382.70 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(23)    South 38°22'03" East, 100.08 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(24)    North 60°11'44" East, 834.41 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(25)    North 14°58'30" East, 487.63 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point of curvature of a curve to the left;

Page 3 of 5

162.88 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 491
A. Jackson Survey No. 34, Abstract 482
and B. H. Stephens Survey, Abstract 505
Wilson County, Texas

(26)     In a northwesterly direction, 188.40 feet, along the arc of said curve to the left, having a radius of 139.26 feet, a central angle of 77°30'46" and a chord which bears North 30°42'23" West, 174.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(27)     North 20°50'49" East, 325.87 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(28)     North 50°22'32" East, 100.16 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(29)     North 31°03'54" West, 604.03 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point of curvature of a curve to the left;

(30)     In a northwesterly direction, 87.29 feet, along the arc of said curve to the left, having a radius of 136.59 feet, a central angle of 36°36'56" and a chord which bears North 57°29'20" West, 85.81 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(31)     North 06°32'22" East, 372.29 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(32)     North 86°04'12" East, 79.64 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(33)     North 04°41'13" East, 834.64 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(34)     North 07°45'05" East, 288.10 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point of curvature of a curve to the left;

(35)     In a northwesterly direction, 67.40 feet, along the arc of said curve to the left, having a radius of 144.70 feet, a central angle of 26°41'22" and a chord which bears North 02°41'58" West, 66.80 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(36)     North 65°02'37" East, 358.83 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(37)     South 40°13'05" East, 79.18 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(38)     North 55°27'33" East, 834.57 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

A-23

152,88 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 461
A. Jackson Survey No. 34, Abstract 482
and B. H. Stephens Survey, Abstract 505
Wilson County, Texas

(39)     North 29°34'17" East, 305.54 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the west corner of Lot 36 of said Meadows of Quail Run Section One and the north corner of the herein described tract of land;

THENCE along the common line of said residue of a called 279.69-acre tract of land and said Meadows of Quail Run Section One as follows:

(40)     South 30°33'05" East, 439.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(41)     South 45°10'35" East, 638.61 feet to the POINT OF BEGINNING and containing 152.88 acres (6,659,424 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.



**Wilson County**
**Genevieve Martinez**
**Wilson County Clerk**

*VG-1554-2024-141143*

---

### Instrument Number:  141143

Real Property Recordings

Recorded On: March 26, 2024 04:18 PM                     Number of Pages: 30

---

#### " Examined and Charged as Follows: "

Total Recording: $137.00

---

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

File Information:                                         Record and Return To:

Document Number:      141143                             SASHA GARZA
Receipt Number:       20240326000033                     4600 FULLER AVE STE 400
Recorded Date/Time:   March 26, 2024 04:18 PM
User:                 Liliana L                          IRVING TX 75038
Station:              cclerk01

---



**STATE OF TEXAS**
**Wilson County**
I hereby certify that this Instrument was filed in the File Number sequence on the date/time
printed hereon, and was duly recorded in the Official Records of Wilson County, Texas

*Genevieve Martinez*

Genevieve Martinez
Wilson County Clerk
Floresville, TX

Exhibit B

# DEED OF TRUST AND SECURITY AGREEMENT

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

Date: January 2, 2023

Grantor, whether one of more:     OTISCO RDX, LLC

Grantor(s) Mailing Address:     1001 W. Loop South, Suite 700, Houston

Texas 77027

Trustee:     A. Kelly Williams

Trustee's Mailing Address:     2954 Chevy Chase Dr., Houston, Texas 77019

Beneficiary:     Milestone Capital CRE I, LLC

Beneficiary's Mailing Address:     2704 Joanel, Houston Texas 77027

Promissory Note (Note):

    Date: January 2, 2023

    Amount: $5,900,000.00

    Maker: OTISCO RDX, LLC

    Payee: Milestone Capital CRE I, LLC

    Terms of Payment: As provided in the Note.

**Property (including any improvements):**

In order to secure the payment, performance and observance of all indebtedness owed  Beneficiary by Maker or any guarantor of such indebtedness and the obligations of  Grantor hereinafter set forth, including but not limited to the Note described above  ("Indebtedness"), Grantor has granted and conveyed, and does hereby mortgage, grant,  warrant, assign, convey, pledge and set over unto the Trustee, **IN TRUST, WITH  POWER OF SALE**, all of the following described land and

1

interests in land, estates, easements, rights, improvements, property, fixtures, equipment, furniture, furnishings, appliances and appurtenances (hereinafter collectively referred to as the "Property"):

(a) All those certain tracts, or parcels of land more particularly described as **"Exhibit A"**.

(b) All buildings, and improvements of every nature whatsoever now or hereafter situated on the Land.

(c) All construction materials, vaults, gas, electric and other utility fixtures, radiators, heaters, engines, machinery, boilers, ranges, elevators, plumbing and heating fixtures, draperies, carpeting and other floor coverings, fire extinguishers and any other safety equipment, washers, dryers, water heaters, water fountains, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus and appurtenances, window screens, awnings and storm sashes, which are or shall be attached to said buildings, structures or improvements and all other furnishings, furniture, goods which are or are to become fixtures, machinery, equipment, inventory, supplies, appliances, and tangible personal property of every kind and nature whatsoever now or hereafter owned by Grantor and located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of the Property, and all attachments, additions, improvements, after-acquired property, renewals, proceeds and replacements of any of the foregoing and all the right, title and interest of Grantor in any of the foregoing property which is subject to or covered by any conditional sales contract, chattel mortgage or similar lien or claim, together with the benefit of any deposits or payments now or hereafter made by Grantor or on behalf of Grantor, all of which are hereby declared and shall be deemed to be fixtures and accessions to the freehold and a part of the Property as between the parties hereto and all persons claiming by, through or under them, and which shall be deemed to be a portion of the security for the indebtedness herein described and to be secured by this Deed of Trust.

(d) All now owned or hereafter acquired easements, rights-of-way, strips, gores of land, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances whatsoever, in any way belonging, relating or appertaining to the Property or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, and the reversions, remainders, rents, issues, profits, revenues, accounts, contract rights and general intangibles of or arising from the Property (including without limitation all payments under room occupancy agreements, all leases or tenancies, proceeds of insurance, prepaid insurance premiums, condemnation payments, tenant security deposits, escrow funds and payments from motel guests), and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Grantor of, in and to the same.

(e) Any and all leases, subleases, rental agreements, occupancy agreements, licenses, concessions, entry fees, other agreements which grant a possessory interest in all or any part of the Property, together with all rents, issues, profits, revenues, proceeds, awards,

2

accounts, security deposits and other benefits now or hereafter arising from the use and enjoyment of the Property or any part thereof.

(f) All plans and specifications for development of or construction of improvements on the Property; all contracts and subcontracts relating to the construction of improvements on the Property; all accounts, contract rights, instruments, documents, general intangibles, and chattel paper arising from or by virtue of any transactions relating to the Property; all permits, licenses, franchises, certificates, and other rights and privileges obtained in connection with the Property; all proceeds payable or to be payable under each policy of insurance relating to the Property; and all products and proceeds of the foregoing.

(g) All of Grantor's right, but not the obligations, in and to, (1) all wastewater discharge capacity attributable or allocable to all or any portion of the Land, (2) all permits, licenses, franchises, certificates and other rights and privileges obtained in connection with the Property (including, without limitation, any form of reservation for utility capacity that may be granted by an governmental subdivision, (3) all proceeds (including premium refunds) of each policy of insurance relating to the Land or the Property, (4) all rights to reimbursement and other amount due from any municipal utility district, and (5) all other interests of every kind and character that Grantor now has or at any time hereafter acquires in and to the Land and/or Property and all property that is used or useful in connection therewith, including rights of ingress and egress and all reversionary rights or interest of Grantor with respect to same.

**Prior Lien(s) (including recording information):** None

**Other Exceptions to Conveyance and Warranty:** None

   **TO HAVE AND TO HOLD** the Property, with all privileges and appurtenances thereunto belonging, unto the Trustee, forever. Grantor covenants that Grantor is lawfully seized and possessed of the Property as aforesaid and has all requisite right and authority to convey the same, that the same is unencumbered and by this reference made a part hereof, and that Grantor does warrant and will forever defend the title thereto to the Trustee and the Beneficiary against the claims of all persons whomsoever.

**Grantor's Obligations**

Grantor agrees to:

1. **Payment of Indebtedness.** Maker will pay the Note according to the terms thereof and all other sums now or hereafter secured hereby promptly as the same shall become due.

2. **Taxes, Liens and Other Charges.**

   (a)  In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, subsequent to the date hereof, in any manner changing or modifying the laws now in force governing the taxation of the Indebtedness or this Deed of Trust or the manner of collecting taxes so as to adversely affect the Beneficiary

(exclusive of any tax of Beneficiary's net income), Grantor will promptly pay any such tax. If Grantor fails to make such prompt payment or if, in the opinion of the Beneficiary, any such state, federal, municipal, or other governmental law, order, rule or regulation prohibits Grantor from making such payment or would penalize the Beneficiary if Grantor makes such payment or if, in the opinion of the Beneficiary, the making of such payment might result in the imposition of interest beyond the maximum amount permitted by applicable law, then the entire balance of the principal sum secured by this Deed of Trust and all interest accrued thereon shall, at the option of the Beneficiary, become immediately due and payable.

(b)     Grantor will pay (to the extent same are not paid from the escrowed funds provided for herein), before the same become delinquent, all taxes, liens, assessments and charges of every character including all utility charges, now or hereafter levied or assessed upon the Property; and upon demand will furnish the Beneficiary receipted bills evidencing such payment. Grantor shall furnish proof, satisfactory in form and substance to Beneficiary, of such payment. Grantor shall not authorize any person or entity to pay current or delinquent ad valorem taxes due or to become on the Property if such person or entity to receive a transfer of tax lien under Section 32.06 of the Texas Tax Code (as it may be amended or modified). In the event any transfer of a tax lien is executed by a tax collector pursuant to Section 32.06 of the Texas Tax Code (as it may be amended or modified) with respect to the Property, Grantor shall, within ten (10) days of the date written notice is sent from Beneficiary to Grantor, fully and finally pay the transferee of said tax lien the entirety of all principal, interest and expenses (whether or not then due and payable, or to become due and payable) owing to said transferee with respect to said transferred tax lien, and deliver proof, satisfactory in form and substance to Beneficiary, of such payment, along with a signed and notarized release of said tax lien executed by said transferee. If Grantors fail to pay any taxes and assessments (including interest, penalties, costs and expenses) against the Property, enters into a tax lien loan to any person or entity, allows any person or entity, to receive a transfer of an ad valorem tax lien, of defers the payment of taxes or assessments, Beneficiary may in Beneficiary's sole discretion, in addition to Beneficiary's other rights as provided herein, elect to advance and pay the same at Grantor's expense.

(c)     Grantor will not suffer or permit any mechanic's, materialman's, laborer's, statutory or other lien to remain outstanding upon all or any part of the Property.

(d)     Grantor, at its expense, may contest, after prior written notice to Beneficiary, by appropriate legal proceedings conducted in good faith and with due diligence, the amount, validity or application, in whole or in part, of any taxes, liens, assessments or charges levied or assessed upon the Property or any mechanic's, materialman's, laborer's, statutory or other lien filed against the Property, so long as such proceedings operate to prevent the collection or other realization thereon, the sale or forfeiture of the Property or any part thereof to satisfy the same or the impairment of Beneficiary's lien; provided that (i) during such contest the Grantor shall, at the option of the Beneficiary, provide Beneficiary with security satisfactory to Beneficiary, assuring the payment of the Indebtedness and of any additional interest charge, penalty or expense arising from or incurred as a result of such contest, and (ii) if at any time payment of any obligation

4

imposed upon the Grantor under this Paragraph shall become necessary to prevent the sale of forfeiture of the Property or any part thereof to satisfy the same, then Grantor shall pay the same in sufficient time to prevent sale or forfeiture.

3.  **Insurance.** Grantor agrees to keep the Property insured against loss or damage by fire and other casualty with extended coverage and against any other risks or hazards which in the opinion of Beneficiary should be insured against, and in any case against all risks which persons engaged in the same business as is carried on at the Property customarily insure against, with the minimum amount of said insurance to be no less than the amount of the Note. Grantor shall also carry insurance against the risk of rental or business interruption at the Property, in an amount deemed satisfactory by Beneficiary. If flood insurance is required pursuant to the Secretary of Housing and Urban Development, the Federal Emergency Management Agency, or by such other official or agency as shall from time to time be authorized by federal or state law to make such designation pursuant to the National Flood Insurance Act of 1968 or the Flood Disaster Protection Act of 1973, as such Acts may, from time to time, be amended and in effect, or pursuant to any other national or state program of flood insurance or otherwise, then same shall be provided by Grantor. All of such insurance shall be placed with a company or companies and in such form and with such endorsements as may be approved or required by Beneficiary. Loss under all such insurance policies shall be endorsed with a standard, non-contributory Beneficiary's clause in favor of Beneficiary. Grantor shall also carry public liability insurance, in such form, amount and with such companies as Beneficiary may from time to time require, naming Beneficiary as an additional insured. The policy or policies evidencing all insurance referred to in this paragraph and receipts for the payments of premiums thereon shall be delivered to and held by Beneficiary. All such insurance policies shall contain a provision requiring at least thirty (30) days' notice to Beneficiary prior to any cancellation or modification. Grantor shall give Beneficiary satisfactory evidence of renewal of all such policies with premiums paid at least fifteen (15) days before expiration. Grantor agrees to pay all premiums on such insurance as they become due and will not permit any condition to exist on or with respect to the Property which would wholly or partially invalidate any insurance thereon. If Grantor defaults in the insurance requirements provided herein, whether by payment or otherwise or any part thereof or in assigning and delivering the policies, at its option, Beneficiary may affect such insurance from year to year, or as needed, at its discretion and pay the premiums therefor, and any such sums advanced by Beneficiary, shall bear interest and shall, at the option of Beneficiary, either be paid by Grantor to Beneficiary upon demand or added to the principal portion of the Note and in either case shall be secured hereby. Beneficiary shall not by the fact of approving, disapproving, accepting, preventing, obtaining or failing to obtain any such insurance, incur any liability for the form or legal sufficiency or absence of insurance contracts, solvency of insurers, or payment of losses, and Grantor hereby expressly assumes full responsibility therefor and all liability, if any, thereunder. Effective upon any default hereunder, all of Grantor's right, title and interest in and to all such policies and any unearned premiums paid thereon are hereby assigned to Beneficiary, which shall have the right, but not the obligation, to assign the same to any purchaser of the Property at any foreclosure sale or other disposition thereof. The requirements of Beneficiary for insurance under the provisions of this paragraph may be modified or amended in whole or in part by Beneficiary, in its reasonable discretion, and Grantor agrees, upon any expiration or any existing policy or policies of insurance, to provide a replacement policy or policies which shall meet such amended or modified insurance standards. In the event of a loss, Grantor shall give immediate written notice to the insurance

5

carrier and Beneficiary. Grantor hereby appoints Beneficiary as its attorney-in-fact for the purposes hereinafter set out, and authorizes and empowers Beneficiary, at Beneficiary's option and in Beneficiary's sole discretion as attorney-in-fact for Grantor, to make proof of loss, to adjust and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Beneficiary's expenses incurred in the collection of such proceeds. Grantor understands and agrees that the power of attorney hereby granted to Beneficiary is a power coupled with an interest and is irrevocable until Beneficiary's interest hereunder is terminated by the payment and performance of all of Grantor's obligations and indebtedness secured hereby. Grantor further authorizes Beneficiary, at Beneficiary's option, (a) to hold all or any portion of such proceeds to be used to reimburse Grantor for the costs of reconstruction or repair of the Property, or (b) to apply all or any portion of such proceeds to the payment of the sums secured by this Deed of Trust, whether or not then due. In the event Beneficiary elects to require repair, restoration or rebuilding as provided herein, Grantor shall deposit with Beneficiary any funds which may be required for such repair, restoration or rebuilding in excess of the net insurance proceeds received, which funds shall be deposited with Beneficiary and held and disbursed by Beneficiary, together with the net insurance proceeds received, in accordance with the usual practices of Beneficiary or other lenders making construction loans. In the event Beneficiary elects to require repair, restoration or rebuilding hereunder, within ninety (90) days after notice to Grantor of such election Grantor shall deliver to Beneficiary plans and specifications for such rebuilding, restoration or repair acceptable to Beneficiary, which acceptance shall be evidenced by Beneficiary's written consent thereto, and Grantor shall thereafter commence the rebuilding, restoration or repair and complete the same, all in substantial accordance with the plans and specifications, within four (4) months after the date of the damage or destruction. In the event Beneficiary elects to require rebuilding, restoration or repair hereunder and Grantor fails to comply with the requirements of this Deed of Trust with respect thereto, Beneficiary may demand the entire outstanding balance of the principal sum secured by this Deed of Trust and all interest accrued thereon and demand immediate payment of all of such indebtedness, and may apply the net insurance proceeds received, to the payment of all of such indebtedness. If the insurance proceeds are applied to the payment of the sums secured by this Deed of Trust, any such application of proceeds to principal shall be in such order as Beneficiary may determine and, if after so applying such insurance proceeds Beneficiary reasonably determines the remaining security to be inadequate to secure the remaining indebtedness, Grantor shall upon written demand from Beneficiary prepay on principal such an amount as will reduce the remaining indebtedness to a balance for which adequate security is present.

