

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: October 09, 2025.**

_____
**MICHAEL M. PARKER**
**UNITED STATES BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RIC (LAVERNIA) LLC, | § | CASE NO. 24-51195-MMP |
| | § | |
| | § | |
| DEBTOR. | § | CHAPTER 11 |
| | § | |
| | § | |
| RIC (LAVERNIA) LLC, | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| V. | § | ADVERSARY NO. 24-05043-MMP |
| | § | |
| MILESTONE CAPITAL CRE 1, LLC, | § | |
| | § | |
| DEFENDANT. | § | |

1

OPINION

## I.  INTRODUCTION

The Court heard *Plaintiff RIC (Lavernia) LLC's Motion for Sanctions* (ECF No. 83)[1] in which the Debtor, RIC (Lavernia) LLC, seeks a default judgment or lesser sanctions against Defendant Milestone Capital CRE 1, LLC ("**Milestone**") because of Milestone's failure to meaningfully participate in discovery and comply with discovery orders. Milestone doesn't oppose an appropriate monetary sanction but opposes the default judgment relief requested. The Court will grant the *Motion* in part and impose appropriate sanctions on Milestone.

## II.  JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1334 and the Standing Order of Reference of the United States District Court for the Western District of Texas, dated October 4, 2013. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(K). Venue is proper under 28 U.S.C. § 1409. Plaintiff has consented to the entry of final orders and a judgment by this Court in this adversary proceeding. ECF No. 11. Milestone's *Answer* contains consent to the Court's entry of final judgments in paragraph 3. ECF No. 53.

## III.  BACKGROUND

This adversary proceeding concerns a title dispute following a foreclose on undeveloped tracts of property in Wilson County, Texas ("**Property**").[2] The Debtor claims to have acquired title to the Property as the successful bidder at a nonjudicial foreclosure sale in February 2024 after the Debtor's affiliate, TIG Romspen US Master Mortgage LP ("**TIG Romspen**"), foreclosed on a

---

[1]  *ECF* denotes the electronic filing number.

[2]  The Property includes ten tracts, the first three of which are described in a deed of trust filed in volume 1211, page 431, of the Wilson County Official Public Records. The other six tracts are filed in various volumes of the Plat Records of Wilson County, Texas.

lien it had on the Property ("**First Foreclosure Sale**").[3] Before the sale, an entity named Otisco RDX, LLC ("**Otisco**") owned the Property. According to Milestone, when Otisco granted a lien on the Property as additional collateral to TIG Romspen in connection with other real-estate deals between them, Milestone's lien encumbered Otisco's Property. Milestone never identified the loan or consideration underlying Otisco's alleged grant of a purportedly senior lien to Milestone. Despite the First Foreclosure Sale, Milestone pushed forward with its own foreclosure, based on its alleged senior lien in the Property, and sought appointment of a substitute trustee (John and Lori Daves, previously parties to this adversary proceeding) to auction the Property again ("**Second Foreclosure Sale**"). At the Second Foreclosure Sale, Milestone was the winning bidder.

The Debtor disputed the validity of the Second Foreclosure Sale and questioned whether Milestone had ever funded its purported loan to Otisco, suspecting instead that Otisco and Milestone were both controlled by Mr. Ali M. Choudhri, and the Milestone senior lien/loan transaction with Otisco was concocted by Mr. Choudhri out of whole cloth to thwart the First Foreclosure Sale. Mr. Choudhri controls Otisco, and he owns and controls Milestone—facts that Milestone hid and failed to disclose to TIG Romspen and the Debtor for many months after initiation of this lawsuit. While Milestone claims to have been acting based on a deed of trust it held against Otisco, the Debtor alleges no such deed of trust exists and Mr. Choudhri used a hollow corporate structure to fraudulently shield the Property from TIG Romspen's and the Debtor's collection efforts.

---

[3]  After multiple hearing delays, Milestone recently challenged whether it was TIG Romspen or the Debtor who foreclosed by making much of the fact that TIG Romspen assigned its rights in the Property to the Debtor on March 20, 2025, but *effective* on February 5, 2025 (the date of the foreclosure). Because the *Motion* seeks to vindicate the Debtor's discovery and process rights as a plaintiff against a dilatory defendant in this adversary proceeding, this *Opinion* need not and will not address the effectiveness of the back-dated rights transfer.