4.     **Impounds.** Upon and an event of default, Grantor shall, if requested by Beneficiary, deposit with Beneficiary or Beneficiary's designee on each monthly payment date as set forth in the Note one-twelfth (1/12) of the reasonably estimated amount of real estate taxes assessed or to be assessed against the Property for the then current year, together with one-twelfth (1/12) of the reasonably estimated total of all insurance premiums required to be paid for the then current year, as estimated by Beneficiary, together with any extra amount necessary so that the next installments of real property taxes and insurance premiums may be paid from the deposit. Such moneys shall at proper times be progressively returned to Grantor for use in the actual payment of said taxes and said insurance premiums or, at the sole election of Beneficiary, Beneficiary may use said moneys in actual payment of such taxes and premiums, but nothing in this paragraph shall release Grantor

from its obligations to pay said taxes as the same become due and payable under the provisions hereof and to maintain in force all insurance policies as required hereby. All impounds required under this paragraph shall be deposited in a non-interest bearing account of Beneficiary, to be withdrawn by Beneficiary at such times and in such amounts as shall be deemed appropriate by Beneficiary. All amounts deposited under this paragraph are hereby assigned to Beneficiary as additional security for all indebtedness secured by this Deed of Trust, and so long as any Default as set forth herein including a default in the payment of any money or the performance of any covenant or obligation herein contained or secured hereby exists, then any deposits made by Grantor under this paragraph may, at the option of Beneficiary, be applied to the payment of principal and interest or other indebtedness secured hereby.

5.    **Condemnation and Other Awards.** If the Property or any part thereof is taken or diminished in value, or if a consent settlement is entered, by or under threat of such proceeding, the award or settlement payable to Grantor by virtue of its interest in the Property shall be, and by these presents is, assigned, transferred and set over unto, and to be held by Beneficiary subject to the lien and security interest of this Deed of Trust, and disbursed at Beneficiary's option, (a) to hold all or any portion of such proceeds to be used to reimburse Grantor for the costs of reconstruction or repair of the Property, or (b) to apply all or any portion of such proceeds to the payment of the sums secured by this Deed of Trust, whether or not then due. In the event Beneficiary elects to require repair, restoration or rebuilding as provided herein, Grantor shall deposit with Beneficiary any funds which may be required for such repair, restoration or rebuilding in excess of the net funds received in respect of the taking or diminution in value, in accordance with usual practices of Beneficiary or other lenders making construction loans. In the event Beneficiary elects to require repair, restoration or rebuilding hereunder, within ninety (90) days after notice to Grantor of such election Grantor shall deliver to Beneficiary plans and specifications for such rebuilding, restoration or repair acceptable to Beneficiary, which acceptance shall be evidenced by Beneficiary's written consent thereto, and Grantor shall thereafter commence the rebuilding, restoration or repair and complete same, all in substantial accordance with the plans and specifications, within four (4) months after the date of the taking of diminution in value. In the event Beneficiary elects to require rebuilding, restoration or repair hereunder and Grantor fails to comply with the requirements of this Deed of Trust with respect thereto, Beneficiary may demand the entire outstanding balance of the principal sum secured by this Deed of Trust and all interest accrued thereon and demand immediate payment of all of such indebtedness, and may apply the net funds received in respect of the taking or diminution in value to the payment of such indebtedness. If the proceeds are applied to the payment of the sums secured by this Deed of Trust, any such application of proceeds to principal shall be in such order as Beneficiary may determine and, if after so applying such proceeds Beneficiary reasonably determines the remaining security to be inadequate to secure the remaining indebtedness, Grantor shall upon written demand from Beneficiary prepay on principal such an amount as will reduce the remaining indebtedness to a balance for which adequate security is present. Any award for the Land shall be paid solely to the Beneficiary.

6.    **Care of Property.**

(a) Grantor will keep the buildings, parking areas, roads and walkways, recreational facilities, landscaping and all other improvements of any kind now or hereafter erected on the Land

7

or any part thereof, and the fixtures, furnishings and equipment therein and thereon, in good condition and repair, will not commit or suffer any waste and will not do or suffer to be done anything which will increase the risk of fire or other hazard to the Property or any part thereof.

(b) Grantor will not remove or demolish or alter the structural character of any improvement located on the Land without the written consent of the Beneficiary.

(c) If the Property or any part thereof is damaged by fire or any other cause, Grantor will give immediate written notice thereof to the Beneficiary.

(d) The Beneficiary, Trustee or their respective representatives are hereby authorized to enter upon and inspect the Property at any time during normal business hours or, upon an occurrence of an Event of Default, at any time.

(e) Grantor will promptly comply with all present and future laws, ordinances, rules and regulations of any governmental authority affecting the Property or any part thereof. Grantor will deliver to the Beneficiary within ten (10) days after Grantor's receipt thereof copies of any additional governmental permits or approvals or disapprovals or notices issued with regard to the Property or any portion thereof.

7.    **Leases and Other Agreements Affecting Property.** Grantor will duly and punctually perform all terms, covenants, conditions and agreements binding upon it under any lease, sublease, rental agreement, occupancy agreement or any other agreement of any nature whatsoever which involves or affects the Property or any part thereof. Grantor will furnish the Beneficiary with executed copies of all leases, subleases, rental agreements or occupancy agreements now or hereafter created upon the Property or any part thereof. Grantor will not without the express written consent of the Beneficiary, enter into any lease, sublease or occupancy agreements with respect to the Property or any portion thereof. Grantor will not, without the express written consent of the Beneficiary, terminate or modify either orally or in writing, any lease, sublease, rental agreement or occupancy agreement now existing or hereafter created upon the Property or any part thereof, nor will Grantor permit any assignment or a subletting by any Tenant without the prior express written consent of the Beneficiary.

8.    **Security Agreement and Fixture Filing.** Insofar as (i) any of the Property and, (ii) all other personal property either referred to or described in this Deed of Trust, or in any way connected with the use or enjoyment of the Property (hereinafter all collateral as defined herein shall be collectively referred to as "Collateral") this Deed of Trust, in compliance with the provisions of the Uniform Commercial Code as enacted in the State of Texas as it may be amended from time to time (the "UCC"), is hereby made and declared to be: (x) a security agreement, encumbering the Collateral and (y) a fixture filing. Grantor does hereby grant to the Beneficiary a continuing lien and security interest in and to all of said Collateral and all replacements, substitutions, additions and proceeds thereof and all after-acquired property relating thereto. A financing statement or statements may be filed. Grantor covenants and agrees that, prior to changing its name, identity or structure, it will so notify the Beneficiary and will promptly execute any financing statements or other instruments deemed necessary by the Beneficiary to prevent any

filed financing statement from becoming seriously misleading or losing its perfected status. The remedies for any violation of the covenants, terms and conditions of the security agreement herein contained shall be (i) as prescribed herein, or (ii) as prescribed by general law, or (iii) as prescribed by the specific statutory consequences now or hereafter enacted and specified in the UCC, all at the Beneficiary's sole election. Grantor and the Beneficiary agree that the filing of such financing statement(s) in the records normally having to do with personal property shall never be construed in anywise derogating from or impairing this declaration and hereby stated intention of Grantor and the Beneficiary that everything used in connection with the production of income from the Property, adapted for use therein, and/or which is described in the Deed of Trust, is, and at all times and for all purposes and in all proceedings both legal or equitable shall be, regarded as part of the real estate irrespective of whether (a) any such item is physically attached to the improvements, (b) serial numbers are used for the better identification of certain items capable of being thus identified in a recital contained herein, or (c) any such item is referred to or reflected in any such financing statement(s) so filed at any time. Similarly, the mention in any such financing statement(s) of the rights in and to (aa) the proceeds of any insurance policy relating to the Property, or (bb) any award in eminent domain proceedings for a taking or for loss of value, or (cc) Grantor's interest as lessor in any present or future lease, sublease, or rights to income growing out of the use and/or occupancy of the Property, whether pursuant to lease, sublease, or otherwise, shall never be construed as in anywise altering any of the rights of the Beneficiary as determined by this instrument or impugning the priority of the Beneficiary's lien granted hereby or by any other recorded document, but such mention in such financing statement(s) is declared to be for the protection of the Beneficiary in the event any court shall at any time hold with respect to the foregoing (aa), (bb) or (cc), that notice of the Beneficiary's priority of interest to be effective against a particular class of persons, must be filed in the UCC records. The information contained herein is provided in order that this Deed of Trust shall comply with the requirements of the UCC for instruments to be filed as financing statements. The "Debtor" is the Grantor hereunder; the "Secured Party" is the Beneficiary herein, the principal place of business of the "Debtor" is as set forth on Page 1 of this Deed of Trust, that mailing address of the "Debtor" and "Beneficiary" are as set forth on Page 1 of this Deed of Trust, the types or items of collateral are as described hereinabove, and the Grantor is the record owner of the Land.

**Beneficiary's Rights**

1. If, for any reason, Beneficiary prefers to appoint a substitute Trustee hereunder, Beneficiary may, from time to time, by written instrument, appoint substitute Trustees, who shall succeed to all the estate, rights, powers, and duties of the original Trustee named herein. Such appointment may be executed by anyone acting in a representative capacity, and such appointment shall be conclusively presumed to have been executed with appropriate authority.

2. If the proceeds of the Note are used to pay any debt secured by prior liens, Beneficiary is subrogated to all of the rights and liens of the holders of any debt so paid.

3. Beneficiary may apply any proceeds received under any insurance policy either to reduce the Note or to repair or replace damaged or destroyed improvements covered by the policy.

4. If Grantor fails to perform any of Grantor's obligations, Beneficiary may perform those obligations and be reimbursed by Grantor on demand at the place where the Note is payable for any sums so paid, including attorney's fees, plus interest on those sums from the dates

of payment at the rate stated in the Note for matured, unpaid amounts. The sum to be reimbursed shall be secured by this deed of trust.

5.    If Maker defaults on the Note or Grantor fails to perform any of Grantor's obligations or if default occurs on a prior lien Note or other instrument, Beneficiary may:

a.    declare the unpaid principal balance and earned unpaid interest on the Note immediately due;

b.    request Trustee to foreclose this lien, in which case Beneficiary or Beneficiary's agent shall give notice of the foreclosure sale as provided by the Texas Property Code, as then amended;

c.    purchase the property at any foreclosure sale by offering the highest bid and then have the bid credited on the Note; and/or

d.    take any other action allowed herein or by law.

## Trustee's Duties

If requested by Beneficiary to foreclose this lien, Trustee shall:

1.    Either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code, as then amended;

2.    sell and convey all or part of the Property to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to other exceptions to conveyance and warranty; and

3.    from the proceeds of the sale, pay, in this order:

a.    expenses of foreclosure, including a commission to Trustee of 5% of the bid;

b.    to Beneficiary, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

c.    any amounts required by law to be paid before payment to Grantor; and d. to Grantor, any balance.

**4. EXCEPT FOR GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, TRUSTEE SHALL NOT BE LIABLE FOR ANY ACT OR OMISSION OR ERROR OF JUDGMENT. TRUSTEE MAY RELY ON ANY DOCUMENT BELIEVED BY HIM IN GOOD FAITH TO BE GENUINE. ALL MONEY RECEIVED BY TRUSTEE SHALL, UNTIL USED OR APPLIED AS HEREIN PROVIDED, BE HELD IN TRUST, BUT NEED NOT BE SEGREGATED (EXCEPT TO THE EXTENT REQUIRED BY LAW), AND TRUSTEE SHALL NOT BE LIABLE FOR INTEREST THEREON. GRANTOR HEREBY INDEMNIFIES TRUSTEE AGAINST ALL LIABILITY AND EXPENSES THAT HE MAY INCUR IN THE PERFORMANCE OF HIS DUTIES HEREUNDER.**

## Environmental Provisions

1.    Grantor warrants that to the best of its knowledge, as of the date of this Deed of Trust:

(a) No hazardous substances are present or contained on, in, or under the Property.

(b) Grantor does not know and has no reason to know that any hazardous substance is used, manufactured, handled, created, stored, treated, discharged, released, buried, or transported to or from the Property.

(c) At no time during the period that Grantor has owned the Property has Grantor allowed any hazardous substance to be present, contained, used, manufactured, handled, created, stored, treated, discharged, released, or buried on the Property or transported to or from the Property.

    (d) The Property is in compliance with the terms, conditions, and requirements of all applicable federal, state, and local laws, ordinances, and regulations concerning hazardous substances.

2.    As of the date of this Deed of Trust:

(a) Grantor is not aware of any pending or threatened proceedings, including lawsuits, arbitrations, and administrative hearings, instituted by a private party or by a governmental entity concerning any hazardous substance alleged to be or to have been present, contained, used, manufactured, handled, created, stored, treated, discharged, released, or buried on the Property or transported to or from the Property.

(b) Grantor has not been contacted, and has no reason to believe that any contact will be made, by any representative of a federal, state, or local governmental agency concerning any matter having to do with a hazardous substance on the Property, including, but not limited to, the presence, containment, use, manufacture, handling, creation, storage, treatment, discharge, release, or burial on the Property or the transportation to or from the Property.

3.    At no time during the period that Grantor has owned the Property, and to Grantor's knowledge, at no earlier time, were any agreements, stipulations, or settlements of any kind entered into between the owner of the Property and any private or public entity relating to any hazardous substance on the Property, including, but not limited to, the presence, containment, use, manufacture, handling, creation, storage, treatment, discharge, release, or burial on the Property or the transportation to or from the Property of any hazardous substance.

4.    Grantor agrees to indemnify, defend, and hold Beneficiary harmless against all claims, damages, and liabilities of whatever nature, foreseen or unforeseen, under any Hazardous Substance Laws, including but not limited to the following: (a) All fees incurred in defending any action or proceeding brought by a public or private entity and arising from the presence, containment, use, manufacture, handling, creation, storage, treatment, discharge, release, or burial on the Property or the transportation to or from the Property of any hazardous substance. The fees for which the Grantor shall be responsible under this subparagraph shall include, but shall not be limited to, the fees charged by (i) attorneys, (ii) environmental consultants, (iii) engineers, (iv) surveyors, and (v) expert witnesses. (b) Any loss attributable to (i) the breach or failure of any warranty or representation made by Grantor in this Agreement, or (ii) any cleanup, detoxification, remediation, or other type of response action taken with respect to any hazardous substance on or under the property regardless of whether or not that action was mandated by the federal, state, or local government.

5.    For purposes of this Deed of Trust, the term "hazardous substance" shall be interpreted to mean:

(a) Any substance, product, waste, or other material of any nature that is or becomes listed, regulated, or addressed under one or more of the following "Hazardous Substance Laws": (i) The Comprehensive Environmental Response, Compensation, and Liability Act, referred to as "CERCLA," in Sections 9601 et seq. of Title 42 of the United States Code. (ii) The Hazardous Materials Transportation Act, in Sections 1801 et seq. of Title 49 of the United States Code. (iii) The Resource Conservation and Recovery Act, referred to as "RCRA," in Sections 6901 et seq. of Title 42 of the United States Code. (iv) The Clean Water Act in Sections 1251 of Title 33 of the United States Code. (v) The Hazardous Substances Act, referred to as "HSA," in Sections 1261 et

seq. of Title 15 of the United States Code. (vi) The Injection Well Act, in Texas Water Code Sections 27.001 et seq. (vii) The Comprehensive Municipal Solid Waste Management, Resource Recovery, and Conservation Act, in Texas Health and Safety Code Sections 361.001 et seq. (viii) The Hazardous Substances Act, in Texas Health and Safety Code Sections 501.001 et seq. (ix) The Water Quality Control Act, in Texas Water Code Sections 26.001 et seq. (x) The Texas Solid Waste Disposal Act, in Health and Safety Code Sections 361.001 et seq. (xi) Any other federal or state law or local ordinance or other rule concerning hazardous, toxic, or dangerous substances, wastes, or materials.

(b) Any substance, product, waste, or other material that may give rise to liability under any of the laws designated in subparagraph (a) or under any other statutory or common law tort theory.

(c) Crude oil products, including petroleum.

(d) Asbestos.

(e) Polychlorinated biphenyl.

(f) Fossil fuel combustion wastes, including fly ash waste, bottom ash waste, slag waste, and flue gas emission control waste.

(g) Solid wastes resulting from the extraction and processing of ore. (h) Cement kiln dust wastes.

6.  Grantor grants to Trustee all present and future assignable common law or statutory (including federal,state, or local) claims, causes of action, and rights of recovery, indemnity, or contribution concerning the Property that Grantor is entitled, either at present or in the future, to assert against any individual or business entity that has done any of the following:

(a) Conducted an environmental audit of the Property.