The Debtor filed a quiet-title suit in Wilson County in April 2024 challenging Milestone's interest in the Property. The Debtor asked for a declaratory judgment that (1) the Second Foreclosure Sale was defective and void because notice of sale was incorrect, (2) Milestone had no valid lien on the Property because it never funded its loan to Otisco (a debt which, if it existed, the Debtor could have paid to obtain clean title), and (3) Milestone's failure to produce information about the alleged loan to the Debtor is grounds for removing Milestone's lien.

After the Debtor filed for bankruptcy in June 2024, it removed the Wilson County lawsuit to this Court. The Court entered a *Scheduling Order*, which required the parties to serve initial disclosures and responsive pleadings by September 5, 2024. ECF No. 6. Milestone missed the deadline. The Debtor then served requests for production and interrogatories on September 8, 2024 ("**Written Discovery Requests**"). Milestone failed to respond to the Debtor's Written Discovery Requests. Over two months later, the Debtor moved for and was granted default judgment against Milestone for its failure to respond, but the parties subsequently agreed to vacate the default judgment and enter an agreed order. ECF Nos. 24, 26, 28, 37. The Court then amended (on the parties' agreement) the initial-disclosures deadline to January 17, 2025, and the discovery deadline to March 21, 2025. ECF No. 41. Likewise, the Debtor extended the deadline for responses to its Written Discovery Requests to January 26, 2025. *See* ECF No. 58 at ¶ 5. Finally, Milestone served its objections and responses on January 26—but it did so only to the Debtor's requests for production, produced no documents, and wholly failed to respond to the interrogatories. Debtor's counsel reached out to Milestone's counsel, Mr. Kell Mercer, about these deficiencies, and Debtor's counsel testified he told them Milestone failed to provide him sufficient materials to properly respond. Debtor's counsel also testified that "Mr. Mercer stated that he 'under[stood] the

4

next steps and consequences.'" *Id.* at ¶ 13. Mr. Mercer's email communications support this testimony. *See* ECF No. 83-1 p. 38.

The Debtor then filed a *Motion to Compel Discovery Responses* (ECF No. 58) against Milestone for the failure to respond to the Written Discovery Requests, a *Motion for Contempt and to Compel Subpoena Compliance* against Otisco (which, as noted above, is controlled by Mr. Choudhri) for that entity's failure to respond to subpoenas (filed in Case No. 4:25-mc-00376 in the Southern District of Texas), and a *Second Agreed Motion to Amend Scheduling Order* (ECF No. 66), which sought to extend adversary-proceeding deadlines because of the discovery failures.

While waiting for a hearing on its *Motion to Compel Discovery Responses*, the Debtor set back-to-back depositions for *the only two individuals* whom Milestone identified in its disclosures as having relevant information: Mr. Moe Nasr and Mr. Alfred Kelly Williams. On the morning of the first deposition, Mr. Mercer called and told Debtor's counsel that neither deponent would be produced for a deposition because he had not received the documents from Milestone to prepare either witness for a deposition. Mr. Mercer wrote and told Debtor's counsel that he understood "sanctions will be appropriate, under the circumstances." ECF No. 83-1 p. 59.

Instead of proceeding to hearing on the *Motion to Compel Discovery Responses*, the parties agreed to and the Court entered an order ("**Agreed Discovery Order**") in which Milestone agreed to fully answer the interrogatories, produce all responsive documents, and withdraw objections to, and amend its responses to, requests for production by April 8, 2025. ECF No. 73. The Agreed Discovery Order also explicitly authorized the Debtor to seek further sanctions and other relief if Milestone failed to fully and timely comply with the Agreed Discovery Order. *Id.* at Ordered ¶ 6. As before, the April 8 deadline came and went with no response by Milestone. Mr. Mercer