(b) Issued any survey report or other type of study with respect to the condition of the property.

(c) Used, generated, manufactured, handled, stored, treated, discharged, released, or buried any hazardous substance, as defined herein on or under the Property.

(d) Transported any hazardous substance, as defined herein onto or from the Property.

(e) Arranged for disposal, treatment, or transport of any hazardous substance, as defined herein onto or from the Property.

(f) Took any other act whatsoever having to do with any hazardous substance, as defined herein onto or from the Property.

7.  Grantor shall comply with all valid laws, ordinances, and regulations, whether state, federal, or municipal, applicable to the Property and its ownership, use, and operation, specifically, but not limited to:

(a) restrictions on the use of the property;

(b) the Texas Solid Waste Disposal Act, Health and Safety Code Sections 361.001 et seq.;

(c) the Toxic Chemical Release Reporting Act, Health and Safety Code Sections 370.001 et seq.;

(d) the Comprehensive Environmental Response, Compensation, and Liability Act, 42 United States Code Sections 9601 et seq.; and

(e) the Resource Conservation and Recovery Act, 42 United States Code Sections 6901 et seq.

(f) Grantor shall preserve and keep the Property in good repair at all times and shall make all repairs, and otherwise take all necessary steps to maintain the Property in a manner that will prevent any impairment in the value of the Property. Grantor will ensure that no waste remains on, in, or in the vicinity of the Property and that all waste is properly transported from the Property and appropriately disposed of.

(g) Grantor shall maintain complete books, records, and accounts for the Property at its offices designated as its mailing address herein or such other location as designated by Grantor in writing, and shall allow Trustee or his agents and/or representatives at all reasonable times, following reasonable prior notice to inspect the Property and all relevant books, records, notices, contracts, statements invoices, bills, claims or other documents relating to the Property and the Grantor's obligations hereunder and shall allow Trustee to make and retain copies of such documents.

8.    In the event of Grantor's default, Trustee shall have the power, in its sole discretion, to have an environmental assessment conducted on the Property, as follows:

(a) The environmental assessment shall be conducted by a qualified environmental consultant chosen by Trustee.

(b) The scope of the inquiries to be made in the environmental assessment, if any, shall be determined by the Trustee and the environmental consultant retained to conduct the assessment.

(c) The cost of any environmental assessment required under this section shall be paid by Grantor within thirty (30) days after Trustee submits the invoice, and any unpaid portion of such cost shall be added to the balance owed on the Note.

(d) Grantor shall cooperate fully, to the extent such information is available or known to Grantor, with all inquiries made by the environmental consultant, including, but not limited to (i) giving the environmental consultant reasonable access to the property within 24 hours following requests for such access; (ii) giving the environmental consultant access to interview persons aware of operations that have been conducted on the Property; (iii) giving the environmental consultant a description and quantification of all hazardous substances, as defined in herein generated, manufactured, refined, transported, treated, stored, handled, or disposed on the Property since the date of this instrument; (iv) making all environmental permits and approvals, including but not limited to, air pollution control permits and pollution discharge elimination system permits, from all governmental or public agencies having jurisdiction of the Property or Grantor's operations on the Property, available to the consultant for copying and/or for inspection at Grantor's offices,; (v) making all records kept by Grantor concerning releases of hazardous substances on the Property available to the consultant for copying and/or for inspection at Grantor's offices; and (vi) allowing the environmental consultant to take physical samples from the air, water, groundwater, soil, or subsoil on the Property for purposes of environmental testing.

(e) Nothing in this Paragraph shall be construed as limiting in any way the acts that may be performed by the environmental consultant in the conduct of the assessment.

**Clauses Regarding Americans with Disabilities Act**

1.    Grantor's Warranties. Grantor represents and warrants (which representations and warranties shall survive any foreclosure, or deed in lieu of foreclosure, of the Property and any satisfaction of the indebtedness and any release of this Deed of Trust) that to the best of knowledge of Grantor, after due investigation, all buildings and other improvements now situated on the Land are in compliance with those provisions of the Americans with Disabilities Act of 1990 (the "Act"), including any accessibility standards applicable as of the date of this Deed of Trust.

2.    Grantor's Covenants. Grantor covenants and agrees that any new construction upon the Land or any alterations to existing buildings and other improvements will satisfy the accessibility requirements of the Act. Further, Grantor covenants and agrees that any lease entered into from and after the date hereof, including any renewals of existing leases, will expressly provide that

13

responsibility for compliance with all applicable provisions of the Act, including compliance with the accessibility standards, will be the obligation of Grantor.

3.    Regardless of whether any event of default shall have occurred and be continuing, or whether any remedies in respect of the Property are exercised by Beneficiary, Grantor shall defend, indemnify and hold harmless Beneficiary and Trustee from any and all liabilities (including strict liability, actions, demands, penalties, losses, costs or expenses, including, without limitation, attorney's fees and expenses) suits, cost of any settlement or judgment and claims of any and every kind whatsoever which may now or in the future (whether before or after the release of this Deed of Trust) be paid, incurred or suffered by or asserted against Beneficiary or Trustee by any person or entity or governmental agency for, with respect to, or as a direct or indirect result of, the application or enforcement, threatened or actual, of any state, federal or local statute or regulation, including the Act, covering but not limited to providing access to the Property and any improvements and removal of existing barriers to the Property and any improvements, regardless of whether any such liabilities, suits, costs or any settlement or judgment and claims are caused by or within the control of Grantor, Beneficiary, Trustee or other party. The representations, covenants, warranties and indemnifications contained in this section shall survive any foreclosure or deed in lieu of foreclosure of the Property and any satisfaction of the indebtedness and release of this Deed of Trust. For the purposes of this Section, the term "Beneficiary" shall include all subsequent owners or holders of any obligations secured by this Deed of Trust, all directors, officers, employees and agents of such entity and any person or entities owned or controlled by or affiliated with Beneficiary, and its or their directors, officers, employees and agents. Beneficiary's Right to Effect Compliance. Beneficiary shall have the right but not the obligation, prior or subsequent to the occurrence of an event of default hereunder, without in any way limiting Beneficiary's other rights and remedies under this Deed of Trust, to enter onto the Property or to take such other actions as it deems necessary or advisable to effect compliance with the Act if Beneficiary in its sole discretion determines that failure to so act could jeopardize Beneficiary's security under this Deed of Trust. All costs and expenses paid or incurred by Beneficiary in the exercise of any such rights shall be Indebtedness secured by this Deed of Trust and shall be payable by Grantor upon demand.

**General Provisions**

1.    If any of the property is sold by Trustee under a power of sale exercised pursuant to this deed of trust, Grantor shall immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor shall become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2.    Recitals in any Trustee's deed conveying the Property will be presumed to be true.

3.    Proceeding under this Deed of Trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4.    This lien shall remain superior to liens later created even if the time of payment of all or part of the Note is extended or part of the Property is released.

5.    If any portion of the Note is not and/or cannot be lawfully secured by this Deed of Trust, payments shall be applied first to discharge that portion.

6.    At any time any law shall be enacted imposing or authorizing the imposition of any tax upon this Deed of Trust, or upon any rights, titles, liens, or security interests created hereby, or upon the

Note, or any part thereof, Grantor shall immediately pay all such taxes; provided that, if it is unlawful for Grantor to pay such taxes, Grantor shall prepay the Note in full without penalty within sixty (60) days after demand therefor by Beneficiary.

7.  Grantor hereby assigns to Beneficiary all rental payable under the Lease and each lease now or at any time hereafter existing ("Rental"), such assignment being upon the following terms, subject in any event to the requirements of Chapter 64 of the Texas Property Code (the "Assignment of Rents Act"): (a) until receipt from Beneficiary of notice of the occurrence of a default hereunder, each Lessee may pay Rental directly to Grantor, but after a Grantor defaults with respect to which Grantor has received property notice from Beneficiary in accordance with the Assignment of Rents Act, covenants to hold all Rental so paid in trust for the use and benefit of Beneficiary; (b) upon receipt from Beneficiary of notice that a default exists, each Lessee is hereby authorized and directed to pay directly to Beneficiary all Rental thereafter accruing; and the receipt of such Rental by Beneficiary shall be a release of such Lessee to the extent of all amounts so paid; (c) Rental so received by Beneficiary shall be applied by Beneficiary, first to the reasonable out-of-pocket expenses, if any, of collection and then in accordance with Section 7 hereof, except as otherwise required by the Assignment of Rents Act; (d) without impairing its rights hereunder, Beneficiary may, at its option, at any time and from time to time, release to Grantor Rental so received by Beneficiary, or any part thereof; (e) Beneficiary shall not be liable for its failure to collect, or its failure to exercise diligence in the collection of Rental, but shall be accountable only for Rental that it shall actually receive; and (f) the assignment contained in this Section 7 shall terminate upon the release of this Deed of Trust, but no Lessee shall be required to take notice of termination until a copy of such release shall have been delivered to such Lessee. As between Beneficiary and Grantor, and any persons claiming through or under Grantor, other than any Lessee who has not received notice of default pursuant to Section 7, the assignment contained in this Section 7 is intended to be absolute, unconditional and presently effective and the provisions of Section 7 are intended solely for the benefit of each Lessee and shall never inure to the benefit of the Grantor or any person claiming through or under Grantor, other than a Lessee who has not received such notice. It shall never be necessary for Beneficiary to institute legal proceedings of any kind whatsoever to enforce the provisions of this Section 7.

8.  This Deed of Trust shall be governed by and construed in accordance with Texas law and applicable federal law. The parties hereto intend to conform strictly to the applicable laws governing maximum interest rates permitted. In no event, whether by reason of demand for payment, prepayment, acceleration of the maturity hereof or otherwise, shall the interest contracted for, charged or received by Beneficiary hereunder or otherwise exceed the maximum amount permitted under applicable law. If from any circumstance whatsoever interest would otherwise be payable to Beneficiary in excess of the maximum lawful amount, the interest payable to Beneficiary shall be reduced automatically to the maximum amount permitted by applicable law. If Beneficiary shall ever receive anything of value deemed interest under applicable law which would, apart from this provision, be in excess of the maximum lawful amount, an amount equal to the amount which would have been excessive interest shall be applied to the reduction of scheduled principal payments owing hereunder in inverse order of their maturities and not to the payment of interest, or if such amount which would have been excessive interest exceeds the unpaid balance of principal hereof, such excess shall be refunded to Grantor. All interest paid or agreed to be paid to Beneficiary shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term (including any renewal or extension) of such indebtedness so that the amount of interest charged or paid on account of such indebtedness

15

does not exceed the maximum permitted by applicable law. The provisions of this paragraph shall control all existing and future agreements between Grantor and Beneficiary. In determining whether interest of any kind paid or payable hereunder exceeds the highest rate, the undersigned and Beneficiary shall, to the maximum extent permitted under applicable law (a) characterize any non-principal payment as an expense, fee or premium, (b) exclude voluntary prepayments and the effects thereof and (c) amortize, prorate, allocate and spread, in equal parts, the total amount of interest throughout the entire contemplated term of the indebtedness in order to render the interest rate uniform throughout such term. Without limiting the generality of the foregoing, the amount of any prepayment premium or penalty and the amount of any late payment fee or charge provided for herein or otherwise (whether or not the same are construed as interest under applicable laws) are limited to and shall never exceed an amount which, when added to all items called or deemed to be interest in connection with the transactions contemplated herein, does not exceed the maximum amount of interest payable on the principal balances involved under applicable law. On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

9. When the context requires, singular nouns and pronouns include the plural.

10. The term Note includes all sums secured by this deed of trust.

11. This Deed of Trust shall bind, inure to the benefit of, and be exercised by successors in interest of all parties.

12. If Grantor and Maker (as defined in the Note) are not the same person, the term Grantor shall include Maker.

13. Grantor represents that this Deed of Trust and the Note are given for the following purposes: **To secure funds advanced pursuant to the Note and secured by the Property.** To the extent that proceeds of the Note are used to pay any prior indebtedness secured by an outstanding lien, security interest, charge or prior encumbrance against the Property, such proceeds have been advanced by Beneficiary at Grantor's request; and Beneficiary shall be subrogated to any and all rights, powers, equities, liens and security interests owned or granted by any owner or holder of such prior indebtedness, irrespective of whether the prior security interests, liens, charges or encumbrances covering the Property are released of record.

14. Without the prior written consent of Beneficiary, there shall be no drilling or exploring for or extraction, removal, or production of minerals from the surface or subsurface of the Land. The term "**minerals**" as used herein shall include, without limiting the generality of such term, oil, gas, casinghead gas, coal, lignite, hydrocarbons, methane, carbon dioxide, helium, uranium and all other natural elements, compounds and substances, including sand and gravel.

15. Grantor agrees to allow Beneficiary or Beneficiary's agents to enter the property at reasonable times following reasonable prior notice and inspect it and any personal property in which Beneficiary is granted a security interest by this deed of trust.

16. If Grantor transfers, pledges, grants, conveys or hypothecates any part of the Property or any interest therein, voluntarily, involuntarily or by operation of law, without Beneficiary's prior written consent, Beneficiary may declare the unpaid principal balance and earned unpaid interest on the Note immediately due and Beneficiary may avail itself of all rights, powers, and recourses allowed or permitted herein and/or by law. If there shall be any transfer of ownership interests in Grantor and/or in management of Grantor, without Beneficiary's prior written consent, Beneficiary may declare the unpaid principal balance and earned unpaid interest on the Note immediately due

16

and Beneficiary may avail itself of all rights, powers, and recourses allowed or permitted herein and/or by law.

17.  Grantor expressly acknowledges a vendor's lien on the Property as security for the Note secured by this Deed of Trust. This Deed of Trust does not waive the vendor's lien, and the two liens and the rights created by this instrument shall be cumulative. Beneficiary may elect to foreclose under either of the liens without waiving the other or may foreclose under both.

18.  Beneficiary may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

19.  Grantors further agree that this deed of trust shall secure, in addition to the indebtedness and/or obligations described herein, the payment and performance of all other indebtedness and obligations of whatever kind and character, including any and all present and/or future debts, obligations, and liabilities (except solely any indebtedness which is prohibited from being secured hereby under any applicable law of the State of Texas or the United States of America), owing or which may hereafter become owing or to be performed by any one or more of the Grantors and/or any guarantors, and any other obligors to Beneficiary, whether individually or as a member of any partnership, joint venture, association, or other group, whether such indebtedness or obligations are evidenced by a note, open account, overdraft, endorsement, surety agreement, guaranty agreement, or otherwise, and whether such indebtedness or obligations are present or future, direct or indirect, primary or secondary, joint or several, fixed or contingent or otherwise, whether such indebtedness or obligations were originally owed to Beneficiary or to be performed for Beneficiary or owed to or to be performed for others and acquired by purchase or otherwise by any Beneficiary, and whether or not such indebtedness or obligations were created by any then owner of any interest in or to any of the Property, it being contemplated that one or more of the present or future Grantors or obligors may now or hereafter be or become indebted or obligated to Beneficiary in further sum or sums; and Grantors further agree that if any default ever occurs under any instrument, document or other writing whatsoever now or hereafter evidencing or securing any indebtedness now or hereafter secured by this deed of trust, then, in any such event, Beneficiary may, at its option, (without demand, notice of any such default or event, notice of intent to accelerate maturity, notice of acceleration of maturity, presentment for payment or acceleration or any other act or notice whatsoever), declare immediately due and payable and any and all indebtednesses then secured hereby. This conveyance is made for the security and enforcement of: (1) the indebtedness evidenced by the Note, (2) all other indebtedness now owing by Maker and/or any and all guarantors, (3) any future indebtedness of Maker and/or any and all guarantors, (4) any indebtedness owing to said Beneficiary which is or will be guaranteed by Maker and/or any and all guarantors, and (5) any renewals, modifications and/or extensions of said indebtedness. In addition, any and all property acquired by Maker/Grantor after this date and all of the properties standing as security for the indebtedness under (1), (2), (3), (4) and (5), shall stand as security for the indebtedness secured hereby and for each such other indebtedness, to the same effect as if they were described and included herein and in the deeds of trust or other security agreements and/or loan agreements securing each such other indebtedness. Default in the terms of any note, deed of trust, loan agreement or security agreement described above or herein shall be an event of default and breach of covenant under all said notes, deeds of trust, loan agreement and security agreements and will give said Beneficiary the right to accelerate payment of all said indebtedness (unpaid principal, earned unpaid interest and other accrued charges) and to invoke all of its rights under the terms of all said notes, deeds of trust, construction loan agreements and/or security agreements. In no event shall this deed of trust secure payment of any

debt described in or created pursuant to the Texas Consumer Credit Code, nor shall it create a lien otherwise prohibited by law. Grantor and any Maker waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, protests, dishonor, notice of protest and notice of dishonor, to the extent permitted by law. The indebtedness secured hereunder includes any and all indebtedness now or hereafter owing to Beneficiary by each guarantor of any indebtedness now or hereafter owing by Grantors to Beneficiary.