communicated with Debtor's counsel yet again admitting that Milestone had failed to give him all responsive documents (now seven months after the initial request was made), but that he would produce the documents by April 11. ECF No. 83-1 pp. 70–71. This time, Milestone's counsel admitted to being partially responsible for this missed deadline, indicating he had mis-calendared the deadline as April 11 rather than the actual April 8 deadline. Mr. Mercer promised production and responses by April 11. ECF No. 83-1 pp. 70–71. Even so, he revealed the production would be deficient because he had "not been provided ALL the documents." *See id.* at p. 70 (emphasis in original). On April 11, Milestone yet again missed this discovery deadline. But on April 13—five days after the Agreed Discovery Order's deadline, more than seven months after the Debtor's requests, and (according to its own counsel) with its production still deficient—Milestone finally served its answers to interrogatories and first amended disclosures and produced twenty-three documents.

The deficiencies in Milestone's late production are myriad. As for the documents Milestone did produce, they were substantially unresponsive to the Debtor's requests for production and addressed issues unrelated to this adversary proceeding—most fail even to mention Milestone, Otisco, or the Property. Of documents that were responsive, one was a purported assignment document that Milestone claims supported its lien on Otisco's Property. The document—which purportedly assigned certain of Milestone's receivables to Otisco and thus purportedly funded the (still unproduced) promissory note underlying the deed of trust underlying Milestone's lien on the Property—is undated and, upon its initial production, did not include the value of any of the purportedly "assigned receivables."[4] It was only just before the hearing on this *Motion* in August

---

[4] The document itself does not identify the attached list of names as receivables.

that Milestone produced for the first time a different version of the assignment, this time with numerical values next to each item on the list (totaling $7,409,682, which is over $1.5 million more than the loan the receivables were purportedly funding). *See* Milestone's Ex. 1.

As for the documents Milestone failed to produce, they include a plethora of admittedly responsive documents. Of the Debtor's fifty-three requests for production, Milestone responded that it would produce without objection to thirty-six (and one more subject to an objection). It produced nothing for nearly half of those. For example, Milestone produced no communications between Milestone and Otisco, nothing between Mr. Choudhri and his mother, and nothing between Mr. Choudhri and anyone other than representatives of the Debtor and its affiliates. Of the remaining twenty-one responses for which Milestone promised production, most are clearly deficient—for example, Request No. 7 asks for materials related to Otisco's indebtedness to Milestone. While Milestone did produce the deed of trust and promissory note, which are related to the indebtedness, it produced nothing to show Otisco defaulted on a debt to Milestone: No past-due notices, no foreclosure warnings, no bank statements, no emails or text messages with Otisco, nothing.

Perhaps the most remarkable information in Milestone's production—nearly ten months into the lawsuit and nearly three months after Milestone's (late) initial disclosures—was the identification of Mr. Choudhri as a person with relevant knowledge and one of only two owners of Milestone.

The Debtor filed this *Motion* on April 21, 2025, asking the Court to grant it a default judgment given Milestone's egregious discovery abuse. The Debtor originally set a hearing on its *Motion* for June 2, 2025.

Milestone's counsel, Mr. Mercer, tragically passed away on May 13, 2025. Milestone (via Mr. Choudhri) subsequently sought, and the Court granted, multiple continuances of the hearing on the Debtor's *Motion*. As of the initiation of the hearing, Milestone still had not produced any more documents or otherwise supplemented its responses, nor had it reached out to the Debtor to reschedule the depositions. As of this *Opinion*, this adversary case has languished for seventeen months without advancing beyond the first round of discovery.

Milestone, in its late *Response* to the *Motion*, attempts to explain its untimely April 13 production—after missing its own April 11 deadline imposed after missing the April 8 deadline in the Agreed Discover Order—by blaming an alleged illness that resulted in Mr. Mercer's passing. It does so without providing any evidence of an illness or how such illness contributed to the untimeliness of Milestone's production. The *Response* attempts to minimize Milestone's tardiness by quibbling about whether the production was three or five days late—ignoring that the Agreed Discovery Order imposed the April 8 deadline because Milestone's production was already nearly six months late. After minimizing the untimeliness and blaming it on its deceased former counsel, Milestone then blames Debtor's counsel, arguing they should have "picked up the phone or sent an email" rather than file this Motion. *Response* at ¶ 12. Moreover, Milestone argues its responses *were* sufficient and criticizes Debtor's counsel for failing to provide Mr. Choudhri (who had only been officially disclosed as a member of Milestone in April 2025) with his own company's discovery responses so he could determine what remained to be produced. Milestone concludes its *Response* with a bold and illogical accusation: The Debtor, by filing the *Motion* in April 2025, is "trying to take advantage of the Kell Mercer's [sic] unfortunate passing." *Response* at ¶ 15. Mr. Mercer passed away on May 13, 2025, after the Debtor filed its *Motion*.