20. Grantor represents to Beneficiary that no part of the Property is either the residential or business homestead of Grantor and the Grantor neither does, nor intends to reside in or conduct business on the Property. Grantor acknowledges that Beneficiary relies on the truth of the representations in this paragraph in making the loan secured by this Deed of Trust.

21. Any lien or encumbrance of whatever kind against the above-described property which is inferior to the lien hereby created shall be subject to any renewal, extension or modification of the terms or provisions of this instrument or of the Note which it secures. It is agreed that the Beneficiary may at any time without notice, release portions of the Property from the lien of this Deed of Trust without affecting the personal liability of any person for the payment of said indebtedness then remaining unpaid and without affecting the lien of this Deed of Trust upon the remainder of said Property.

22. The Maker agrees that the sums evidenced by the Note and secured hereby are not for personal, family or household purposes, and that they are to be used primarily for business and commercial purposes.

23. It shall be a default hereunder if Beneficiary deems itself insecure as to the repayment of the indebtedness secured hereby or the adequacy and sufficiency of the Property as security for the Indebtedness.

24. It shall be a default hereunder if Beneficiary discovers that any statement, representation or warranty in the Note, this Deed of Trust or in any other document or instrument delivered to or relied upon by Beneficiary in connection with the Indebtedness is false, misleading or erroneous in any respect.

25. Grantor, at any time and from time to time, shall furnish promptly, upon request, a written statement or affidavit, in such form as may be required by Beneficiary, stating the unpaid balance of the Note and that there are no offsets or defenses against full payment of the Note and performance of the terms hereof, or if there are any such offsets and defenses, specifying them in reasonable detail.

26. To the best of Grantor's knowledge, if residential lots are to be or are ever developed, no portion of the Land upon which residential lots will be developed is located within an area that has been designated or identified as an area having special flood hazards or flood prone characteristics by the Secretary of Housing and Urban Development, the Federal Emergency Management Agency, or by such other official or agency as shall from time to time be authorized by federal or state law to make such designation pursuant to the National Flood Insurance Act of 1968 or the Flood Disaster Protection Act of 1973, as such Acts may, from time to time, be amended and in effect, or pursuant to any other national or state program of flood insurance.

27. Grantor expressly waives and renounces the benefit of all present and future laws providing for any appraisement before sale of any of the property covered by this Deed of Trust, commonly known as "appraisement laws", and all present and future laws extending in any manner the time for enforcement of collection of the indebtedness secured hereby, commonly known as "stay laws" and "redemption laws."

18

28.  Grantor understands and agrees that (i) Beneficiary's document retention policy may involve the imaging of executed loan documents, which includes but is not limited to any note, guaranty, deed of trust, security agreement, assignment, financing statement and any other document which evidences any indebtedness owed by Grantor to Beneficiary and/or secures such indebtedness and/or relates to the indebtedness and/or the collateral securing such indebtedness and the destruction of the paper original, including the original note and (ii) the Grantor waives, any rights and/or defenses that it may have to the use of such imaged copies of loan documents in the enforcement of any of Beneficiary's rights in a court of law or otherwise and/or as to any claim that such imaged copies of the loan documents are not originals.

29.  Except as otherwise provided herein, all notices, demands, requests, approvals and other communications required or permitted hereunder shall be in writing and shall be deemed to have been given when presented personally or three business days after being deposited in a regularly maintained mail receptacle of the United States Postal Service, postage prepaid, registered or certified, return receipt requested, or one business day after being transmitted by FedEx (or any other nationally recognized overnight courier service), addressed to Grantor at its address set forth in the first page of this Deed of Trust, or such other address as Grantor or Beneficiary may from time to time designate by written notice to the other as herein required.

30.  **GRANTOR SHALL DEFEND, AT ITS OWN COST AND EXPENSE, AND HOLD BENEFICIARY HARMLESS FROM, ANY PROCEEDING OR CLAIM IN ANY WAY RELATING TO THE PROPERTY OR THE LOAN INSTRUMENTS, UNLESS RESULTING FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF BENEFICIARY. ALL COSTS AND EXPENSES INCURRED BY BENEFICIARY IN PROTECTING ITS INTERESTS HEREUNDER, INCLUDING ALL COURT COSTS AND ATTORNEYS' FEES AND EXPENSES, SHALL BE BORNE BY GRANTOR. THE PROVISIONS OF THIS PARAGRAPH SHALL SURVIVE THE PAYMENT IN FULL OF THE INDEBTEDNESS AND THE RELEASE OF THIS DEED OF TRUST AS TO EVENTS OCCURRING AND CAUSES OF ACTION ARISING BEFORE SUCH PAYMENT AND RELEASE, BUT NOT AS TO EVENTS OCCURRING SUBSEQUENT TO (A) THE DATE ON WHICH THE INDEBTEDNESS HAS BEEN PAID IN FULL AND THIS DEED OF TRUST HAS BEEN RELEASED; OR (B) THE DATE ON WHICH THE LIEN OF THIS DEED OF TRUST IS FULLY AND FINALLY FORECLOSED OR A CONVEYANCE BY DEED IN LIEU OF SUCH FORECLOSURE IS FULLY AND FINALLY EFFECTIVE AND POSSESSION OF THE PROPERTY HAS BEEN GIVEN TO BENEFICIARY OR OTHER TRANSFEREE OF TITLE TO THE PROPERTY.**

31.  Grantor shall not transfer, sell assign or convey either in whole or in part, other than to Beneficiary, any capacity for utilities which may be available to the Property. This shall include, but not be limited to, any form of reservation which may be granted by any governmental subdivision. Grantor acknowledges that without the availability of utilities to the Property the value of the collateral would be significantly diminished and that the credit being extended under the Indebtedness is based upon such availability. This paragraph is not intended to interfere or conflict with the ordinary operation of Grantor's business.

32.  Grantor represents and warrants to Beneficiary that neither Grantor nor any other person has committed any act or omission, or has consented to any act or omission, with respect to the Property, which would afford the federal government or any state or local government the right or remedy of forfeiture of all or any part of the Property, and other collateral securing the Note

or the Indebtedness described herein, or any property (including but not limited to money paid) delivered to Beneficiary or any other party in performance of Grantor's obligations arising in connection with the Indebtedness, or any interest or income, profits or proceeds of any of the property described in this sentence (hereinafter called the "Collateral" for the purposes of this section). Grantor agrees not to engage in any act or permit any act or omission to exist which would afford the federal government or any state or local government the right or remedy of forfeiture of all or any part of the Collateral. Without limiting the generality of the proceeding against Grantor or any other person liable on the Indebtedness, or against any of the Collateral or anyone having an interest in, or use or possession of any of the Collateral, which asserts or could afford the federal government or any state or local government the right or remedy to forfeit any such Collateral, constitutes, at Beneficiary's election, an event of default under this Deed of Trust and all Indebtedness described herein and secured hereby. **GRANTOR SHALL PROTECT, INDEMNIFY AND HOLD HARMLESS BENEFICIARY, ITS DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, SUCCESSORS AND ASSIGNS FROM AND AGAINST ANY AND ALL LOSS, DAMAGE, COST EXPENSE OR LIABILITY (INCLUDING ATTORNEYS' FEES AND COSTS) DIRECTLY OR INDIRECTLY ARISING OUT OF OR ATTRIBUTABLE TO ANY FAILURE OF THE REPRESENTATIONS OR BREACH OF ANY COVENANT OR AGREEMENT SET FORTH IN THIS SECTION.**

33. Grantor shall not, without the prior written consent of Beneficiary, grant any lien, security interest, or other encumbrance (hereinafter called "**Subordinate Deed of** Trust") covering any of the Property. If Beneficiary consents to a Subordinate Deed of Trust or if the foregoing prohibition is determined by a court of competent jurisdiction to be unenforceable, any such Subordinate Deed of Trust shall contain express covenants to the effect that:

(a)     the Subordinate Deed of Trust is unconditionally subordinate to this Deed of Trust;

(b)     if any action (whether judicial or pursuant to a power of sale) shall be instituted to foreclose or otherwise enforce the Subordinate Deed of Trust, no tenant of any of the Leases shall be named as a party defendant, and no action shall be taken that would terminate any occupancy or tenancy without the prior written consent of Beneficiary;

(c)     Rents, if collected by or for the holder of the Subordinate Deed of Trust, shall be applied first to the payment of the Indebtedness then due and expenses incurred in the ownership, operation and maintenance of the Property in such order as Beneficiary may determine, prior to being applied to any indebtedness secured by the Subordinate Deed of Trust; and

(d)     written notice of default under the Subordinate Deed of Trust and written notice of the commencement of any action (whether judicial or pursuant to a power of sale) to foreclose or otherwise enforce the Subordinate Deed of Trust shall be given to Beneficiary with or immediately after the occurrence of any such default or commencement.

34.     If any provision of this Deed of Trust is held to be illegal, invalid, or unenforceable under present or future laws effective while this Deed of Trust is in effect, the legality, validity and enforceability of the remaining provisions of this Deed of Trust shall not be affected thereby, and in lieu of each such illegal, invalid or unenforceable provision there shall be added automatically as a part of this Deed of Trust a provision that is legal, valid and enforceable and as similar in terms to such illegal, invalid, or unenforceable provision as may be possible. If any of the

Indebtedness shall be unsecured, the unsecured portion of the Indebtedness shall be completely paid prior to the payment of the secured portion of such Indebtedness, and all payments made on account of the Indebtedness shall be considered to have been paid on and applied first to the complete payment of the unsecured portion of the Indebtedness.

35. If this Deed of Trust is or becomes subordinate to any other liens, security interests, assignments of leases or rents or any other encumbrances (collectively, the "**Prior Liens**") affecting any of the Property (all documents creating the Prior Liens and evidencing and governing the indebtedness secured thereby being collectively called the "**Prior Lien Documents**") the provisions of this Paragraph shall apply. Grantor shall not enter into any renewal, extension, modification, increase or refinancing of any of the Prior Lien Documents or the indebtedness secured thereby without the prior written consent of Beneficiary. Grantor shall pay when due all indebtedness evidenced and secured by the Prior Lien Documents and shall timely perform all other obligations of the Grantor under the Prior Lien Documents. Beneficiary may, but shall not be obligated to, pay any such indebtedness or perform any such obligations for the account of Grantor and any sum so expended shall be secured hereby. Grantor shall pay to Beneficiary all amounts so expended by Beneficiary with interest on such amounts from the date expended at the rate set forth in the Note, but not in excess of the highest rate permitted by applicable law. Any default under any of the Prior Lien Documents shall constitute an Event of Default hereunder. If Beneficiary should cure any such default under any of the Prior Lien Documents, the curing thereof by Beneficiary shall not constitute a cure of the default under this Deed of Trust. Grantor shall send to Beneficiary a copy of each notice of default or notice of acceleration or other notice received by Grantor from the holder of any of the Prior Lien Documents within one (1) business day after receipt thereof by Grantor. Notwithstanding the foregoing, Beneficiary does not consent to any Prior Lien unless otherwise expressly permitted in this Deed of Trust.

36. Notwithstanding the provisions of Sections 51.003, 51.004, and 51.005 of the Texas Property Code (as the same may be amended from time to time), and to the extent permitted by law, Maker, Grantor and Guarantors agree that Lender shall be entitled to seek a deficiency judgment from Maker, Grantor and Guarantors and any other party obligated on the Note or any guarantor of the Note equal to the difference between the amount owing on the Note and the amount for which the Property was sold pursuant to a judicial or nonjudicial foreclosure sale. Maker, Grantor and Guarantors expressly recognize that this section constitutes a waiver of the above-cited provisions of the Texas Property Code which would otherwise permit Maker, Grantor and Guarantors and other persons against whom recovery of deficiencies is sought or guarantors independently (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the Property as of the date of foreclosure and offset the fair market value of the Property as of the date of foreclosure against any deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. Maker, Grantor and Guarantors further recognize and agree that this waiver creates an irrebuttable presumption that the foreclosure sale is equal to the fair market value of the Property for purposes of calculating deficiencies owed by Maker, Grantor and Guarantors, other obligors on the Note, and others against whom recovery of a deficiency is sought.

SIGNATURES FOUND ON FOLLOWING PAGE(S)

**GRANTOR(S)**

OTISCO RDX, LLC

By:

Its Authorized Agent

STATE OF TEXAS          §
                                    §
COUNTY OF HARRIS     §

This instrument was acknowledged before me on the 2nd day of January, 2023, _Jennifer MacGeorge_, the Authorized Agent for OTISCO RDX, LLC.

Notary Public, State of Texas

SCARLET R. MACGEORGE
My Notary ID # 124519627
Expires April 9, 2027

## EXHIBIT A

Legal description of land:

Tract 1:
A 24.92 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171, and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 24.91 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 3) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 24.92 acre tract being more particularly described by metes and bounds on Exhibit "A" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

Tract 2:
A 120.18 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 120.16 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 5) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 120.18 acre tract being more particularly described by metes and bounds on Exhibit "B" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.

Tract 3A:
A 60.14 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 60.14 acre tract being more particularly described by metes and bounds on Exhibit "C-1" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.

Tract 3B:
A 0.456 acre tract of land, more or less, siutated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 0.456 acre tract being more particularly described by metes and bounds on Exhibit "C-2" attached hereto and made a part hereof for all purposes.

Tract 3C:
A 1.924 acre tract of land, more or less, situated in the H.&T.C.R.R.Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 1.924 acre tract being more particularly described by metes and bounds on Exhibit "C-3" attached hereto and made a part hereof for all purposes.

Tract 3D:
A 152.88 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 152.88 acre tract being more particularly described by metes and bounds on Exhibit "C-4" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

## EXHIBIT A
(Continued)

Tract 4:
Lots 244 and 245A, Las Palomas Country Club Estates, Unit 12, as per plat of Las Palomas Country Club
Estates, Unit 12 filed of record in Volume 8, Pages 13-16, Plat Records of Wilson County, Texas, as amended
by plat filed of record in Volume 9, Pages 42-43, Plat Records of Wilson County, Texas, to any extent modified
by partial replatting as per plat of Estates of Quail Run Subidivison, filed of record in Volume 9, Pages 72-74,
Plat Records of Wilson County, Texas.

Tract 5:
Lots 18, 19, 21, 22, 23 and 26 through 40, The Meadows at Quail Run, Section 1, as shown on plat of The
Meadows at Quail Run, Section 1 of record in Volume 9, Pages 44-47, Plat Records of Wilson County, Texas.

Tract 6:
Lot 13, Lake Valley Estates Subdivision, Unit 35 as per plat of Lake Valley Estates Subdivisiion, Unit 35 of
record in Volume 5, Page 29, Plat Records of Wilson County, Texas.

Tract 7:
Lots 1, 2, 10, 11 and 12, Block 1, Lake Valley Estates Subdivision, Unit 36 as per plat of Lake Valley Estates
Subdivision, Unit 36 of record in Volume 5, Page 43, Plat Records of Wilson County, Texas.

Tract 8:
Lots 1 through 10, Lake Valley Estates Subdivision, Unit 42 as per plat of Lake Valley Estates Subdivision,
Unit 42 of record in Volume 5, Page 44, Plat Records of Wilson County, Texas.

Tract 9:
Lots 2, 3, 5, 9 and 12, Lake Valley Estates Subdivision, Unit 43 as per plat of Lake Valley Estates Subdivision,
Unit 43 of record in Volume 5, Page 45, Plat Records of Wilson County, Texas.

Tract 10:
Lot 2, Lake Valley Estates Subdivision, Unit 44 as per plat of Lake Valley Estates Subdivision, Unit 44 of
record in Volume 5, Page 28, Plat Records of Wilson County, Texas.


The company does not insure the area or quantity of land described herein.  Reference made to acreage
amount is not a representation that such area or quantity is correct, but is given only for informational or
identification purposes.



**Wilson County**
**Genevieve Martinez**
Wilson County Clerk

*VG-786-2023-132703*

---

**Instrument Number:** 132703

Real Property Recordings

Recorded On: May 23, 2023 10:45 AM                    Number of Pages: 25

---

**" Examined and Charged as Follows: "**

Total Recording: $118.00

---

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                    **Record and Return To:**

Document Number:    132703                        JETALL COMPANIES INC

Receipt Number:     20230523000016               1001 WEST LOOP SOUTH STE 700

Recorded Date/Time: May 23, 2023 10:45 AM

User:               Mary S                        HOUSTON TX 77027

Station:            cclerk02

---



**STATE OF TEXAS**
**Wilson County**
I hereby certify that this Instrument was filed in the File Number sequence on the date/time
printed hereon, and was duly recorded in the Official Records of Wilson County, Texas

*Genevieve Martinez*

Genevieve Martinez
Wilson County Clerk
Floresville, TX

Exhibit C

| Form 402<br>(Revised 01/10)<br><br>Submit in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512/463-5709<br>Filing Fee: No fee | <br><br>**Resignation of Registered Agent** | This space reserved for office use.<br><br>**F I L E D**<br>In the Office of the<br>Secretary of State of Texas<br><br>DEC 2 1 2023<br><br>**Corporations Section** |
| --- | --- | --- |

The undersigned person, currently listed in the records of the secretary of state as the registered agent authorized to receive service of process for the entity named below, submits this resignation of appointment.