8

IV.   LEGAL STANDARD

Bankruptcy courts, like all federal courts, have broad discretion to sanction parties for failure to cooperate in discovery, unless there are "unusual circumstances showing a clear abuse." FED. R. BANKR. P. 7037 (incorporating FED. R. CIV. P. 37); ***Kelly v. Syria Shell Petroleum Dev. B.V.***, 213 F.3d 841, 855 (5th Cir. 2000) (internal quotation marks and citation omitted); *see also* ***Law Funder, L.L.C. v. Munoz***, 924 F.3d 753, 758 (5th Cir. 2019) (reciting that federal courts have "broad discretion in fashioning its sanction" for failure to comply with discovery orders). Federal Rule of Civil Procedure 37(b)(2)(A) includes a non-exhaustive list of sanctions for violating a discovery order. The list provides courts with seven possible options, including:

1.  Directing that matters embraced in the discovery order are to be taken as established;

2.  Prohibiting the disobedient party from supporting or opposing claims or defenses or from introducing unproduced evidence;

3.  Striking pleadings;

4.  Staying proceedings until discovery is produced;

5.  Dismissing the action in whole or part;

6.  Rendering a default judgment against the disobedient party; and

7.  Contempt of court.

FED. R. CIV. P. 37(b)(2)(A)(i)–(vii). Here, the Debtor has asked the Court to enter a default judgment against Milestone or, alternatively, to strike Milestone's pleadings, rule that Milestone's untimely production is inadmissible as evidence, and enter thirty-four findings of fact favorable to the Debtor.

So-called death-penalty sanctions like default judgments are severe and litigation-ending, so courts have held their imposition to a heightened standard. ***Law Funder***, 924 F.3d at 758. This

heightened standard in the Fifth Circuit includes six required findings: two initial findings that are required for all sanctions, whether death-penalty or lesser; and four more findings for death-penalty sanctions as articulated in ***FDIC v. Conner***, 20 F.3d 1376 (5th Cir. 1994). They are:

1. The sanctions are just;

2. The sanctions relate to the particular claim at issue in the discovery order;

3. The failure to comply with the discovery order was committed willfully or in bad faith;

4. The client, rather than their counsel, is responsible for the violation of the discovery order;

5. The violation substantially prejudiced the opposing party; and

6. A lesser sanction would not substantially achieve the desired deterrent effect.

***Law Funder***, 924 F.3d at 758–59 (citing ***Compaq Comput. Corp. v. Ergonome Inc.***, 387 F.3d 403, 413 (5th Cir. 2004), for the first two findings and ***Conner***, 20 F.3d at 1380–81, for the latter four); *see also* ***Conner***, 20 F.3d at 1380 (clarifying that the willful-and-bad-faith finding and the client-not-counsel finding focus on misconduct with respect to the discovery order, not pre-order misconduct).

While courts have broad authority to sanction to "assure that litigants have a fair, legal, and expeditious trial," the Fifth Circuit has made it clear that death-penalty sanctions like default judgment are reserved only for extreme circumstances and "the most heinous of scenarios." *See* ***EEOC v. Gen. Dynamics Corp.***, 999 F.2d 113, 119 (5th Cir. 1993); ***Calsep A/S v. Dabral***, 84 F.4th 304, 315 (5th Cir. 2023); *see also* ***Conner***, 20 F.3d at 1380 ("Because the law favors the resolution of legal claims on the merits, and because dismissal is a severe sanction which implicates due process, we have previously deemed dismissal with prejudice to be a 'draconian remedy' and a 'remedy of last resort.'") (internal citations omitted).