### Entity Information

1. The name of the entity for which the undersigned is designated as registered agent is:

Milestone Capital CRE 1, LLC
<small>State the name of the entity as currently shown in the records of the secretary of state.</small>

2. The file number issued by the secretary to the entity making the appointment is: 0804735836

### Statement of Notice

3. Written notice of the resignation has been given by the undersigned registered agent to the entity at the address of the entity most recently known by the agent. The address to which the notice was mailed or delivered is:

1001 W. Loop S., Suite 700
<small>Street/Mailing Address</small>

| Houston | TX | USA | 77027 |
| --- | --- | --- | --- |
| <small>City</small> | <small>State</small> | <small>Country</small> | <small>Zip/Postal Code</small> |

4. The date on which the written notice was given to the entity was: 12/15/2023
<small>mm/dd/yyyy</small>

### Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date: 12-16-23

Signature of resigning registered agent

Alfred Kelly Williams
Printed or typed name of resigning registered agent

**RECEIVED**
DEC 2 1 2023
Secretary of State

Form 402                                   2

Exhibit D

## APPOINTMENT OF SUBSTITUTE TRUSTEE

STATE OF TEXAS                          §
                                        §
COUNTY OF WILSON                        §

Date:          February 13, 2024

Grantor(s):    OTISCO RDX, LLC

Grantor(s) Mailing Address:  1001 W. Loop South, Suite 700, Houston, Texas 77027

Beneficiary:  Milestone Capital CRE I, LLC

Beneficiaries Mailing Address:  2704 Joanel, Houston, Texas 77027

Original Trustee:  A. Kelly Williams

Substitute Trustees:  Lori Daves, John Daves, and each of them acting alone

Substitute Trustees Address:  The Daves Law Firm, 3624 North Hills Drive, Suite B-100, Austin, Texas 78731

Deed of Trust:       Deed of Trust and Security Agreement, recorded in Document No. 2023-132703, Wilson County, Texas

Secures:             Promissory Note dated January 2, 2023, in the Principal Amount of $5,900,000.00 by OTISCO RDX,LLC as maker and Milestone Capital CRE I, LLC as payee on terms stated in the Note.

Property:      **See Exhibit A**

Lender:        Milestone Capital CRE I, LLC

Notice is hereby given that the undersigned, as Lender, does hereby remove the original Trustee and all successor substitute trustees and appoints in its stead **Lori Daves and John Daves as substitute trustees** under the Deed of Trust, who shall hereafter exercise all powers and duties set aside to the said original Trustee and all successor trustees under the said Deed of Trust; and, further, does hereby request, authorize, and instruct said Substitute Trustees to conduct and direct

1

the execution of remedies set aside to the beneficiary therein. Lender ratifies any prior acts taken by Substitute Trustee in connection with the sale of the Property.

EXECUTED on February __, 2024.

Milestone Capital CRE I, LLC, by its authorized agent, Andrew Almand

STATE OF TEXAS                                §
COUNTY OF ~~BANDERA~~ Kendall      §
                                                          §

This instrument was acknowledged before me on February 13, 2024, by Andrew Almand who represented himself/herself to be authorized to execute this document as an authorized agent of Milestone Capital CRE I, LLC and who is known to me to be the person whose name is subscribed to the foregoing instrument and he/she acknowledge to me that he/she executed the same in the capacity therein stated on behalf and as the act and deed of such entity.

Notary Public, in and for the State of Texas

BOBBI MUELLER
Notary Public, State of Texas
Comm. Expires 02-28-2024
Notary ID 132382116

2024 - 140814  03/12/2024  12:55 PM  Page 3 of 5

## EXHIBIT A

### LEGAL DESCRIPTION

**Tract 1:**
A 24.92 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171, and the W.H.L. Jackson Survey No 40, Abstract 481, Wilson County, Texas, being all of that called 24.91 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 3) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 24 92 acre tract being more particularly described by metes and bounds on Exhibit "A" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway

**Tract 2:**
A 120.18 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 120.16 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 5) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 120.18 acre tract being more particularly described by metes and bounds on Exhibit "B" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway

**Tract 3A:**
A 60 14 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W H.L. Jackson Survey No 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 60 14 acre tract being more particularly described by metes and bounds on Exhibit "C-1" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.

**Tract 3B:**
A 0.456 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No 40, Abstract 481. Wilson County, Texas, being out of that residue of a called 279.68 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 0.456 acre tract being more particularly described by metes and bounds on Exhibit "C-2" attached hereto and made a part hereof for all purposes.

**Tract 3C:**
A 1.924 acre tract of land, more or less, situated in the H.&T.C.R.R.Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481. Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 1.924 acre tract being more particularly described by metes and bounds on Exhibit "C-3" attached hereto and made a part hereof for all purposes.

**Tract 3D:**
A 152.88 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 152.88 acre tract being more particularly described by metes and bounds on Exhibit "C-4" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

EXHIBIT A TO DEED OF TRUST (LA VERNIA, TEXAS)

Error! Unknown document property name.

Tract 4:
Lots 244 and 245A, Las Palomas Country Club Estates, Unit 12, as per plat of Las Palomas Country Club Estates, Unit 12 filed of record in Volume 8, Pages 13-16, Plat Records of Wilson County, Texas, as amended by plat filed of record in Volume 9, Pages 42-43, Plat Records of Wilson County, Texas, to any extent modified by partial replatting as per plat of Estates of Quail Run Subidivison, filed of record in Volume 9, Pages 72-74, Plat Records of Wilson County, Texas.

Tract 5:
Lots 18, 19, 21, 22, 23 and 26 through 40, The Meadows at Quail Run, Section 1, as shown on plat of The Meadows at Quail Run, Section 1 of record in Volume 9, Pages 44-47, Plat Records of Wilson County, Texas.

Tract 6:
Lot 13, Lake Valley Estates Subdivision, Unit 35 as per plat of Lake Valley Estates Subdivision, Unit 35 of record in Volume 5, Page 29, Plat Records of Wilson County, Texas.

Tract 7:
Lots 1, 2, 10, 11 and 12, Block 1, Lake Valley Estates Subdivision, Unit 36 as per plat of Lake Valley Estates Subdivision, Unit 36 of record in Volume 5, Page 43, Plat Records of Wilson County, Texas.

Tract 8:
Lots 1 through 10, Lake Valley Estates Subdivision, Unit 42 as per plat of Lake Valley Estates Subdivision, Unit 42 of record in Volume 5, Page 44, Plat Records of Wilson County, Texas.

Tract 9:
Lots 2, 3, 5, 9 and 12, Lake Valley Estates Subdivision, Unit 43 as per plat of Lake Valley Estates Subdivision, Unit 43 of record in Volume 5, Page 45, Plat Records of Wilson County, Texas.

Tract 10:
Lot 2, Lake Valley Estates Subdivision, Unit 44 as per plat of Lake Valley Estates Subdivision, Unit 44 of record in Volume 5, Page 28, Plat Records of Wilson County, Texas.

2

**2024-140814 03/12/2024 1:00 PM Page 5 of 5**

## Wilson County
## Genevieve
## Martinez
**Wilson County Clerk**

---

**Instrument Number:** 140814

eRecording - Real Property

APPOINTMENT OF SUBSTITUTE TRUSTEE

Recorded On: March 12, 2024 12:55 PM                    Number of Pages: 5

---

**" Examined and Charged as Follows: "**

Total Recording: $37.00

---

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                    **Record and Return To:**

Document Number:       140814                            EPN
Receipt Number:        20240312000013
Recorded Date/Time:    March 12, 2024 12:55 PM
User:                  Loretta R
Station:               CC-2210

---



**STATE OF TEXAS**
**COUNTY OF WILSON**

I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Wilson County, Texas.

Genevieve Martinez
Wilson County Clerk
Floresville, TX

Exhibit E

# Notice of Acceleration and
# Notice of Substitute Trustee's Sale

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

**Date:**  March 12, 2024

**Substitute Trustee:**  Lori Daves or John Daves

**Substitute Trustee's Address:**

> The Daves Law Firm
> 3624 North Hills Dr., Suite B-100
> Austin, Texas 78731
> Travis County

**Lender:**  Milestone Capital CRE I, LC

**Lender's Address:**    2704 Joanel
                         Houston, Texas 77027

**Note and Deed of Trust to be Foreclosed:**

> **Date:**        January 2, 2023

> **Original Principal Amount:** $5,900,000.00

**Grantor/Borrower:**  OTISCO RDX, LLC

**Lender:**  Milestone Capital CRE I, LLC

**Recording information:**    Deed of Trust and Security Agreement, recorded in Document No. 2023-132703, Wilson County, Texas secured by the property referenced in Exhibit A together with its attachments, thereto.

**Property:**    See Exhibit A

**County:**    Wilson

**Date of Sale:**  March 12, 2024

**Time of Sale:**  10:00 a.m. or within three (3) hours thereafter.

**Place of Sale:** Wilson County Courthouse at the most north-easterly door, being the courthouse door facing the office of the Wilson County Tax Assessor-Collector in Floresville, Wilson County Texas (which office bears the address of 2 Library Lane, Floresville, Texas or such other location within such Courthouse designated by the Wilson County Commissioners Court for the conducting of foreclosure sales.

WHEREAS, a Default has occurred in the Deed of Trust; such default was reported to not have been cured and all sums secured by such Deed of Trust were declared to be immediately due and payable.

WHEREAS, Lender has appointed Lori Daves and John Daves as Substitute Trustees under the Deed of Trust and under the Appointment of Substitute Trustee. Lender has instructed Trustee to offer the Property for sale toward the satisfaction of the Note and Deed of Trust.

Notice is given that the maturity of the Note has been accelerated and all sums secured by the Deed of Trust have been declared to be immediately due and payable.

On the Date of Sale, Substitute Trustee will offer the Property for sale at public auction at the Place of Sale, to the highest bidder for cash, "AS IS". No warranties, express or implied, including but not limited to the implied warranties of merchantability and fitness for a particular purpose shall be conveyed at the sale, save and except the Grantors warranties specifically authorized by the Grantor in the Deed of Trust. THERE WILL BE NO WARRANTY RELATING TO TITLE, POSSESSION, QUIET ENJOYMENT, OR THE LIKE FOR THE PERSONAL PROPERTY IN THIS DISPOSITION. Purchasers will receive whatever interest Grantor and Grantor's assigns have in the property, subject to any liens or interests of any kind that may survive the sale The earliest time the sale will occur is the Time of Sale, and the sale will be conducted no later than three hours thereafter.

Those desiring to purchase the Property will need to demonstrate their ability to pay cash on the day the Property is sold. Prospective bidders are advised to conduct an independent investigation of the nature and physical condition of the property.

Lori Daves, Substitute Trustee

## EXHIBIT A

### LEGAL DESCRIPTION

**Tract 1:**
A 24.92 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171, and the W.H.L. Jackson Survey No 40, Abstract 481, Wilson County, Texas, being all of that called 24.91 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 3) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 24 92 acre tract being more particularly described by metes and bounds on Exhibit "A" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway

**Tract 2:**
A 120.18 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 120.16 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 5) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 120.18 acre tract being more particularly described by metes and bounds on Exhibit "B" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway

**Tract 3A.**
A 60 14 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W H.L. Jackson Survey No 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 60 14 acre tract being more particularly described by metes and bounds on Exhibit "C-1" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.

**Tract 3B:**
A 0.456 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No 40, Abstract 481 Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 0.456 acre tract being more particularly described by metes and bounds on Exhibit "C-2" attached hereto and made a part hereof for all purposes.

**Tract 3C:**
A 1.924 acre tract of land, more or less, situated in the H.&T.C.R.R.Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 1.924 acre tract being more particularly described by metes and bounds on Exhibit "C-3" attached hereto and made a part hereof for all purposes.

**Tract 3D:**
A 152.88 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 152.88 acre tract being more particularly described by metes and bounds on Exhibit "C-4" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

EXHIBIT A TO DEED OF TRUST (LA VERNIA, TEXAS)

Error! Unknown document property name.

**Tract 4:**
Lots 244 and 245A, Las Palomas Country Club Estates, Unit 12, as per plat of Las Palomas Country Club Estates, Unit 12 filed of record in Volume 8, Pages 13-16, Plat Records of Wilson County, Texas, as amended by plat filed of record in Volume 9, Pages 42-43, Plat Records of Wilson County, Texas, to any extent modified by partial replatting as per plat of Estates of Quail Run Subdivison, filed of record in Volume 9, Pages 72-74, Plat Records of Wilson County, Texas.

**Tract 5:**
Lots 18, 19, 21, 22, 23 and 26 through 40, The Meadows at Quail Run, Section 1, as shown on plat of The Meadows at Quail Run, Section 1 of record in Volume 9, Pages 44-47, Plat Records of Wilson County, Texas.

**Tract 6:**
Lot 13, Lake Valley Estates Subdivision, Unit 35 as per plat of Lake Valley Estates Subdivision, Unit 35 of record in Volume 5, Page 29, Plat Records of Wilson County, Texas.

**Tract 7:**
Lots 1, 2, 10, 11 and 12, Block 1, Lake Valley Estates Subdivision, Unit 36 as per plat of Lake Valley Estates Subdivision, Unit 36 of record in Volume 5, Page 43, Plat Records of Wilson County, Texas.

**Tract 8:**
Lots 1 through 10, Lake Valley Estates Subdivision, Unit 42 as per plat of Lake Valley Estates Subdivision, Unit 42 of record in Volume 5, Page 44, Plat Records of Wilson County, Texas.

**Tract 9:**
Lots 2, 3, 5, 9 and 12, Lake Valley Estates Subdivision, Unit 43 as per plat of Lake Valley Estates Subdivision, Unit 43 of record in Volume 5, Page 45, Plat Records of Wilson County, Texas.

**Tract 10:**
Lot 2, Lake Valley Estates Subdivision, Unit 44 as per plat of Lake Valley Estates Subdivision, Unit 44 of record in Volume 5, Page 28, Plat Records of Wilson County, Texas.

Error! Unknown document property name.

# EXHIBIT "A"

### METES AND BOUNDS DESCRIPTION
### TRACT 1
### 24.92 ACRES IN THE
### H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON
### SURVEY NO. 40, ABSTRACT 481
### WILSON COUNTY, TEXAS

A 24.92-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING ALL OF THAT CALLED 24.91-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 3) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 24.92-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

COMMENCING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the east right-of-way line of Pine Valley Drive (60-foot width, Volume 7, Page 46, Wilson County Plat Records) marking the most northerly northwest corner of a called 44.82-acre tract of land described in a deed to The Meadows at Quail Run, Ltd (Tract 2), recorded in Volume 1211, Page 431 of the Wilson County Official Public Records and the southwest corner of Lot 69 of Las Palomas Country Club Estates, Section 2 recorded in Volume 7, Page 46 of the Wilson County Plat Records;

THENCE North 85°02'52" East, 159.36 feet, along the common line of said Tract 2 and said Lot 69 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northwest line of a called 69.95-acre tract of land described in a deed to National Loan Investors, L. P., (Tract 5) marking the northeast corner of said Tract 2 and the southeast corner of said Lot 69;

THENCE North 78°16'55" East, 20.20 feet, over and across said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking an ell corner of said Tract 5 and the northwest corner of said Tract 3 and the POINT OF BEGINNING of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 3 as follows:

(1)     North 79°07'31" East, 452.99 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Tract 3 and of the herein described tract of land;

(2)     South 25°02'54" East, 97.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(3)     South 24°55'32" East, 833.85 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the north corner of Lot 113 of said Las Palomas Country Club Estates, Section 2 and a reentrant corner of said Tract 3 and of the herein described tract of land;

Page 1 of 4

A-3

24.92 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 461
Wilson County, Texas

(4)   THENCE South 85°08'59" West, 147.55 feet along the common line of said Lot 113 and said Tract 3 to a found 1/2-inch iron rod with cap stamped "INTREPID" marking the northeast terminus of Colonial Lane (60-foot width, Volume 7, Page 46 Wilson County Plat Records) and the west corner of said Lot 113;

THENCE along the common line of said Colonial Lane and said Tract 3 as follows:

(5)   South 54°55'50" West, 59.52 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485";

(6)   South 07°20'02" West, 33.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)   South 43°00'36" East, 59.42 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485";

(8)   North 89°50'08" East, 32.44 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" (leaning) marking the point of curvature of a curve to the left;

(9)   in a southeasterly direction, 48.40 feet, along the arc of said curve to the left, having a radius of 894.25 feet, a central angle of 03°06'03" and a chord which bears South 55°49'15" East, 48.39 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency and the west corner of Lot 114 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Las Palomas Country Club Estates, Section 2 and said Tract 3 as follows:

(10)   South 18°26'02" East, 203.77 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of said Lot 114 and the southwest corner of Lot 115 of said Las Palomas Country Club Estates, Section 2;