10

## V.    DISCUSSION

At the hearing on the *Motion*, Milestone agreed it violated the Court's Agreed Discovery Order and that sanctions are warranted. The parties disagreed on the severity of sanctions that should apply. The Debtor asks for a default judgment in their favor; Milestone does not offer any specific lesser sanction as appropriate but merely argues that default judgment is too severe a sanction for Milestone's infractions. Alternatively, if the Court is unwilling to enter default judgment, the Debtor asks instead that the Court strike Milestone's pleadings, render late-produced documents inadmissible, and "issue detailed findings of fact favorable to Plaintiff." ECF No. 83 pp. 18–20.

The parties stipulate that Milestone committed sanctionable conduct, so the Court will focus on whether the appropriate sanction is a default judgment or some lesser sanction. The Court's analysis will therefore move through the four *Conner* findings that are required to impose a default-judgment sanction.

### 1. *Conner* finding No. 1: Milestone's failure to comply with discovery was willful and in bad faith.

Under the first *Conner* finding, courts considering death-penalty sanctions must find that the violating party's "refusal to comply [with the discovery order] results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct." *Conner*, F.3d at 1380 (quoting *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1032 (5th Cir. 1990)).

The Court finds that Milestone's production on April 13 was a willful and bad-faith violation of the Agreed Discovery Order. Milestone's discovery misconduct before the Agreed Discovery Order was not and could not violate the Agreed Discovery Order. But Milestone's pre-order conduct informs the Court and helps provide a clear record of Milestone's delay and

11

contumacious conduct after the Agreed Discovery Order.

When the Court entered the Agreed Discovery Order, this case was nearly ten months old and languishing in its first round of discovery. Milestone had been in default and avoided sanctions for that conduct only because the Debtor agreed on Milestone's subsequent promise to provide discovery by the end of January. Milestone promptly broke promise after promise and missed deadline after deadline, serving only some deficient, objection-only responses along the way. At almost every turn, Milestone ignored requests from the Debtor, and Milestone's own counsel admitted that Milestone was refusing to participate meaningfully in discovery. When he lacked the client document production necessary to put Mr. Nasr and Mr. Williams up for deposition, Mr. Mercer acknowledged that Milestone was committing sanctionable misconduct.

Milestone continued the same course of conduct after the Court issued the Agreed Discovery Order. The Court notes that Mr. Mercer admitted he mis-calendared the deadline, and the Court does not hold this against Milestone. But Mr. Mercer also stated that Milestone was— still—refusing to give him all the responsive documents. Milestone did not make its production by April 11 (the mis-calendared deadline), but waited until April 13, and its April 13 production was missing critical documents and information. Milestone still has not produced critical documents and information. And Milestone has continually sought continuances on, or relief from, the hearings through which the Debtor has tried to hold Milestone accountable for its violations of the Agreed Discovery Order.[5]

There is more than enough evidence to find Milestone's failures to comply with the Agreed Discovery Order were made willfully and in bad faith. *See **Dabral***, 84 F.4th at 314 ("Knowingly

---

[5] The Court does not hold against Milestone the few continuances attributable to Mr. Mercer's tragic death.

ignoring an obligation, especially multiple times, may alone be enough to find bad faith."). As of the date of the hearing—nearly four months after Milestone's deficient April 13 production—Milestone remained noncompliant. The Court therefore finds that Milestone's failures to comply were willful, in bad faith, and represent intentional delay and contumacious conduct.

2. ***Conner*** **Finding No. 2: Milestone, not its counsel, was responsible for the violation.**

Under the second ***Conner*** finding, courts considering death-penalty sanctions must find that "the violation of the discovery order must be attributable to the client instead of the attorney." ***Conner***, F.3d at 1380 (quoting ***Coane***, 898 F.2d at 1032). Because a default judgment is a severe remedy with consequences felt by the party and not necessarily its counsel, the Court must ensure that the party itself perpetrated the discovery failures, and that it was not the counsel's failure to adequately represent their client.