(11)   South 68°37'55" East, 69.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of said Lot 115 and the southwest corner of Lot 116 of said Las Palomas Country Club Estates, Section 2;

(12)   South 59°35'52" East, 450.14 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(13)   South 66°51'07" East, 244.65 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the northwest right-of-way line of Las Palomas Drive (60-foot width, Volume 7, Page 46, Wilson County Plat

24.82 Acres
H. & T. C. R.R. Co. Survey No. 33, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

Records) marking the south corner of Lot 123 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Las Palomas Drive and said Tract 3 as follows:

(14)      South 23°11'33" West, 154.97 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southwest terminus of said Las Palomas Drive;

(15)      South 66°48'12" East, 60.12 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast terminus of said Las Palomas Drive and the northwest corner of Lot 124 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Lot 124 and said Tract 3 as follows:

(16)      South 21°57'45" East, 35.34 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of said Lot 124;

(17)      North 64°59'31" East, 259.93 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of said Lot 124, and the point of curvature of a non-tangent curve to the left;

THENCE along the common line of said Tract 5 and said Tract 3 as follows:

(18)      In a southeasterly direction, 127.23 feet, along the arc of said non-tangent curve to the left, having a radius of 140.86 feet, a central angle of 51°44'53" and a chord which bears South 52°04'00" East, 122.94 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(19)      South 02°43'19" West, 187.84 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(20)      South 14°33'56" West, 188.57 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" and being the south corner of the herein described tract of land;

(21)      North 66°51'06" West, 813.96 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22)      North 82°01'44" West, 305.83 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of curvature of a curve to the left;

(23)      In a southwesterly direction, 107.82 feet, along the arc of said curve to the left, having a radius of 135.62 feet, a central angle of 45°29'11" and a chord which bears South 82°26'47" West, 105.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

24.92 Acres
H, & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(24)     North 18°28'05" West, 863.57 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(25)     North 11°09'17" West, 431.99 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of curvature of a curve to the left;

(26)     In a northwesterly direction, 227.34 feet, along the arc of said curve to the left, having a radius of 139.55 feet, a central angle of 93°20'36" and a chord which bears North 55°25'03" West, 203.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(27)     North 19°56'55" West, 368.24 feet to the POINT OF BEGINNING and containing 24.92 acres (1,085,697 square feet) of land.  This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "B"

### METES AND BOUNDS DESCRIPTION
### TRACT 2
### 120.18 ACRES IN THE
### H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON
### SURVEY NO. 40, ABSTRACT 461
### WILSON COUNTY, TEXAS

A 120.18-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 461, WILSON COUNTY, TEXAS, BEING ALL OF THAT CALLED 120.18-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 5) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 120.18-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

COMMENCING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the west right-of-way line of Lake Valley Drive (width varies) marking the southerly point of tangency of a curve to the right of Lot 24 of The Meadows of Quail Run Section 1 as recorded in Volume 9, Page 44 of the Wilson County Plat Records;

THENCE South 30°45'42" East, 316.64 feet, along the common line of Lots 24 and 25 of said Meadows of Quail Run Section 1 and Lake Valley Drive to a point in the northeast line of said Lot 25;

THENCE South 59°14'18" East, 427.11 feet, over and across said Lot 25 and a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L.P. to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a reentrant corner of said Tract 4 and the northeast corner of said Tract 5, a point in the arc of a non-tangent curve to the left and being the POINT OF BEGINNING of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 4 as follows:

(1)    In a southeasterly direction, 21.77 feet, along the arc of said non-tangent curve to the left, having a radius of 172.98 feet, a central angle of 07°12'37" and a chord which bears South 24°41'19" East, 21.76 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(2)    South 27°12'04" East, 879.11 feet to a found 1/2-inch iron rod with cap stamped "NORTHSTAR 4360";

(3)    South 17°34'48" East, 834.37 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

120.15 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(4)     North 81°00'17" East, 100.00 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(5)     South 63°47'04" East, 356.64 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(6)     South 39°39'48" West, 261.93 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(7)     South 41°13'31" West, 834.48 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(8)     South 88°05'42" West, 352.09 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(9)     in a southwesterly direction, 352.46 feet, along the arc of said curve to the
        left, having a radius of 140.01 feet, a central angle of 144°14'04" and a
        chord which bears South 82°56'39" West, 266.49 feet to a found 5/8-inch
        iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(10)    South 17°17'46" West, 379.48 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(11)    South 12°32'07" East, 834.52 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(12)    South 06°30'54" West, 357.67 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(13)    in a southwesterly direction, 332.66 feet, along the arc of said curve to the
        left, having a radius of 139.55 feet, a central angle of 136°34'53" and a
        chord which bears South 28°30'30" West, 259.30 feet to a found 5/8-inch
        iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(14)    South 48°12'41" East, 582.61 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(15)    South 20°50'51" West, 335.20 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(16)    in a southwesterly direction, 231.62 feet, along the arc of said curve to the
        left, having a radius of 139.76 feet, a central angle of 94°57'22" and a chord
        which bears South 55°14'30" West, 206.01 feet to a found 5/8-inch iron rod
        with aluminum cap stamped "PRO-TECH" at the end of said curve;

(17)    South 15°39'27" West, 244.09 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

120.18 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(18) South 42°58'23" West, 813.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(19) North 68°36'37" West, 372.31 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(20) In a northeasterly direction, 44.08 feet, along the arc of said curve to the left, having a radius of 137.66 feet, a central angle of 18°20'48" and a chord which bears North 04°07'13" East, 43.89 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(21) North 02°06'57" West, 672.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22) North 29°53'19" West, 536.31 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of a called 4.81-acre tract of land (Tract 1) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records and the west corner of said Tract 5 and of the herein described tract of land;

(23) THENCE North 60°12'12" East, 100.86 feet, along the common line of said Tract 1 and said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a southeast corner of said Tract 1, the west corner of a called 7.64-acre tract of land (Tract 2) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records, and a reentrant corner of said Tract 5 and of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 2 as follows:

(24) South 68°08'43" East, 903.67 feet to a found 5/8-inch iron rod (leaning) and being the south corner of said Tract 2;

(25) North 16°45'01" East, 450.11 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" being the east corner of said Tract 2;

(26) North 76°17'50" West, 903.44 feet to a 5/8-inch iron rod set with cap stamped "RPLS 6485" in the southeast line of said Tract 1 marking the north corner of said Tract 2 and a reentrant corner of said Tract 5 and of the herein described tract of land;

(27) THENCE North 13°11'49" East, 76.37 feet, along the common line of said Tract 1 and said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the east corner of said Tract 1, in an interior line of said Tract 4, and a reentrant corner of said Tract 5 and of the herein described tract of land;

THENCE along the common line of said Tract 4 and said Tract 5 as follows:

120.18 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. I. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(28)     North 73°43'18" East, 409.80 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(29)     North 18°55'44" East, 763.32 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(30)     North 14°21'21" West, 834.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(31)     North 02°46'17" East, 371.26 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(32)     in a northeasterly direction, 211.68 feet, along the arc of said curve to the left, having a radius of 139.76 feet, a central angle of 86°46'44" and a chord which bears North 49°23'02" East, 192.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(33)     North 09°05'08" East, 526.75 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(34)     North 13°59'53" West, 834.67 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(35)     South 84°36'42" West, 79.96 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(36)     North 01°49'36" West, 449.81 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" (bent) in the arc of a curve to the left;

(37)     in a northeasterly direction, 69.89 feet, along the arc of said curve to the left, having a radius of 137.53 feet, a central angle of 28°59'26" and a chord which bears North 65°42'44" East, 69.85 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency;

(38)     North 43°29'57" East, 665.19 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

120.18 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(39)       North 68°22'33" East, 360.71 feet to the POINT OF BEGINNING and
containing 120.18 acres (5,235,106 square feet) of land. This description
accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying,
LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-1"

### METES AND BOUNDS DESCRIPTION
### TRACT 3A
### 60.14 ACRES IN THE
### H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY
### NO. 40, ABSTRACT 481, AND A. JACKSON SURVEY NO. 34, ABSTRACT 482
### WILSON COUNTY, TEXAS

A 60.14-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 60.14-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the south right-of-way line of Lake Valley Drive (width varies) marking the northeast corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northerly northwest corner of the herein described tract of land;

(1)     THENCE North 66°12'03" East, 120.00 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northwest corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the northerly northeast corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2)     South 22°00'09" East, 4.93 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(3)     South 23°07'26" West, 35.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4)     South 21°46'28" East, 94.27 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(5)     In a southeasterly direction, 145.78 feet, along the arc of said curve to the left, having a radius of 265.04 feet, a central angle of 31°30'51" and a chord which bears South 37°33'54" East, 143.95 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the point of tangency;

Page 1 of 4

A-12

80.14 Acres
I. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 401
A. Jackson Survey No. 34, Abstract 482
Wilson County, Texas

(6)   South 53°14'05" East, 109.12 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)   North 61°25'04" East, 516.81 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(8)   North 62°18'13" East, 879.33 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left in a northerly southwest line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records marking the southeast corner of lot 19 of said Meadows of Quail Run Section 1 and a reentrant corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

THENCE along the common line of said Tract 4 and said residue of a called 279.69-acre tract of land as follows:

(9)   In a southeasterly direction, 89.78 feet, along the arc of said curve to the left, having a radius of 143.65 feet, a central angle of 35°48'34" and a chord which bears South 73°39'12" East, 88.33 feet to a found 5/8-inch iron rod at the end of said curve;

(10)  South 01°50'05" East, 449.56 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(11)  South 03°14'36" West, 834.53 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12)  South 01°37'02" West, 458.08 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(13)  In a southeasterly direction, 207.93 feet, along the arc of said curve to the left, having a radius of 140.32 feet, a central angle of 84°54'14" and a chord which bears South 36°31'19" East, 189.42 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(14)  South 02°45'41" West, 375.51 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(15)  South 84°17'20" West, 79.88 feet to a found 5/8-inch iron rod;

(16)  South 02°52'11" West, 834.46 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(17)  South 18°25'41" West, 462.20 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" and being the southeast corner of the herein described tract of land; .

Page 2 of 4

60.14 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 461
A. Jackson Survey No. 34, Abstract 462
Wilson County, Texas

(18)    South 87°26'01" West, 256.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of a called 4.81-acre tract of land (Tract 1) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records;

(19)    THENCE South 83°26'02" West, 77.35 feet, along the common line of said Tract 1 and of the herein described tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in an easterly line of a called 69.95-acre tract of land (Tract 5) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records, and the southwest corner of the herein described tract of land;

THENCE along the common line of said called 69.95-acre tract of land (Tract 5) and the said residue of a called 279.69-acre tract of land and of the herein described tract of land as follows:

(20)    North 08°56'44" East, 950.32 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(21)    North 08°36'17" West, 834.42 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22)    North 89°59'21" West, 100.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(23)    North 50°14'17" West, 361.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(24)    In a northwesterly direction, 206.56 feet, along the arc of said curve to the left, having a radius of 138.99 feet, a central angle of 85°08'51" and a chord which bears North 02°17'01" West, 188.07 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(25)    North 83°40'26" West, 163.06 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(26)    North 53°18'51" West, 834.92 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of Lot 10 of said Meadows of Quail Run Section 1;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(27)    North 28°00'40" West, 106.19 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

Page 3 of 4

A-14

80.14 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
Wilson County, Texas

(28)     North 21°48'15" West, 77.80 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the southwest corner of Lot 11 of said Meadows of Quail Run Section One;

(29)     North 55°42'57" East, 247.34 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a non-tangent curve to the right at the southeast corner of said Lot 11;

(30)     in a northwesterly direction, 39.47 feet, along the arc of said non-tangent curve to the right, having a radius of 335.00 feet, a central angle of 06°45'02" and a chord which bears North 25°10'46" West, 39.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency;

(31)     North 21°48'15" West, 94.38 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(32)     North 66°48'15" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Lot 11 and the southeast corner of said 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1;

(33)     **THENCE** North 21°48'15" West, 5.00 feet to the POINT OF BEGINNING and containing 60.14 acres (2,619,822 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-2"

**METES AND BOUNDS DESCRIPTION**
**TRACT 3B**
**0.456 ACRE IN THE**
**W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481**
**WILSON COUNTY, TEXAS**

A 0.456-ACRE TRACT OF LAND SITUATED IN THE W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 8) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 0.456-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the south right-of-way line of Lake Valley Drive (width varies) marking the northeast corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northerly northwest corner of the herein described tract of land;

(1)  THENCE North 58°41'18" East, 120.00 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northwest corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the northerly northeast corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2)  South 31°26'05" East, 5.03 feet to a found 5/8-inch iron rod with aluminum cap stamped " PRO-TECH" at the northwest corner of Lot 22 of said Meadows of Quail Run Section One;

(3)  South 13°41'18" West, 35.38 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4)  South 31°20'36" East, 246.73 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northwest line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L.P. recorded in Volume 1694, Page 737 of the Wilson County Official Public Records marking the southwest corner of said Lot 22 and the southeast corner of the herein described tract of land;

Page 1 of 2

A-16

2024 - 269 03/12/2024 04:15 PM Page 19 of 24

0.456 Acre
W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(5)    THENCE South 68°13'58" West, 71.19 feet, along the common line of said Tract
1 and of the herein described tract of land to a 5/8-inch iron rod set with cap
stamped "RPLS 5465" marking a southeast corner of Lot 21 of said Meadows of
Quail Run Section 1 and the southwest corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said
residue of a called 278.69-acre tract of land as follows:

(6)    North 31°17'51" West, 234.95 feet to a found 5/8-inch iron rod with
aluminum cap stamped "PRO-TECH";

(7)    North 76°17'51" West, 35.36 feet to a found 5/8-inch iron rod with aluminum
cap stamped "PRO-TECH" marking the northeast corner of said Lot 21;

(8)    North 31°17'51" West, 5.00 feet to the POINT OF BEGINNING and containing
0.456 acres (19,863 square feet) of land. This description accompanies an
Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the
3rd day of May, 2022.

# EXHIBIT "C-3"

METES AND BOUNDS DESCRIPTION
TRACT 3C
1.924 ACRES IN THE
W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481 AND
A. JACKSON SURVEY NO. 34, ABSTRACT 482
WILSON COUNTY, TEXAS

A 1.924-ACRE TRACT OF LAND SITUATED IN THE W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481 AND A. JACKSON SURVEY NO. 34, ABSTRACT 482, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 1.924-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS);

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the west right-of-way line of Lake Valley Drive (width varies) marking the southeast corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northeast corner of the herein described tract of land;

(1)     THENCE South 30°29'55" East, 119.90 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northeast corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the east corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2)     South 60°26'12" West, 5.00 feet to a found 5/8-inch iron rod with aluminum cap stamped" PRO-TECH" at the easterly northeast corner of Lot 34 of said Meadows of Quail Run Section One;

(3)     North 75°31'46" West, 35.38 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4)     South 59°28'12" West, 60.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point on curvature of an curve to the left;

(5)     In a southwesterly direction, 168.78 feet, along the arc of said curve to the left, having a radius of 2,470.64 feet, a central angle of 03°54'51" and a chord which bears South 57°30'22" West, 168.75 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northwest corner of said Lot 34 and a reentrant corner of the herein described tract of land;

Page 1 of 2

A-18

1.924 Acres
W. H. L. Jackson Survey No. 40, Abstract 481
and A. Jackson Survey No. 34, Abstract 482
Wilson County, Texas

(6)    South 30°31'48" East, at 170.27 feet pass a 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southwest corner of said Lot 34 and the northwest corner of Lot 35 of said Meadows of Quail Run Section 1, continuing in all for a total distance of 253.80 feet to a 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northeast line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 Wilson County Official Public Records being the arc of a curve to the left, same being the northerly southwest corner of said Lot 35 and the southeast corner of the herein described tract of land;

THENCE along the common line of said Tract 4 and said residue of a called 279.69-acre tract of land as follows:

(7)    in a southwesterly direction, 112.68 feet, along the arc of said curve to the left, having a radius of 140.47 feet, a central angle of 45°57'05" and a chord which bears South 57°41'35" West, 109.68 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(8)    North 63°48'44" West, 346.14 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485" marking the point of curvature of a non-tangent curve to the right, the southwest corner of Lot 33 of said Meadows of Quail Run Section One and the west corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(9)    in a northeasterly direction, 470.91 feet, along the arc of said non-tangent curve to the right, having a radius of 2,635.00 feet, a central angle of 10°38'38" and a chord which bears North 54°08'54" East, 470.23 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(10)   North 59°28'12" East, 60.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(11)   North 14°53'31" East, 35.40 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the easterly southeast corner of said Lot 33;

(12)   North 58°48'46" East, 4.86 feet to the POINT OF BEGINNING and containing 1.924 acres (83,807 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-4"

## METES AND BOUNDS DESCRIPTION
## TRACT 3D
## 152.88 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY
NO. 40, ABSTRACT 481, A. JACKSON SURVEY NO. 34, ABSTRACT 482, AND B. H.
STEPHENS SURVEY, ABSTRACT 505
WILSON COUNTY, TEXAS