Here, based on the evidence presented, the Court finds that Milestone's failures to respond to the Debtor's discovery requests were caused by Milestone's own failures to provide documents to its counsel. Multiple times over the course of the discovery fight, Mr. Mercer appeared to apologize for his client's failures by telling Debtor's counsel he could not comply with discovery obligations because Milestone had failed to provide him with sufficient documentation.

Mr. Choudhri claimed in his testimony that he has always done his best to comply with the Debtor's requests and instead faults the series of attorneys he has hired. The Court finds Mr. Choudhri's testimony lacks credibility. Mr. Choudhri was evasive and argumentative on the witness stand. He careened from describing himself as a witless naïf, unaware of his attorneys' discovery failures and at the mercy of their control, to a savvy real-estate magnate with sophisticated legal knowledge who could explain why and how documents were or were not relevant to the requests for production. His testimony was contravened by Mr. Mercer's

13

communications with the Debtor, in which Mr. Mercer blamed Milestone on several occasions for failing to produce documentation.

Mr. Choudhri also testified that, after April 11, he was locked out of his office by a court-appointed Chapter 11 trustee, and that the lock-out allegedly prevented him from accessing the documents the Debtor sought. (Again, Milestone's deadline to produce was April 8, and its counsel's mis-calendared deadline was April 11.) Although he testified he unsuccessfully sued the trustee to attempt to overturn those orders, he never testified that he asked the Chapter 11 trustee for the specific documents sought, relying instead on his broad assertion that he could not access his office. He further testified that after Mr. Mercer's death, he had *no access* to any of the documents he had given to Mr. Mercer and was now at the mercy of the custodian of Mr. Mercer's law practice, Mr. Clint Alexander. Yet on cross examination he admitted he had online access to his communications and other online facilities. Repeatedly throughout these proceedings, Mr. Choudhri has endeavored to blame anyone but himself for Milestone's misconduct.

Mr. Choudhri's excuses for failure to comply lack logic and further show a willful and bad-faith attempt to avoid discovery obligations. Whether or not Mr. Choudhri was barred from accessing his office on April 11, 2025, the Debtor had been seeking—and continues to seek—responses, answers, disclosures, and production since it served its requests in September 2024, and the Debtor had already filed a motion to compel by the time of the lock-out. Moreover, Mr. Choudhri pretends that because he provided documents to Mr. Mercer—whose files are now subject to Mr. Alexander's control—he is now helpless to provide them to the Debtor. This is not credible. The Court highly doubts that Mr. Choudhri had only singular, physical documents with no copies that were not maintained electronically in any form, then turned over these singular,

14

physical documents to Mr. Mercer, who then lied to the Debtor that he was not receiving these documents from Mr. Choudhri. Rather, the Court finds it very likely that Mr. Choudhri has, and at all relevant times had, control of or access to the responsive documents, to the extent they exist. The Court finds Mr. Choudhri's testimony lacks credibility and places full blame on Milestone for the discovery violations, not its counsel.

   **3.** ***Conner* Factor No. 3: The Debtor has been significantly prejudiced but has not been so *substantially* prejudiced by the discovery violations as to warrant the issuance of a default judgment.**

Under the third **Conner** finding, courts considering death-penalty sanctions must find that "the violating party's misconduct must substantially prejudice the opposing party." **Conner**, F.3d at 1380 (quoting **Coane**, 898 F.2d at 1032). To obtain default judgment, the Debtor must also show that Milestone's failure to meaningfully respond to its discovery requests resulted in substantial prejudice against the Debtor's ability to mount their claims in this adversary. The **Conner** court noted that while lesser sanctions may be appropriate without a showing of prejudice, "more severe sanctions are justified only if the opposing party has suffered "some palpable prejudice." **Conner**, 20 F.3d at 1380 n.3.

Courts have usually interpreted *substantial prejudice* to require a showing of irreparable damage or something comparable. The **Conner** court found no substantial prejudice in its case because discovery would not close for another year (from the time of the motion for sanctions). In **Dabral**, 84 F.4th at 304, the defendant destroyed source code central to the plaintiff's trade-secrets claim, and the Fifth Circuit explained that substantial prejudice exists where "a party's case-in-chief is seriously and gravely impacted." **Id.** at 314. In **Moore v. CITGO Ref. & Chems. Co., L.P.**, 735 F.3d 309 (5th Cir. 2013), the plaintiffs had engaged in spoliation even after court orders. The **Dabral** court did note, however, that dealing with unusable production and being forced to

15

repeatedly file motions to compel may alone amount to substantial prejudice. ***Dabral***, 84 F.4th at 315.