A 152.88-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO.
SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY NO. 40,
ABSTRACT 481, AND B. H. STEPHENS SURVEY, ABSTRACT 505, WILSON
COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE
TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD
(TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON
COUNTY OFFICIAL PUBLIC RECORDS, SAID 152.88-ACRE TRACT BEING
MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS,
(BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH
CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-
TECH" in the north line of a called 131.73-acre tract of land described in a deed to
Scott D. & Sharon E. Garrett recorded in Volume 925, Page 508 of the Wilson
County Official Public Records marking the southwest corner of Lot 42 of the
Meadows of Quail Run Section One recorded in Volume 9, Page 44 of the Wilson
County Plat Records and the east corner of said residue of a called 279.69-acre
tract of land;

THENCE along the common line of said 131.73-acre tract of land and said residue
of a called 279.69-acre tract of land as follows:

(1)　　　South 59°16'57" West, 1,655.99 feet to a 5/8-inch iron rod set with cap
stamped "RPLS 5485";

(2)　　　South 69°22'35" West, 378.76 feet to a found 1/2-inch iron rod;

(3)　　　South 48°28'19" West, 95.16 feet to a fence post for corner marking the
northwest corner of said called 131.73-acre tract of land and a reentrant
corner of the herein described tract of land;

(4)　　　South 31°03'56" East, 706.81 to a found 3-inch metal fence post for corner;

(5)　　　South 06°33'39" East, 199.78 feet to a found 1-inch iron pipe marking the
northwest corner of a called 960.00-acre tract of land described in a deed
to Margaret Chance Evans Rael, et al, recorded in Volume 1541, Page 388
of the Wilson County Official Public Records and the southwest corner of
said 131.73-acre tract of land;

THENCE along the common line of said called 960.00-acre tract of land and the
said residue of a called 279.69-acre tract of land and of the herein described tract
of land as follows:

Page 1 of 6

A-20

152.88 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
and B. H. Stephens Survey, Abstract 505
Wilson County, Texas

(6) South 04°46'07" East, 88.20 feet to a found 5/8-inch iron rod with cap stamped "W, DOVE 4143";

(7) South 31°07'27" East, 1,073.20 feet to a found 1/2-inch iron rod marking the northeast corner of a called 317.60-acre tract of land described in a deed to Charles and Mary Meeks recorded in Volume 1788, Page 774 of the Wilson County Official Public Records and the southeast corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

(8) THENCE South 58°50'04" West, 3,847.77 feet along the common line of said 317.60-acre tract of land and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of a called 27.22-acre tract of land described in a deed to Campo Golf Management Company, LLC recorded in Volume 1080, Page 26 of the Wilson County Official Public Records and the southwest corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

THENCE along the common line of said called 27.22-acre tract of land and said residue of a called 279.69-acre tract of land as follows:

(9) North 10°35'21" West, 1,042.65 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(10) North 84°04'23" West, 830.85 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of a called 89.95-acre tract of land (Tract 5) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 and being the most westerly corner of the herein described tract of land;

THENCE along the common line of said Tract 5 and said residue of a called 279.69-acre tract of land as follows:

(11) North 05°57'31" East, 459.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12) South 84°07'07" East, 622.03 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(13) North 14°35'16" East, 303.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(14) North 02°46'13" East, 188.29 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;



**Wilson County**
**Genevieve Martinez**
**Wilson County Clerk**

*VG-6488-2024-269*

Instrument Number: 269

Foreclosure Posting

Recorded On: March 12, 2024 04:15 PM          Number of Pages: 24

" Examined and Charged as Follows: "

Total Recording: $2.00

*********** THIS PAGE IS PART OF THE INSTRUMENT ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                          **Record and Return To:**

Document Number: 269                          DREW DENNETT

Receipt Number: 20240312000046                2450 WICKERSHAN LANE SUITE 202

Recorded Date/Time: March 12, 2024 04:15 PM

User: Liliana L                               AUSTIN TX 78741

Station: cclerk01



**STATE OF TEXAS**
**Wilson County**
**I hereby certify that this Instrument was filed in the File Number sequence on the date/time**
**printed hereon, and was duly recorded in the Official Records of Wilson County, Texas**

Genevieve Martinez

Genevieve Martinez
Wilson County Clerk
Floresville, TX

# Exhibit F

Notice of Confidentiality Rights: If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed for record in the public records: your Social Security number or your driver's license number.

## SUBSTITUTE TRUSTEE'S DEED

DATE:  April 2, 2024

NOTE: described as follows:

Date: January 2, 2023
Maker: OTISCO RDX, LLC

Payee: Milestone Capital CRE I, LLC

Original Principal Amount:$5,900,000.00

DEED OF TRUST: described as follows:

Date: January 2, 2023
Grantor: OTISCO RDX, LLC
Trustee: A. Kelly Williams
Beneficiary: Milestone Capital CRE I, LLC

Recorded: Document number 2023-132703 in the real property records of Wilson County, Texas

LENDER:  Milestone Capital CRE I, LLC

BORROWER:  OTISCO RDX, LLC

PROPERTY:  The real property described as follows:

    See Exhibit A

Together with all improvements, easements, personal property, intangibles, rents, revenues, contracts, and rights appurtenant to the real property, as described in the Deed of Trust.

SUBSTITUTE TRUSTEE: Lori P. Daves

NOTICE OF SUBSTITUTE TRUSTEE'S SALE:

The Notice of Substitute Trustee's Sale filed with the County Clerk of Wilson, Texas, in compliance with Texas Property Code section 51.002 and with the Deed of Trust.

DATE AND TIME **OF** SUBSTITUTE TRUSTEE'S SALE OF PROPERTY:

April 2, 2024, the first Tuesday of the month, the sale was completed at __12:30 pm__

The Substitute Trustee's sale commenced within three (3) hours of 10:00 a.m. which was specified in the Notice of Substitute Trustee's Sale as the earliest time when the sale would commence.

PLACE **OF** SUBSTITUTE TRUSTEE'S SALE OF PROPERTY:

> Wilson Cout Courthouse at the most north-easterly door, being the courthouse door facing the office of the Wilson County Tax Assessor-Collector in Floresville, Wilson County, Texas which office bears the address of 2 Library Lane, Floresville, Texas

GRANTEE: __Milestone Capital CRE 1, LLC__

GRANTEE'S MAILING ADDRESS: __2704 Joanel__
__Houston, Tx 77027__

SUBSTITUTE TRUSTEE'S SALE BID AMOUNT: __$5,900,000.00__

## RECITALS

Grantor, owner of fee-simple interest in the Property, conveyed the Property to Trustee, in trust, to secure payment of the Note. Lender is the owner of the indebtedness evidenced by the Notes, and the holder of the Notes and the Deed of Trust lien under Texas Property Code section 51.002.

Default has occurred in the payment of the Notes and in the performance of the obligations under the Deed of Trust that secures the Notes. Lender has appointed Substitute Trustee and requested that Substitute Trustee enforce the trusts, as evidenced by the Appointment of Substitute Trustee filed with the County Clerk in the county where the Property is located.

Substitute Trustee, either personally or by agent, served all notices required by statute in compliance with Texas Property Code section 51.002 and with the Deed of Trust to proceed with the sale.

Copies of the Notice of Substitute Trustee's Sale stating the time, place, and terms of sale of the Property were posted and filed according to the requirements of the Deed of Trust and Texas Property Code section 51.002.

Lender and Substitute Trustee have satisfied all requirements of the Deed of Trust and applicable law for enforcement of the power of sale contained in the Deed of Trust and for the sale of the Property, and Substitute Trustee sold the Property ("Sale") to Grantee, who was the highest bidder at the public auction, for the Substitute Trustee's Sale Bid Amount.

Therefore, I, as Substitute Trustee, by the authority conferred by Lender and by the Deed of Trust, for the consideration of the Substitute Trustee's Sale Bid Amount paid by Grantee, do hereby grant, sell, and convey the Property, together with all rights and appurtenances attached to it, to have and to hold, to Grantee and Grantee's heirs, executors, administrators, successors, or assigns forever. Substitute Trustee binds Grantor and Grantor's heirs, executors, administrators, successors, and assigns to warrant and forever defend the Property against any person lawfully claiming or to claim the Property or any part of it, subject to any permitted exceptions to title described in the Deed of Trust. Except as expressly provided in this deed, Substitute Trustee has not made and does not make any covenants, representations, or warranties concerning the Property. The Property is sold and conveyed AS IS, WHERE IS, AND WITH ALL FAULTS.

Lori P. Daves, as Substitute Trustee

The foregoing instrument was acknowledged before me, the undersigned notary public by Lori P. Daves on the 5th day of April, 2024

ELLEN ABERNATHY
Notary Public, State of Texas
Comm. Expires 12-28-2027
Notary ID 130478972

Notary Public

# EXHIBIT A

Legal description of land:

### Tract 1:

A 24.92 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171, and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 24.91 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 3) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 24.92 acre tract being more particularly described by metes and bounds on Exhibit "A" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

### Tract 2:

A 120.18 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 120.16 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 5) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 120.18 acre tract being more particularly described by metes and bounds on Exhibit "B" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.

### Tract 3A:

A 60.14 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 60.14 acre tract being more particularly described by metes and bounds on Exhibit "C-1" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.

### Tract 3B:

A 0.456 acre tract of land, more or less, siutated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 0.456 acre tract being more particularly described by metes and bounds on Exhibit "C-2" attached hereto and made a part hereof for all purposes.

### Tract 3C:

A 1.924 acre tract of land, more or less, situated in the H.&T.C.R.R.Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 1.924 acre tract being more particularly described by metes and bounds on Exhibit "C-3" attached hereto and made a part hereof for all purposes.

### Tract 3D:

A 152.88 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 152.88 acre tract being more particularly described by metes and bounds on Exhibit "C-4" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

## EXHIBIT A
### (Continued)

Tract 4:
Lots 244 and 245A, Las Palomas Country Club Estates, Unit 12, as per plat of Las Palomas Country Club Estates, Unit 12 filed of record in Volume 8, Pages 13-16, Plat Records of Wilson County, Texas, as amended by plat filed of record in Volume 9, Pages 42-43, Plat Records of Wilson County, Texas, to any extent modified by partial replatting as per plat of Estates of Quail Run Subidivison, filed of record in Volume 9, Pages 72-74, Plat Records of Wilson County, Texas.

Tract 5:
Lots 18, 19, 21, 22, 23 and 26 through 40, The Meadows at Quail Run, Section 1, as shown on plat of The Meadows at Quail Run, Section 1 of record in Volume 9, Pages 44-47, Plat Records of Wilson County, Texas.

Tract 6:
Lot 13, Lake Valley Estates Subdivision, Unit 35 as per plat of Lake Valley Estates Subdivisiion, Unit 35 of record in Volume 5, Page 29, Plat Records of Wilson County, Texas.

Tract 7:
Lots 1, 2, 10, 11 and 12, Block 1, Lake Valley Estates Subdivision, Unit 36 as per plat of Lake Valley Estates Subdivision, Unit 36 of record in Volume 5, Page 43, Plat Records of Wilson County, Texas.

Tract 8:
Lots 1 through 10, Lake Valley Estates Subdivision, Unit 42 as per plat of Lake Valley Estates Subdivision, Unit 42 of record in Volume 5, Page 44, Plat Records of Wilson County, Texas.

Tract 9:
Lots 2, 3, 5, 9 and 12, Lake Valley Estates Subdivision, Unit 43 as per plat of Lake Valley Estates Subdivision, Unit 43 of record in Volume 5, Page 45, Plat Records of Wilson County, Texas.

Tract 10:
Lot 2, Lake Valley Estates Subdivision, Unit 44 as per plat of Lake Valley Estates Subdivision, Unit 44 of record in Volume 5, Page 28, Plat Records of Wilson County, Texas.

The company does not insure the area or quantity of land described herein.  Reference made to acreage amount is not a representation that such area or quantity is correct, but is given only for informational or identification purposes.

2024-141408 04/08/2024 8:37 AM Page 6 of 6

### Wilson County
### Genevieve
### Martinez
**Wilson County Clerk**

---

**Instrument Number:** 141408

eRecording - Real Property

SUBSTITUTE TRUSTEE DEED

Recorded On: April 08, 2024 08:35 AM                    Number of Pages: 6

---

**" Examined and Charged as Follows: "**

Total Recording: $41.00

---

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                    **Record and Return To:**

Document Number:    141408                               EPN
Receipt Number:     20240408000001
Recorded Date/Time: April 08, 2024 08:35 AM
User:               Loretta R
Station:            CC-2210

---



**STATE OF TEXAS**
**COUNTY OF WILSON**

I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Wilson County, Texas.

Genevieve Martinez
Wilson County Clerk
Floresville, TX

# Exhibit G

**Notice of Confidentiality Rights: If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed for record in the public records: your Social Security number or your driver's license number.**

## NOTICE OF RESCISSION OF NONJUDICIAL FORECLOSURE SALE

This Notice of Rescission of Nonjudicial Foreclosure Sale is made in connection with the Substitute Trustee's Deed dated April 2, 2024, recorded in Document No. 141408 in the real property records of Wilson County, Texas covering real property described in the attached Exhibit A ("Property").

A nonjudicial foreclosure sale of the Property was conducted on April 2, 2024 at 12:30 p.m. ("Substitute Trustee's Sale") by Lori P. Daves, acting as substitute trustee ("Substitute Trustee"), according to the Deed of Trust executed by OTISCO RDX, LLC ("Mortgagor"), dated January 2, 2023, and recorded in Document No. 2023-132703 in the real property records of Wilson, Texas.

The Substitute Trustee's Sale is rescinded because of a clerical error in the Notice of Sale which incorrectly stated the date of the sale as March 12, 2024.

This rescission of the Substitute Trustee's Sale restores the mortgagee and any debtors to their respective title, rights, and obligations under any instrument relating to the Property that existed immediately before the Substitute Trustee's Sale.

EXECUTED as of May 3, 2024

Lori P. Daves, Substitute Trustee

State of TEXAS             *
County of TRAVIS         *

The foregoing instrument was acknowledged before me, the undersigned notary public by Lori P. Daves on the ̲3̲ᴿ̲ᴰ̲ day of May, 2024.

Notary Public, State of Texas
My commission expires: ̲1̲0̲/̲0̲7̲/̲2̲0̲2̲6̲

VERONICA LYNN NAVARRO
Notary Public, State of Texas
My Commission Expires
October 07, 2026
NOTARY ID 1067602-0

̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲
Milestone Capital CRE I, LLC

State of Texas            *
County of ̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲      *

The foregoing instrument was acknowledged before me, the undersigned notary public by Andrew Almand who is personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this instrument and acknowledged to me that he/she executed the same in the capacity and with the authority so stated above on the __ day of May, 2024.

̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲
Notary Public, State of Texas
My commission expires: ̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲

**Notice of Confidentiality Rights: If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed for record in the public records: your Social Security number or your driver's license number.**

<u>NOTICE OF RESCISSION OF NONJUDICIAL FORECLOSURE SALE</u>

This Notice of Rescission of Nonjudicial Foreclosure Sale is made in connection with the Substitute Trustee's Deed dated April 2, 2024, recorded in Document No. 141408 in the real property records of Wilson County, Texas covering real property described in the attached Exhibit A ("Property").

A nonjudicial foreclosure sale of the Property was conducted on April 2, 2024 at 12:30 p.m. ("Substitute Trustee's Sale") by Lori P. Daves, acting as substitute trustee ("Substitute Trustee"), according to the Deed of Trust executed by OTISCO RDX, LLC ("Mortgagor"), dated January 2, 2023, and recorded in Document No. 2023-132703 in the real property records of Wilson, Texas.

The Substitute Trustee's Sale is rescinded because of a clerical error in the Notice of Sale which incorrectly stated the date of the sale as March 12, 2024.

This rescission of the Substitute Trustee's Sale restores the mortgagee and any debtors to their respective title, rights, and obligations under any instrument relating to the Property that existed immediately before the Substitute Trustee's Sale.

EXECUTED as of May __, 2024

_____
Lori P. Daves, Substitute Trustee

State of TEXAS                            *
County of TRAVIS                          *

The foregoing instrument was acknowledged before me, the undersigned notary public by

Lori P. Daves on the __ day of May, 2024.

_____

Notary Public, State of Texas
My commission expires: _____

_____
Milestone Capital CRE I, LLC

State of Texas
County of ____Bandera____        *
                                 *

The foregoing instrument was acknowledged before me, the undersigned notary public by
Andrew Almand who is personally known to me or proved to me on the basis of
satisfactory evidence to be the person whose name is subscribed to this instrument and
acknowledged to me that he/she executed the same in the capacity and with the authority
so stated above on the *13* day of May, 2024.