Here, the Debtor argues it is substantially prejudiced because it is "dramatically limited in its ability to move forward with depositions, much less prepare for trial, without this critical discovery." *Motion* at 16. At the hearing on the *Motion*, the Debtor also argued it has been prejudiced because of the costs of the delay caused by Milestone, which has not only extended the length of this adversary proceeding and forced the Debtor to advance ad valorem taxes for the Property (the ownership of which Milestone contests), but also unduly postponed the Debtor's plan confirmation in its related bankruptcy case. The Court agrees that Milestone's misconduct has been unjustifiable, has significantly delayed the Debtor's case, and has hampered the Debtor's ability to promptly and efficiently prosecute its claims. The Court does not find, however, that at this point the Debtor's case has been "gravely" impacted or that the Debtor has suffered irreparable harm. Moreover, because the gist of the Debtor's claim is that Milestone never actually funded the Otisco loan—such that there was no consideration exchanged and thus no valid lien—the Court struggles to conclude that the significant delay in Milestone's production so substantially prejudices the Debtor such that default judgment is warranted. If the Debtor is correct that the documents don't exist, they'll never get them.

With that said, the materials and information Milestone has failed to produce are or appear to be central to the merits of this adversary proceeding. Under ***Dabral***, the Court could now and may in the future be justified to issue a default judgment against Milestone. The Debtor has repeatedly had to deal with Milestone's unusable production and repeatedly had to seek recourse in court. But based on the circumstances and the record now before the Court, and acknowledging

the disfavored nature of death-penalty sanctions, the Court opts instead to issue lesser sanctions to appropriately punish Milestone's substantial misbehavior and to deter future discovery misconduct. Moreover, because the gist of the Debtor's claim is that there was no formal loan relationship or consideration exchanged to support Milestone's alleged lien, the Court struggles to conclude that Milestone's substantial delay in providing documentary evidence of that loan (or exchange of consideration) so substantially prejudices the Debtor's claim as to warrant the issuance of a default judgment.

Thus, while Milestone's discovery violations were significantly prejudicial, they are not prejudicial enough at this stage to warrant a default judgment, and therefore the Court will not enter default judgment against Milestone. The Court will, however, impose lesser (but still sufficiently impactful) sanctions on Milestone for its willful violations.

### 4. *Conner* Finding No. 4: Lesser, more targeted sanctions are appropriate in this case.

Under the fourth *Conner* finding, courts considering death-penalty sanctions must find that "a lesser sanction would not substantially achieve the desired deterrent effect." *Conner*, F.3d at 1380 (quoting *Coane*, 898 F.2d at 1032) (internal quotation marks omitted). Here, the Court finds that lesser sanctions, detailed below, could substantially achieve the desired deterrent effect.

For sanctions lesser than default-judgment death-penalty sanctions, the Court must make only the first two findings in the list above: that the sanctions are just, and they are related to the particular claim at issue in the discovery order. *See Law Funder*, 924 F.3d at 758. The Court has broad discretion under Federal Rule of Bankruptcy Procedure 7037 to fashion a sanction appropriate under the circumstances. Based on the evidence before the Court, the Court will sanction Milestone by (1) preventing Milestone from using to its advantage any documentary evidence that it did not produce to the Debtor by April 21, 2025, unless the Debtor first introduces

17

such evidence into the record at trial, (2) preventing clearly known, but undisclosed witnesses (in Milestone's January 26, 2025 Initial Disclosures) from testifying at trial, (3) finding certain facts in favor of the Debtor with respect to evidence not produced, and (4) rendering an adverse-interest ruling in favor of the Debtor related to Milestone's failures to disclose witnesses and produce documents. Specifically, the Court will enter an *Order* accompanying this *Opinion* that orders:

1. Any documentary evidence that Milestone did not produce to the Debtor by **April 21, 2025** (the date of the filing of the *Motion*), shall not be admitted into evidence by the Court if offered by Milestone. *Documentary evidence* includes documents, affidavits, transcripts, photos, videos, and any other record.