_____
Notary Public, State of Texas    4-28-26
My commission expires: _____

DANA L. HOESEN
Notary Public, State of Texas
Comm. Expires 04-28-2026
Notary ID 128199652

## EXHIBIT A

## LEGAL DESCRIPTION

Tract 1:
A 24.92 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171, and the W.H.L. Jackson Survey No 40, Abstract 481, Wilson County, Texas, being all of that called 24.91 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 3) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 24.92 acre tract being more particularly described by metes and bounds on Exhibit "A" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway

Tract 2:
A 120.18 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 120.16 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 5) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 120.18 acre tract being more particularly described by metes and bounds on Exhibit "B" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway

Tract 3A:
A 60 14 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 60 14 acre tract being more particularly described by metes and bounds on Exhibit "C-1" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.

Tract 3B:
A 0.456 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 0.456 acre tract being more particularly described by metes and bounds on Exhibit "C-2" attached hereto and made a part hereof for all purposes.

Tract 3C:
A 1.924 acre tract of land, more or less, situated in the H.&T.C.R.R.Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 1.924 acre tract being more particularly described by metes and bounds on Exhibit "C-3" attached hereto and made a part hereof for all purposes.

Tract 3D:
A 152.88 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 152.88 acre tract being more particularly described by metes and bounds on Exhibit "C-4" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

EXHIBIT A TO DEED OF TRUST (LA VERNIA, TEXAS)

Error! Unknown document property name.

Tract 4:
Lots 244 and 245A, Las Palomas Country Club Estates, Unit 12, as per plat of Las Palomas Country Club Estates, Unit 12 filed of record in Volume 8, Pages 13-16, Plat Records of Wilson County, Texas, as amended by plat filed of record in Volume 9, Pages 42-43, Plat Records of Wilson County, Texas, to any extent modified by partial replatting as per plat of Estates of Quail Run Subidivison, filed of record in Volume 9, Pages 72-74, Plat Records of Wilson County, Texas.

Tract 5:
Lots 18, 19, 21, 22, 23 and 26 through 40, The Meadows at Quail Run, Section 1, as shown on plat of The Meadows at Quail Run, Section 1 of record in Volume 9, Pages 44-47, Plat Records of Wilson County, Texas.

Tract 6:
Lot 13, Lake Valley Estates Subdivision, Unit 35 as per plat of Lake Valley Estates Subdivision, Unit 35 of record in Volume 5, Page 29, Plat Records of Wilson County, Texas.

Tract 7:
Lots 1, 2, 10, 11 and 12, Block 1, Lake Valley Estates Subdivision, Unit 36 as per plat of Lake Valley Estates Subdivision, Unit 36 of record in Volume 5, Page 43, Plat Records of Wilson County, Texas.

Tract 8:
Lots 1 through 10, Lake Valley Estates Subdivision, Unit 42 as per plat of Lake Valley Estates Subdivision, Unit 42 of record in Volume 5, Page 44, Plat Records of Wilson County, Texas.

Tract 9:
Lots 2, 3, 5, 9 and 12, Lake Valley Estates Subdivision, Unit 43 as per plat of Lake Valley Estates Subdivision, Unit 43 of record in Volume 5, Page 45, Plat Records of Wilson County, Texas.

Tract 10:
Lot 2, Lake Valley Estates Subdivision, Unit 44 as per plat of Lake Valley Estates Subdivision, Unit 44 of record in Volume 5, Page 28, Plat Records of Wilson County, Texas.

Error! Unknown document property name.

# Exhibit H

# Notice of Acceleration and
# Notice of Substitute Trustee's Sale

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

**Date:**    May 10, 2024

**Substitute Trustee:** Andres Cedillos, Law Office of Andres Cedillos, P. C.

**Substitute Trustee's Address:**

Law Office of Andres Cedillos
1433 Third St.
Floresville, Texas 78114
Wilson County

**Lender:** Milestone Capital CRE I, LC

**Lender's Address:**    2704 Joanel
Houston, Texas 77027

**Note and Deed of Trust to be Foreclosed:**

**Date:**    January 2, 2023

**Original Principal Amount:** $5,900,000.00

**Grantor/Borrower:** OTISCO RDX, LLC

**Lender:** Milestone Capital CRE I, LLC

**Recording information:**    Deed of Trust and Security Agreement, recorded in Document No. 2023-132703, Wilson County, Texas secured by the property referenced in Exhibit A together with its attachments, thereto.

**Property:**    See Exhibit A

**County:**    Wilson

**Date of Sale:** June 4, 2024

**Time of Sale:** 10:00 a.m. or within three (3) hours thereafter.

**Place of Sale:** Wilson County Courthouse at the most north-easterly door, being the courthouse door facing the office of the Wilson County Tax Assessor-Collector in Floresville, Wilson County Texas (which office bears the address of 2 Library Lane, Floresville, Texas or such other location within such Courthouse designated by the Wilson County Commissioners Court for the conducting of foreclosure sales.

WHEREAS, a Default has occurred in the Deed of Trust; such default was reported to not have been cured and all sums secured by such Deed of Trust were declared to be immediately due and payable.

WHEREAS, Lender has appointed Andres Cedillos, The Law Office of Andres Cedillos, as Substitute Trustees under the Deed of Trust and under the Appointment of Substitute Trustee. Lender has instructed Trustee to offer the Property for sale toward the satisfaction of the Note and Deed of Trust.

Notice is given that the maturity of the Note has been accelerated and all sums secured by the Deed of Trust have been declared to be immediately due and payable.

On the Date of Sale, Substitute Trustee will offer the Property for sale at public auction at the Place of Sale, to the highest bidder for cash, "AS IS". No warranties, express or implied, including but not limited to the implied warranties of merchantability and fitness for a particular purpose shall be conveyed at the sale, save and except the Grantors warranties specifically authorized by the Grantor in the Deed of Trust. THERE WILL BE NO WARRANTY RELATING TO TITLE, POSSESSION, QUIET ENJOYMENT, OR THE LIKE FOR THE PERSONAL PROPERTY IN THIS DISPOSITION. Purchasers will receive whatever interest Grantor and Grantor's assigns have in the property, subject to any liens or interests of any kind that may survive the sale The earliest time the sale will occur is the Time of Sale, and the sale will be conducted no later than three hours thereafter.

Those desiring to purchase the Property will need to demonstrate their ability to pay cash on the day the Property is sold. Prospective bidders are advised to conduct an independent investigation of the nature and physical condition of the property.

_____

Andres Cedillos, Substitute Trustee

Page 2 of 2

## EXHIBIT A

### LEGAL DESCRIPTION

**Tract 1:**
A 24.92 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171, and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 24.91 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 3) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 24.92 acre tract being more particularly described by metes and bounds on Exhibit "A" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway

**Tract 2:**
A 120.18 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 120.16 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 5) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 120.18 acre tract being more particularly described by metes and bounds on Exhibit "B" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway

**Tract 3A.**
A 60 14 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W H.L. Jackson Survey No 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 60 14 acre tract being more particularly described by metes and bounds on Exhibit "C-1" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.

**Tract 3B:**
A 0.456 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 0.456 acre tract being more particularly described by metes and bounds on Exhibit "C-2" attached hereto and made a part hereof for all purposes.

**Tract 3C:**
A 1.924 acre tract of land, more or less, situated in the H.&T.C.R.R.Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 1.924 acre tract being more particularly described by metes and bounds on Exhibit "C-3" attached hereto and made a part hereof for all purposes.

**Tract 3D:**
A 152.88 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 152.88 acre tract being more particularly described by metes and bounds on Exhibit "C-4" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

EXHIBIT A TO DEED OF TRUST (LA VERNIA, TEXAS)

Error! Unknown document property name.

**Tract 4:**
Lots 244 and 245A, Las Palomas Country Club Estates, Unit 12, as per plat of Las Palomas Country Club Estates, Unit 12 filed of record in Volume 8, Pages 13-16, Plat Records of Wilson County, Texas, as amended by plat filed of record in Volume 9, Pages 42-43, Plat Records of Wilson County, Texas, to any extent modified by partial replatting as per plat of Estates of Quail Run Subidivison, filed of record in Volume 9, Pages 72-74, Plat Records of Wilson County, Texas.

**Tract 5:**
Lots 18, 19, 21, 22, 23 and 26 through 40, The Meadows at Quail Run, Section 1, as shown on plat of The Meadows at Quail Run, Section 1 of record in Volume 9, Pages 44-47, Plat Records of Wilson County, Texas.

**Tract 6:**
Lot 13, Lake Valley Estates Subdivision, Unit 35 as per plat of Lake Valley Estates Subdivision, Unit 35 of record in Volume 5, Page 29, Plat Records of Wilson County, Texas.

**Tract 7:**
Lots 1, 2, 10, 11 and 12, Block 1, Lake Valley Estates Subdivision, Unit 36 as per plat of Lake Valley Estates Subdivision, Unit 36 of record in Volume 5, Page 43, Plat Records of Wilson County, Texas.

**Tract 8:**
Lots 1 through 10, Lake Valley Estates Subdivision, Unit 42 as per plat of Lake Valley Estates Subdivision, Unit 42 of record in Volume 5, Page 44, Plat Records of Wilson County, Texas.

**Tract 9:**
Lots 2, 3, 5, 9 and 12, Lake Valley Estates Subdivision, Unit 43 as per plat of Lake Valley Estates Subdivision, Unit 43 of record in Volume 5, Page 45, Plat Records of Wilson County, Texas.

**Tract 10:**
Lot 2, Lake Valley Estates Subdivision, Unit 44 as per plat of Lake Valley Estates Subdivision, Unit 44 of record in Volume 5, Page 28, Plat Records of Wilson County, Texas.

2

Error! Unknown document property name.



**Wilson County**
**Genevieve Martinez**
Wilson County Clerk

*VG-6488-2024-288*

**Instrument Number:** 288

Foreclosure Posting

Recorded On: May 14, 2024 04:29 PM                    Number of Pages: 5

---

**" Examined and Charged as Follows: "**

Total Recording: $2.00

---

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                    **Record and Return To:**

Document Number:      288                              ANDRES CEDILLOS

Receipt Number:       20240514000039                  1433 THIRD STREET

Recorded Date/Time:   May 14, 2024 04:29 PM

User:                 Georgina L                      FLORESVILLE TX 78114

Station:              cclerk06

---



**STATE OF TEXAS**
**Wilson County**
**I hereby certify that this Instrument was filed in the File Number sequence on the date/time
printed hereon, and was duly recorded in the Official Records of Wilson County, Texas**

*Genevieve Martinez*

                                                        Genevieve Martinez
                                                        Wilson County Clerk
                                                        Floresville, TX

# Exhibit I

## APPOINTMENT OF SUBSTITUTE TRUSTEE

STATE OF TEXAS §
§
COUNTY OF WILSON §

Date:       May 14, 2024

Grantor(s):   OTISCO RDX, LLC

Grantor(s) Mailing Address:  1001 W. Loop South, Suite 700, Houston, Texas 77027

Beneficiary:  Milestone Capital CRE I, LLC

Beneficiaries Mailing Address:  2704 Joanel, Houston, Texas 77027

Trustees:  Lori Daves, John Daves, and each of them acting alone

Trustees Address:  The Daves Law Firm, 3624 North Hills Drive, Suite B-100, Austin, Texas
78731

Substitute Trustee: Andres Cedillos

Substitute Trustee Address:  1433 3rd Street, Floresville, Texas 78114

Deed of Trust:     Deed of Trust and Security Agreement, recorded in Document No.
2023-132703, Wilson County, Texas

Secures:           Promissory Note dated January 2, 2023, in the Principal Amount of
$5,900,000.00 by OTISCO RDX, LLC as maker and Milestone Capital
CRE I, LLC as payee on terms stated in the Note.

Property:     **See Exhibit A**

Lender:       Milestone Capital CRE I, LLC

Notice is hereby given that the undersigned, as Substitute Trustee with authority from
Lender, does hereby resign as substitute trustee and appoints in its stead **Andres Cedillos as substitute
trustees** under the Deed of Trust, who shall hereafter exercise all powers and duties set aside to the
said original Trustee and all successor trustees under the said Deed of Trust; and, further, does

1

hereby request, authorize, and instruct said Substitute Trustees to conduct and direct the execution of remedies set aside to the beneficiary therein. Lender ratifies any prior acts taken by Substitute Trustee in connection with the sale of the Property.

EXECUTED on May 14, 2024.

Milestone Capital CRE I, LLC, by Lori Daves,
Substitute Trustee

STATE OF TEXAS                          §
                                        §
COUNTY OF ~~WILSON~~ Travis             §

  This instrument was acknowledged before me on ~~February 13, 2024~~ May 14, 2024, by Lori Daves, who represented herself to be authorized to execute this document as Substitute Trustee for Milestone Capital CRE I, LLC and who is known to me to be the person whose name is subscribed to the foregoing instrument and he/she acknowledge to me that he/she executed the same in the capacity therein stated on behalf and as the act and deed of such entity.

Notary Public, in and for the State of Texas

MICHAEL ALEXANDER
Notary Public, State of Texas
Comm. Expires 06-08-2027
Notary ID 134397026

2

2024 - 142356 05/15/2024 09:52 AM Page 3 of 5
2024 - 140814 03/12/2024 12:55 PM Page 3 of 5

## EXHIBIT A

### LEGAL DESCRIPTION

**Tract 1:**
A 24.92 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171, and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 24.91 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 3) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 24.92 acre tract being more particularly described by metes and bounds on Exhibit "A" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway

**Tract 2:**
A 120.18 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 120.18 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 5) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 120.18 acre tract being more particularly described by metes and bounds on Exhibit "B" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway

**Tract 3A:**
A 60.14 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 60.14 acre tract being more particularly described by metes and bounds on Exhibit "C-1" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.

**Tract 3B:**
A 0.456 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 0.456 acre tract being more particularly described by metes and bounds on Exhibit "C-2" attached hereto and made a part hereof for all purposes.

**Tract 3C:**
A 1.924 acre tract of land, more or less, situated in the H.&T.C.R.R.Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 1.924 acre tract being more particularly described by metes and bounds on Exhibit "C-3" attached hereto and made a part hereof for all purposes.

**Tract 3D:**
A 152.88 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 152.88 acre tract being more particularly described by metes and bounds on Exhibit "C-4" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

EXHIBIT A TO DEED OF TRUST (LA VERNIA, TEXAS)
Error! Unknown document property name.

**Tract 4:**
Lots 244 and 245A, Las Palomas Country Club Estates, Unit 12, as per plat of Las Palomas Country Club Estates, Unit 12 filed of record in Volume 8, Pages 13-16, Plat Records of Wilson County, Texas, as amended by plat filed of record in Volume 9, Pages 42-43, Plat Records of Wilson County, Texas, to any extent modified by partial replatting as per plat of Estates of Quail Run Subidivison, filed of record in Volume 9, Pages 72-74, Plat Records of Wilson County, Texas.

**Tract 5:**
Lots 18, 19, 21, 22, 23 and 26 through 40, The Meadows at Quail Run, Section 1, as shown on plat of The Meadows at Quail Run, Section 1 of record in Volume 9, Pages 44-47, Plat Records of Wilson County, Texas.

**Tract 6:**
Lot 13, Lake Valley Estates Subdivision, Unit 35 as per plat of Lake Valley Estates Subdivision, Unit 35 of record in Volume 5, Page 29, Plat Records of Wilson County, Texas.

**Tract 7:**
Lots 1, 2, 10, 11 and 12, Block 1, Lake Valley Estates Subdivision, Unit 36 as per plat of Lake Valley Estates Subdivision, Unit 36 of record in Volume 5, Page 43, Plat Records of Wilson County, Texas.

**Tract 8:**
Lots 1 through 10, Lake Valley Estates Subdivision, Unit 42 as per plat of Lake Valley Estates Subdivision, Unit 42 of record in Volume 5, Page 44, Plat Records of Wilson County, Texas.

**Tract 9:**
Lots 2, 3, 5, 9 and 12, Lake Valley Estates Subdivision, Unit 43 as per plat of Lake Valley Estates Subdivision, Unit 43 of record in Volume 5, Page 45, Plat Records of Wilson County, Texas.

**Tract 10:**
Lot 2, Lake Valley Estates Subdivision, Unit 44 as per plat of Lake Valley Estates Subdivision, Unit 44 of record in Volume 5, Page 28, Plat Records of Wilson County, Texas.

2024-142356 05/15/2024 9:57 AM Page 5 of 5

## Wilson County
## Genevieve
## Martinez
### Wilson County Clerk

---

**Instrument Number:**  142356

eRecording - Real Property

APPOINTMENT OF SUBSTITUTE TRUSTEE

Recorded On: May 15, 2024 09:52 AM                    Number of Pages: 5

---

### " Examined and Charged as Follows: "

Total Recording: $37.00

---

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                  **Record and Return To:**

Document Number:        142356                          EPN
Receipt Number:         20240515000008
Recorded Date/Time:     May 15, 2024 09:52 AM
User:                   Liliana L
Station:                cclerk01

---



**STATE OF TEXAS**
**COUNTY OF WILSON**

I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Wilson County, Texas.

Genevieve Martinez
Wilson County Clerk
Floresville, TX