2. For any future hearing or decision on the merits in this adversary proceeding, the Court will, in analyzing the evidence as factfinder, deem the excluded evidence as supporting and accept as true the allegations that:

    2.1. Mr. Choudhri owns and controls Milestone.

    2.2. Mr. Choudhri has control over and decision-making power for Otisco.

    2.3. Milestone's Deed of Trust and Security Agreement ("**Milestone DOT**") dated January 2, 2023, and recorded on May 23, 2023, which purports to secure repayment by Otisco of a promissory note in the original principal amount of $5,900,000 ("**Otisco Note**"), and the Otisco Note were falsely manufactured by Ali Choudhri to purport to create an encumbrance on the Property.[6]

    2.4. No documentary evidence exists of any loan agreement, with Milestone as maker, and Otisco as noteholder, other than the Otisco Note.

    2.5. No documentary evidence exists of any consideration provided by Milestone to Otisco in exchange for the Milestone DOT other than an undated assignment (purported to be effective January 2, 2023), which was only produced to Debtor in one form (without monetary amounts on attached Exhibit A) on initial production, and shortly before the *Motion* hearing produced in a different form (with monetary amounts on the attached Exhibit A).

    2.6. No documentary evidence shows that Milestone funded any loan to Otisco

---

[6] Milestone's abuses of discovery, both generally and specifically related to the purported encumbrance—lacking, late, and suspicious, as discussed *supra* pp. 6–7—underlies the Court's decision to issue a sanction deeming Milestone to have falsely manufactured the Milestone DOT and Otisco Note.

in connection with the Otisco Note and Milestone DOT.

    2.7.    Other than the Otisco Note, there is no evidence of any indebtedness Otisco owes or owed Milestone that is secured by the Milestone DOT.

    2.8.    Milestone and Otisco, both under Choudhri's control, agreed to record the Milestone DOT to prevent other lienholders, such as the Debtor, from enjoying clear title upon enforcing voluntary liens against the Property.

3.    Unless and until Milestone pays the Sanctions Award (defined below), which the Court will assess, Milestone is prohibited from calling Mr. Moe Nasr or Mr. Alfred Kelly Williams as witnesses for any hearing in the adversary proceeding. Nothing in this order will prevent the Debtor from objecting to Milestone calling Mr. Nasr and Mr. Williams as witnesses on any available grounds.

4.    Milestone is prohibited from calling Mr. Ali Choudhri and Ms. Shahnaz Choudhri as witnesses for any trial of this adversary proceeding. Although these parties were eventually disclosed in the amended disclosures, those disclosures came over seven months into this adversary proceeding and came after the deadline set in the Agreed Discovery Order. The Court finds Milestone's failure to disclose these key parties as evidence of substantial bad faith and abuse of the court system.

5.    Milestone shall reimburse the Debtor for: (1) costs and reasonable attorney's fees caused by the delay resulting from the cancelled depositions of Mr. Nasr and Mr. Williams, and (2) all costs and reasonable attorneys' fees incurred by the Debtor in relation to this adversary proceeding after April 21, 2025, and through the hearing on the *Motion* that triggered the issuance of this *Opinion* and *Order* ("**Sanctions Award**"). The Court will determine the exact amount of fees and costs the Sanctions Award shall include at a hearing on **November 3, 2025, at 2:00 PM.**

These sanctions are appropriate given the behavior discussed above. Milestone's failure to comply with the Agreed Discovery Order deprives it of its ability to use the documents and information subject to the Agreed Discovery Order. Milestone could have timely complied with the Agreed Discovery Order, but it instead chose to willfully and in bad faith act in noncompliance. These sanctions are just and apply directly to the discovery order violations.

19

**VI.**    <u>CONCLUSION</u>

For all these reasons, the Court will **GRANT** in part the Debtor's *Motion for Sanctions*. The Court will enter a separate *Order* consistent with this *Opinion*.

# # #